# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

———————————————————  )
UNITED STATES OF AMERICA and the )
STATE OF MICHIGAN,                )
                                  )
                    Plaintiffs,   )
             v.                   )          Civil Action No. 10-cv-14155-DPH-MKM
                                  )          Hon. Denise Page Hood
BLUE CROSS BLUE SHIELD OF         )
MICHIGAN, a Michigan nonprofit    )
healthcare corporation,           )
                                  )
                    Defendant.    )
———————————————————)

### PLAINTIFF UNITED STATES OF AMERICA'S MEMORANDUM IN OPPOSITION TO DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE

Christine A. Varney                 Barry J. Joyce
Assistant Attorney General          Ann Marie Blaylock
                                    Ryan Danks
Joseph F. Wayland                   David Z. Gringer
Deputy Assistant Attorney General   Steven Kramer
                                    Richard Liebeskind
Joshua H. Soven, Chief              Trial Attorneys
Peter J. Mucchetti, Assistant Chief Antitrust Division
Litigation I Section                U.S. Department of Justice
Antitrust Division                  450 Fifth Street, N.W.
U.S. Department of Justice          Suite 4100
Washington, D.C. 20530              Washington, D.C. 20530
                                    (202) 305-0128
                                    ryan.danks@usdoj.gov

Barbara L. McQuade                  Peter Caplan (P-30643)
United States Attorney              Assistant United States Attorney
Eastern District of Michigan        United States Attorney's Office
                                    Eastern District of Michigan
                                    211 W. Fort Street, Suite 2001
                                    Detroit, Michigan 48226
                                    (313) 226-9784
January 20, 2011                    peter.caplan@usdoj.gov

## TABLE OF CONTENTS

Page

Counterstatement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Introduction and Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.  THE COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF. . . . . . . . . . . . . . . .  4

      A.  The Complaint Plausibly Alleges Relevant Markets, . . . . . . . . . . . . . . . . . . . . . . . . 8

          1.  *Product Markets* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          2.  *Geographic Markets* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          3.  *Market Power* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      B.  The Complaint Plausibly Alleges that the MFNs have Caused
Anticompetitive Effects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

II.  BLUE CROSS HAS NOT SHOWN THAT THE CHALLENGED CONDUCT
IS ENTITLED TO THE STATE ACTION EXEMPTION. . . . . . . . . . . . . . . . . . . . . . . . . 20

      A.  The Michigan Legislature Has Not Clearly Articulated an Intent To
Displace Competition with Regulation Contemplating the Challenged Conduct. . . . . . . . . . 22

          1.  *MFNs Are Not the Logical or Foreseeable Result of a*
*Legislative Enactment.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

          2.  *Michigan Law Seeks To Promote Competition in Health Insurance,*
*Not Displace It.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Page

B. <u>The State Has Not Actively Supervised Blue Cross's Conduct at Issue.</u> . . . . . . . . . 29

   1. *The State Has Not Approved or Supervised the MFNs.* . . . . . . . . . . . . . . 29

      a. *MFN-plus Clauses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

      b. *Equal-to MFN Clauses* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

   2. *Blue Cross Is Not Exempt from Active Supervision as a Public Entity.* . . . . 33

III. THE COURT SHOULD NOT ABSTAIN FROM HEARING THIS CASE. . . . . . . . . . . 35

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

-iii-

COUNTERSTATEMENT OF ISSUES

Plaintiffs respectfully submit the following counterstatement of the issues:

1.  Does the Complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), in violation of Section 1 of the Sherman Act, where the Complaint alleges that the most favored nation clauses ("MFNs") in Blue Cross's agreements with more than 70 Michigan hospitals raised Blue Cross's competitors' hospital costs, excluded competitors from several markets, and reduced its competitors' ability to compete in many markets, increasing costs to self-insured employers and likely increasing health insurance prices to consumers, while not lowering Blue Cross's own hospital costs?

2.  Has Blue Cross demonstrated that, as a matter of federal law, (a) the Michigan Legislature has clearly articulated an intent to displace competition with regulation that logically or foreseeably results in Blue Cross's use of MFNs, *Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985), *and* (b) the State, which never approved the MFNs, actively supervised Blue Cross's anticompetitive activity, *F.T.C. v. Ticor Title Ins. Co*., 504 U.S. 621 (1992)?

3.  Should the Court abstain from hearing this case under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), "an *extraordinary* and *narrow* exception to the duty of the District Court to adjudicate a controversy properly before it," *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 562 (6th Cir. 2010) (emphasis in original), where (a) abstention would deprive the United States of an adequate remedy, *and* (b) the strong interests in federal enforcement of federal antitrust laws outweigh any claimed state interests?

TABLE OF AUTHORITIES

* Controlling or most significant authority                                                     Page

Cases

*Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414 (6th Cir. 2007) . . . . . . . . . 37

*American Needle, Inc. v. National Football League*, 130 S. Ct. 2201 (2010) . . . . . . . . . . . . . . 4

*American Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221 (D. Mass. 1995) . . . . . 31, 37

*American Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556 (1982) . . . . 21

*Andrea Theaters, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59 (2d Cir. 1986) . . . . . . . . . . . 36

*Archey v. Hyche*, 935 F.2d 269, 1991 WL 100586 (6th Cir. 1991) (table) . . . . . . . . . . . . . . . . 18

*\*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 6

*Ball Mem'l Hosp. v. Mut. Hosp. Ins. Inc.*, 784 F.2d 1325 (7th Cir. 1986) . . . . . . . . . . . . . . . . 13

*\*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Blue Cross and Blue Shield of Michigan v. Michigan Association of Psychotherapy Clinics*,
        1980 WL 1848 (E.D. Mich. Mar. 14, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blue Cross and Blue Shield of Ohio v. Bingaman*, 1996 WL 677094 (N.D. Ohio
        June 24, 1996), *aff'd sub nom. Blue Cross and Blue Shield of Ohio v. Klein*,
        117 F.3d 1420, 1997 WL 400095 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Blue Cross and Blue Shield United of Wisconsin v. Marshfield Clinic*,
        65 F.3d 1406 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*Board of Trade of Chicago v. United States*, 246 U.S. 231 (1918) . . . . . . . . . . . . . . . . . . . . . . 4

*BPS Clinical Laboratories v. Blue Cross Blue Shield of Michigan*,
        217 Mich. App. 687, 552 N.W.2d 919 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Brentwood Academy v. Tenn. Sec. Sch. Athletic Ass'n*, 442 F.3d 410 (6th Cir. 2006),
        *rev'd on other grounds*, 551 U.S. 291 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 35

*California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046 (N.D. Cal. 2003) . . . . . . . . 26

*\*California Retail Liquor Dlrs. Ass'n v. Midcal Aluminum*, 445 U.S. 97 (1980) . . . . . . . 20, 22

*Cantor v. Detroit Edison Co.*, 428 U.S. 579 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Care Heating & Cooling, Inc. v. American Standard, Inc.*, 427 F.3d 1008 (6th Cir. 2005) . . . 16

*Carter v. Ford Motor Co.*, 561 F.3d 562 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 35, 37

*Chippewa Trading Co. v. Cox*, 365 F.3d 538 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 36

*City of Columbia v. Omni Outdoor Advertising*, 499 U.S. 365 (1991) . . . . . . . . . . . . . . . 21, 26

*City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389 (1978) . . . . . . . . . . . . . . . . . 20

*\*Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*,
    621 F.3d 554 (6th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv, 36, 37

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) . . . . . . . . . 35

*Community Comm'ns v. City of Boulder*, 455 U.S. 40 (1982) . . . . . . . . . . . . . . . . . . . . . . 23, 37

*Crosby v. Hosp. Auth. of Valdosta and Lowndes County*, 93 F.3d 1515 (11th Cir. 1996) . . . . . 33

*CTC Comm'ns Corp. v. Bell Atl. Corp.*, 77 F. Supp. 2d 124 (D. Me. 1999) . . . . . . . . . . . . . . . 30

*Delta-Turner, Ltd. v. Grand Rapids–Kent County Convention/Arena Authority*,
    600 F. Supp. 2d 920 (W.D. Mich. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) . . . . . . . . . . . . . . . . . . . 8

*Electrical Inspectors v. Village of East Hills*, 320 F.3d 110 (2d Cir. 2003) . . . . . . . . . . . . . . . 32

*F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447 (1986) . . . . . . . . . . . . . . . . . . . . 13, 16, 18

*F.T.C. v. PPG Indus., Inc.*, 798 F.2d 1500 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*\*F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*First Am. Title Co. v. Devaugh*, 480 F.3d 438 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . *passim*

Foundation for Interior Design v. Savannah College, 244 F.3d 521 (6th Cir. 2001) . . . . . 13, 14

Four T's, Inc. v. Little Rock Mun. Airport Comm'n, 108 F.3d 909 (8th Cir. 1997) . . . . . . . . . 23

Fuchs v. Rural Elec. Convenience Cooperative, Inc., 858 F.2d 1210 (7th Cir. 1988) . . . . . . . 34

Gomez v. Illinois State Bd. of Educ., 811 F.2d 1030 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 7

Jackson, Tenn. Hosp. Co., LLC v. West Tenn. Healthcare,
    414 F.3d 608 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Jacobs v. Tempur-Pedic International, Inc., 626 F.3d 1327 (11th Cir. 2010) . . . . . . . . . . . . . 12

Kentucky Household Goods Carriers Ass'n, 139 F.T.C. 404 (F.T.C. 2005),
    aff'd, 199 F. App'x 410 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31, 32

Knudsen Corp. v. Nevada State Dairy Comm'n, 676 F.2d 374 (9th Cir. 1981) . . . . . . . . . . . . 36

Korea Kumho Petrochem. v. Flexsys Am. L.P.,
    2008 WL 686834 (N.D. Cal. Mar. 11, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Lambert v. Hartman, 517 F.3d 433 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.,
    940 F.2d 397 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Loftus v. Blue Cross Blue Shield of Michigan,
    2010 WL 1139338 (E.D. Mich. Mar. 24, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Marathon Oil Co. v. Mobil Corp., 669 F.2d 378 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . 13

McCaw Personal Commn's, Inc. v. Pacific Telesis Group,
    645 F. Supp. 1166 (N.D. Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Michigan Chiropractic Association v. Office of Fin. and Ins. Servs.,
    2006 WL 335857 (Mich. App. Feb. 14, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 34, 35

Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527 (6th Cir. 2002) . . . . . . . . . 33, 34

Michigan State Podiatry Ass'n v. Blue Cross and Blue Shield of Michigan,
    1982 WL 1859 (E.D. Mich. Apr. 16, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Moses H. Cone Mem. Hosp., v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) . . . . . . . . . . . . . . 36

*National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988) . . . . . . . . . . . . . . . . . . 34

*Nuckols v. Blue Cross Blue Shield of Michigan*,
 2007 WL 4358194 (E.D. Mich. Dec. 13, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992) . . . . . . . 28

*Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*,
 883 F.2d 1101 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*OverEnd Technologies, LLC v. Invista S.A.R.L.*, 431 F. Supp. 2d 925 (E.D. Wis. 2006) . . . . . . 9

*Palmyra Park Hosp. Inc. v. Phoebe Putney Mem. Hosp.*, 604 F.3d 1291 (11th Cir. 2010) . . . . . 3

*Patrick v. Burget*, 486 U.S. 94 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pinhas v. Summit Health Ltd.*, 894 F.2d 1024 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*\*Reazin v. Blue Cross and Blue Shield of Kansas*,
 663 F. Supp. 1360 (D. Kan. 1987), *aff'd*, 899 F.2d 951 (10th Cir. 1990) . . . . . . . *passim*

*Riverview Investments, Inc. v. Ottawa Cmty. Improvement Corp.*,
 899 F.2d 474 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Rouse v. DaimlerChrysler*, 300 F.3d 711 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Segal v. Fifth Third Bank*, 581 F.3d 305 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1079 (9th Cir. 2010) . . . . . . . . . . . . 23, 26

*Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934 (E.D. Tenn. 2008) . . . . . . . . . . . . . 6, 13

*Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917 (6th Cir. 2005) . . . . . . . . . . . 8, 14

*Surgical Care Center of Hammond, L.C. v. Hospital Service Dist. No. 1 of Tangipahoa*,
 171 F.3d 231 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ticket Center, Inc. v. Banco Popular de Puerto Rico*, 399 F. Supp. 2d 79 (D.P.R. 2005) . . . . 36

-viii-

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,*
     552 F.3d 430 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*\*Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985) . . . . . . . . . . . . . . . . . . . . . . . iv, 23, 33

*Toys 'R' Us, Inc. v. F.T.C.*, 221 F.3d 928 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Travel Agent Commission Antitrust Litig.,* 583 F.3d 896 (6th Cir. 2009) . . . . . . . . . . . . . . . . . 7

*United States v. Conn. Nat'l Bank*, 418 U.S. 656 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*\*United States v. Delta Dental of Rhode Island*, 943 F. Supp. 172 (D.R.I. 1996) . . . . . . . *passim*

*United States v. Dentsply Int'l, Inc.*, 399 F.3d 181 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Marine Bancorporation, Inc.,* 418 U.S. 602 (1974) . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Medical Mutual of Ohio*, 1999 WL 670717 (N.D. Ohio Jan. 29, 1999) . . . . . . 4

*United States v. Pabst Brewing Co.*, 384 U.S. 546 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589 (1st Cir. 1993) . . . . . . . . . . . . . . . . 29

*Warrior Sports, Inc. v. National Collegiate Ath. Ass'n*, 623 F.3d 281 (6th Cir. 2010) . . . . . . 5, 8

*Weiss v. York Hospital,* 745 F.2d 786 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) . . . . . . . . . . . 6

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007) . . . . . . . . . 19

*White and White, Inc. v. American Hospital Supply Corp.*, 723 F.2d 495 (6th Cir. 1983)   4, 8, 11

*Yeager's Fuel, Inc. v. Pennsylvania Pwr. & Light Co.*, 22 F.3d 1260 (3d Cir. 1994) . . . . . . . . 28

*Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . 35

Statutes

Patient Protection and Affordable Care Act,
    Pub. L. No. 111-148 & 111-152, 124 Stat. 119, § 2718(b)(2) (2010) . . . . . . . . . . . . . . 29

Public Utility Regulatory Policies Act,
    16 U.S.C. § 2603(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Sherman Act
    15 U.S.C. § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Federal Rules of Civil Procedure
    Rule 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Michigan Compiled Laws
    MCL § 24.285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
    MCL § 124.75(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    MCL § 445.774(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    MCL § 500.3405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    MCL § 500.3507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    MCL § 500.3531(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    MCL § 500.3701 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    MCL § 550.53(l) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    MCL § 550.1101 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    MCL § 550.1509(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33
    MCL § 550.1516(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Pennsylvania Consolidated Statutes
    Pa. Cons. Stat. § 6124 (repealed 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Other Authorities

1A P. Areeda & H. Hovenkamp, *Antitrust Law* (3d ed. 2006) . . . . . . . . . . . . . . . . . 25, 30, 32, 33

Plaintiff the United States respectfully submits this memorandum in opposition to the motion by defendant Blue Cross Blue Shield of Michigan ("Blue Cross") to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 12).[1]

## Introduction and Summary of Argument

Section 1 of the Sherman Act forbids agreements that unreasonably restrain trade, and Count I of the Complaint alleges in substantial detail that Blue Cross, the dominant provider of health insurance in Michigan, has entered into agreements that restrain competition and increase prices.  Specifically, as alleged in the Complaint, Blue Cross sought to insulate itself from competition in health insurance markets throughout Michigan by entering into "most favored nation" agreements ("MFNs") with more than 70 hospitals.  These agreements either (1) require hospitals to charge Blue Cross's competitors *more than* what the hospitals charge Blue Cross, or (2) mandate that hospitals charge Blue Cross's competitors at least as much as they charge Blue Cross, which has caused a number of hospitals to *raise* their prices to Blue Cross's competitors and reduced competition.  Rather than fulfill its statutory mission to lower health care costs, Blue Cross has in many cases increased the prices it paid a hospital, sometimes by several million dollars, in exchange for the hospital's agreeing to an MFN.

In short, the Complaint identifies the relevant provisions of the offending agreements, alleges how these provisions have caused the anticompetitive effects of raising prices and otherwise restricting competition, and defines and explains the relevant markets within Michigan where the MFNs have had these effects.  The Complaint therefore goes well beyond the minimum pleading required to state a plausible violation of Section 1.

---

[1] The State of Michigan will address Blue Cross's motion regarding Count II of the Complaint, alleging violation of Michigan antitrust law, in a separate memorandum.

Implicitly recognizing this fact, Blue Cross begins its motion to dismiss not by challenging the sufficiency of the allegations, but by claiming that its MFNs should be exempt from judicial scrutiny, either because all of Blue Cross's activity has been cloaked with the state action mantle, or because some state interest requires this federal Court to take the extraordinary step of abstaining from applying the federal antitrust laws to the MFNs.  Blue Cross even claims that this action threatens to "usurp" Michigan's ability to regulate health insurance.  BC Mem. 3.

These claims fundamentally mischaracterize the Complaint, *which is joined by the State of Michigan* and which seeks to ensure that the costs of providing health care are not unlawfully inflated by anticompetitive agreements.  Contrary to Blue Cross's claim, the Complaint does not challenge Blue Cross's ability to obtain the lowest possible prices from hospitals.  Instead, the Complaint attacks Blue Cross's use of MFNs to prevent its competitors from obtaining the best prices that *they* can obtain, without interference from Blue Cross.  The Complaint is fully consistent with Michigan's expressed interest in ensuring competition in health insurance markets and in reducing health care costs.

When Blue Cross finally attempts to challenge the sufficiency of the actual pleading, it asserts essentially that MFNs are procompetitive as a matter of law and that nothing in the Complaint provides any basis to question this presumption.  Blue Cross is wrong:  The law is clear that MFNs are subject to a fact-dependent "rule of reason" analysis, which looks to the ultimate effect that Blue Cross's MFNs are likely to have on competition.  There is simply no free pass for MFNs, and the Complaint sufficiently alleges that Blue Cross's MFNs unreasonably restrain competition.

Specifically, the Complaint alleges that Blue Cross's MFNs have substantial anticompetitive effects, lack procompetitive effects, and have led to higher – not lower – prices. The Complaint alleges that Blue Cross's MFNs have caused hospitals to increase prices to competing insurers.  Complaint ¶ 6.  The price increases caused by the MFNs have reduced competition in commercial health insurance markets by raising competitors' costs, which has likely increased premiums and directly increased costs to self-insured employers.  *Id.* ¶¶ 18, 44.[2] Blue Cross intended that its MFNs increase its competitors' hospital prices.  *See, e.g., id.* ¶ 43 (quoting Blue Cross's position that it needed "to make sure [the hospital] get[s] a price increase from [Blue Cross competitor] Priority if we are going to increase [the hospital's] rates").

The Complaint further alleges that Blue Cross entered into MFN-pluses, which require hospitals to charge other insurers *more* than they charge Blue Cross, *id.* ¶ 4(a), to protect itself from  competition, concerned that competitors might negotiate hospital prices closer to Blue Cross's prices.  *Id.* ¶¶ 5, 43.  Blue Cross believed the MFN-pluses would prevent "slippage in our [price] differential from what we experience today."  *Id.* ¶ 43.  In some cases, Blue Cross increased the prices that it pays to hospitals to induce the hospitals to agree to the MFN-pluses. *Id.* ¶¶ 5, 44, 81.  The Complaint specifically alleges that "Blue Cross has not sought or used MFNs to lower its own cost of obtaining hospital services," *id.* ¶ 5, and that there are no

---

[2]  Hospital prices directly affect health insurance premiums because most commercial health insurance plans provide the insured with access to health care provider networks (hospitals and physicians), *id.* ¶ 16, and insurers compete on the price and quality of these networks, *id.* ¶ 14.  Competition among insurers to lower hospital costs therefore lowers premiums.  *Palmyra Park Hosp. Inc. v. Phoebe Putney Mem. Hosp.*, 604 F.3d 1291, 1302 (11th Cir. 2010) (health insurers "compete with each other by reducing the reimbursement rates they pay" hospitals, and where such competition is absent the result is "higher premiums").

efficiencies that would outweigh these anticompetitive effects, *id.* ¶ 81.  These allegations clearly

plead a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

Argument

I.      THE COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF.

The Complaint alleges that Blue Cross's MFNs violate Section 1 of the Sherman Act.  A

Section 1 claim has three elements: (1) an agreement (2) affecting interstate commerce (3) that

unreasonably restrains trade.  *White and White, Inc. v. American Hospital Supply Corp.*, 723

F.2d 495, 504 (6th Cir. 1983).  The Complaint alleges that Blue Cross's MFN clauses are

contained in agreements with hospitals, Complaint ¶ 85, and affect interstate commerce, *id.* ¶ 11,

and Blue Cross does not challenge the sufficiency of these allegations.

Whether an MFN unreasonably restrains trade is assessed under the "rule of reason," as

Blue Cross acknowledges.  BC Mem. 33.  In general, an agreement violates the rule of reason if

it "may suppress or even destroy competition," rather than promote competition.  *American*

*Needle, Inc. v. National Football League*, 130 S. Ct. 2201, 2217 n.10 (2010), *quoting Board of*

*Trade of Chicago v. United States*, 246 U.S. 231, 238 (1918).  This test applies to MFNs, which

violate the rule of reason when they "produce substantial anticompetitive effects in particular

circumstances."  *United States v. Delta Dental of Rhode Island*, 943 F. Supp. 172, 176 (D.R.I.

1976).[3]  In particular, MFNs can "effectively prevent[] discounting to other insurers, and since

---

[3]  *See also Blue Cross and Blue Shield of Ohio v. Bingaman*, 1996 WL 677094 (N.D. Ohio June 24, 1996) (observing "the anticompetitive effects that MFN clauses may have" and finding that "MFN clauses could violate the Sherman Act by restraining competition"), *aff'd sub nom. Blue Cross and Blue Shield of Ohio v. Klein*, 117 F.3d 1420, 1997 WL 400095 (6th Cir. 1997) (table); *United States v. Medical Mutual of Ohio*, 1999 WL 670717, at *12 n.6 (N.D. Ohio Jan. 29, 1999) (noting that the district court had previously "soundly rejected" the proposition that MFNs are procompetitive as a matter of law).  *Blue Cross and Blue Shield of Michigan v.*

-4-

the price of hospital care is the single largest element of health care financing companies' costs . . . [can] effectively prevent[] competing insurance companies from offering more favorable insurance rates to consumers." *Reazin v. Blue Cross and Blue Shield of Kansas*, 663 F. Supp. 1360, 1418 (D. Kan. 1987), *aff'd*, 899 F.2d 951 (10th Cir. 1990).[4]

"To state a claim under the rule-of-reason test, a plaintiff must allege, *inter alia*, that the purportedly unlawful contract, combination or conspiracy produced adverse anticompetitive effects within relevant product and geographic markets." *Warrior Sports, Inc. v. National Collegiate Ath. Ass'n*, 623 F.3d 281, 286 (6th Cir. 2010). Thus, a complaint challenging MFNs under the rule of reason will survive a motion to dismiss where the complaint plausibly alleges that the MFNs likely caused price increases and tended to exclude competition. *Delta Dental*, 943 F. Supp. at 177. No court has ever held that all MFNs are procompetitive as a matter of law, and no court has ever ruled that the type of MFN-plus agreements that Blue Cross has entered into in Michigan are permissible under the rule of reason.[5]

---

*Michigan Association of Psychotherapy Clinics*, 1980 WL 1848, at *3 (E.D. Mich. Mar. 14, 1980), *cited* BC Mem. 8, likewise rejected plaintiff's claim that MFN clauses were illegal *per se*, and noted instead that MFNs are evaluated under the rule of reason.

[4] The appellate court in *Reazin* noted the considerable evidence regarding the anticompetitive effects of Blue Cross of Kansas's MFNs, and held that the jury could reasonably have concluded that the MFNs contributed to Blue Cross of Kansas's monopoly power. 899 F.2d at 971 & n.30.

[5] Courts have upheld equal-to MFNs when they resulted, on balance, in lower prices. *E.g., Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of R.I.*, 883 F.2d 1101, 1111 (1st Cir. 1989); *see Delta Dental*, 943 F. Supp. at 178-179 (distinguishing *Ocean State* on that basis). Courts have found that particular equal-to MFNs were not anticompetitive on a developed factual record, but have recognized their potential for anticompetitive effects. For example, in *Blue Cross and Blue Shield United of Wisconsin v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995), *cited* BC Mem 8, the court noted the potential for MFN clauses to be misused to anticompetitive ends, but found no evidence of anticompetitive effects from MFNs on the record before it – where plaintiff had brought a price-fixing claim and the district court

-5-

Invoking *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), Blue Cross claims that "plaintiffs fail to allege any facts" supporting the Complaint's market definitions, anticompetitive impact, or "plausible economic theory."  BC Mem. 33.  Of course, "arguing that plaintiffs have not pleaded sufficient facts appears to have become the mantra of defendants in antitrust cases."  *Southeastern Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 948 n.7 (E.D. Tenn. 2008) (denying motions to dismiss).

*Twombly* changed the standard for deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in only one respect – it introduced a "plausibility" test.  A complaint must now allege facts sufficient to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).[6]  *Twombly* did not change the general rule that, pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain only "a short plain statement of the claim showing that the pleader is entitled to relief."  Moreover, *Twombly* did not impose a heightened pleading standard in antitrust cases, *Twombly*, 550 U.S. at 556, 570; an antitrust complaint "does not need detailed factual allegations," *id.* at 555; *accord Iqbal*, 129 S. Ct. at 1949.  Nor did *Twombly* shift the burden of persuasion; "defendants bear the burden of proving that plaintiffs' claims fail as a matter of law," *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010).  In short, *Twombly* "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

---

had not considered any MFN or its effects.  65 F.3d at 1415.

[6]  "[D]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 129 S. Ct. at 1950.

The facts at issue on a 12(b)(6) motion are those alleged in the complaint, not those the defendant would prefer had been alleged. "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Because "the attack is on the sufficiency of the complaint, . . . the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Therefore, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Travel Agent Commission Antitrust Litig.,* 583 F.3d 896, 903 (6th Cir. 2009); *accord Carter v. Ford Motor Co.*, 561 F.3d 562, 567 (6th Cir. 2009) (when deciding Rule 12(b)(6) motions, courts should apply "the extremely modest standard of notice pleading, which directs courts to construe pleading[s] liberally"). These principles are *particularly* relevant here because each of Blue Cross's arguments is grounded on mischaracterizations of the Complaint's allegations.[7]

This Complaint fully satisfies *Twombly*. It sufficiently alleges relevant markets and market power, *see* pp. 7-16 below, and provides detailed allegations of anticompetitive effects in many markets caused by Blue Cross's MFNs, *see* pp. 16-20 below.

---

[7] For example, Blue Cross argues repeatedly that "this case attacks Blue Cross's negotiated discounts." BC Mem. 43. Far from attacking discounts, the Complaint plainly alleges that Blue Cross's MFNs *raised* hospital prices to other insurers, and likely raised the price of health insurance to Blue Cross's subscribers and others. Complaint ¶¶ 6, 48. The Complaint explicitly alleges that "Blue Cross has not sought or used MFNs to lower its own cost of obtaining hospital services." *Id.* ¶ 5. Blue Cross may try to disprove these allegations at trial, but it cannot contradict them on a motion to dismiss.

A.     The Complaint Plausibly Alleges Relevant Markets.

Allegations supporting a relevant product or geographic market are sufficient as long as they are plausible and bear a "rational relation to the methodology courts prescribe to define a market." *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) (Sotomayor, J.).  "Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Id.* at 199-200; *see Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 467 (1992) ("the proper market definition . . . can be determined only after a factual inquiry into the 'commercial realities' faced by consumers").  Here, the Complaint identifies "relevant product and geographic markets," as required, *Warrior Sports*, 623 F.3d at 286, and goes further, explaining why the alleged markets are plausible *antitrust* markets.  *See* Complaint ¶¶ 19-32.

1.     *Product Markets*

The extensive facts alleged in the Complaint are more than sufficient to show that its clearly defined product markets are *plausible*, which is all that is required in a complaint.  A product market consists of products that have "reasonable interchangeability." *Kodak*, 504 U.S. at 481-82; *Spirit Airlines, Inc. v. Northwest Airlines, Inc.*, 431 F.3d 917, 933 (6th Cir. 2005); *White and White*, 723 F.2d at 500-01.

The Complaint alleges two product markets – not "two to six markets," as Blue Cross claims.  Complaint ¶¶ 20, 22; BC Mem. 35.  Those two product markets are (1) commercial group health insurance and (2) commercial individual health insurance – the products affected

adversely by Blue Cross's MFNs.  Complaint ¶¶ 20, 22, 24.[8]

These markets are plausible because the Complaint alleges *why* purchasers in each market would not find other products reasonably interchangeable, *id*. ¶¶ 13, 19, 21-23, and why purchasers of either group or individual health insurance would not forgo insurance and purchase health care directly, *id*. ¶ 23 – which is more than the law requires.  *OverEnd Technologies, LLC v. Invista S.A.R.L.*, 431 F. Supp. 2d 925, 930 (E.D. Wis. 2006) (plaintiffs are not required to explain, at the pleading stage, why the alleged market is the relevant market).

Specifically, the Complaint alleges that other products are not reasonably interchangeable with commercial group health insurance because:

- Commercial group health insurance sold in Michigan usually includes access to a provider network, and most employers and insureds consider an insurer's provider network to be an important element of a health insurance product because the network specifies the physicians and hospitals to which patients can turn for service with substantially lower costs to themselves.  *Id*. ¶ 20.

- Commercial individual health insurance is significantly more expensive than group health insurance, and lacks group insurance's tax benefits.  *Id.* ¶ 21. There are no reasonable substitutes for commercial group health insurance and the provider networks

---

[8] Commercial group health insurance consists of health insurance offered by insurers, such as Blue Cross, to employers and other groups.  Complaint ¶¶ 13-15, 20.  It includes both fully insured and self-insured products because those products are alternatives for some large customers.  *Id.* ¶ 15, 19.  Commercial individual health insurance consists of insurance offered to individuals, typically individuals without access to group insurance, by Blue Cross and others.  Complaint ¶ 22.  Contrary to Blue Cross' assertion, Medicare Supplemental products are clearly excluded from plaintiffs' product market definitions because such products are available only to individuals who are eligible for Medicare.  Complaint ¶ 19; BC Mem. 36.

to which it gives access.  *Id.* ¶ 21.

> • Purchasers of group health insurance would not forgo insurance and purchase health care directly, in part, because they would have to pay prohibitively higher hospital rates.  *Id.* ¶ 23.

Similarly, the Complaint alleges that individual commercial health insurance is a product market because no other product is reasonably interchangeable with it.  *Id.* ¶ 22.  Individual health insurance is the only product available to individuals without access to group coverage or government programs that allows them to reduce the financial risk of adverse health conditions and to have access to health care providers at the discounted prices negotiated by commercial health insurers.  *Id.*

Blue Cross does not dispute the plausibility of plaintiffs' common-sense allegations that explain why commercial group health insurance and individual health insurance are plausible relevant product markets.  Nor does Blue Cross identify any other product that it contends is a reasonable alternative to group or individual health insurance.  *See F.T.C. v. PPG Indus., Inc.*, 798 F.2d 1500, 1505-06 (D.C. Cir. 1986) (rejecting attacks on plaintiff's alleged markets when defendant failed to offer alternatives, and plausible alternatives yielded similar results).[9]

Contrary to Blue Cross's claims, a complaint need not include a "market-by-market explanation of the insurance companies involved, and their products and services."  BC Mem. 35.  *Twombly* imposes no such requirement, and the principal case cited by Blue Cross,

---

[9]  The product markets alleged include various health insurance products, including HMO, PPO, Traditional, and other products.  The Complaint does not distinguish between *types* of commercial group health insurance (or commercial individual insurance) or seek to exclude any of them from the markets.

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430 (6th

Cir. 2008), concerned a complaint that "fail[ed] to identify a product market" altogether. *Id.* at

437. Here, plaintiffs have described the nature of the relevant products, explained why there are

no reasonably interchangeable products, and, as discussed below, have properly defined the

relevant geographic markets.[10]

2. *Geographic Markets*

The Complaint also contains more than sufficient allegations to show that its clearly

identified geographic markets are "plausible." As with product markets, Blue Cross does not

seriously dispute the plausibility of Plaintiffs' alleged geographic markets. Instead it demands

more detail, and raises purported factual issues that should be resolved after discovery.[11]

Blue Cross agrees that "the relevant geographic market is 'the area in which the seller

operates and in which the purchaser can practically turn for supplies or services.'" BC Mem.

38; *see Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961). Geographic markets

do not need to be alleged or proven with "scientific precision," *United States v. Conn. Nat'l*

*Bank*, 418 U.S. 656, 669 (1974), nor be defined "by metes and bounds as a surveyor would lay

off a plot of ground." *United States v. Pabst Brewing Co.*, 384 U.S. 546, 549 (1966); *accord*

*White and White*, 723 F.2d at 503. Antitrust plaintiffs need only "present enough information in

---

[10] In any event, the Complaint does identify several of Blue Cross's actual and potential health insurance competitors in specific geographic markets, *e.g.*, Priority, Assurant and Health Alliance Plan ("HAP") in the Upper Peninsula, *id.* ¶ 56; Priority in Alpena, *id.* ¶ 69; and Priority, Physicians Health Plan ("PHP"), McLaren and HealthPlus in Lansing, *id.* ¶ 62.

[11] *E.g.,* BC Mem at 38 ("[W]hy is the Lansing MSA not part of a larger market? Or part of a smaller market, including only part of Lansing? And what about employers with operations throughout the State of Michigan, or the Midwest region, or even nationally, for whom network access to hospitals is wanted but not sufficient?").

-11-

their complaint to plausibly suggest the contours of the relevant geographic market." *Jacobs v. Tempur-Pedic International, Inc.*, 626 F.3d 1327, 1336 (11th Cir. 2010), *cited* BC Mem. 39.

The Complaint alleges 17 specific geographic markets. Further, the Complaint explains that geographic markets for health insurance are local for the intuitive reason that purchasers of health insurance demand "access to networks of hospitals and physicians close to their homes and workplaces." Complaint ¶ 25. Thus, the relevant geographic market for analyzing the effect of Blue Cross's MFNs "is the area in which the hospital subject to the MFN operates and in which employers and insureds can practicably turn for hospitals included in the provider network offered for sale as part of a commercial health insurance product." Complaint ¶ 26.

The Complaint illustrates the local nature of the alleged geographic markets using Lansing as an example. It explains that "Lansing area employers and insureds cannot practicably turn to commercial health insurers that do not offer network access to [physicians and] hospitals in the Lansing" Metropolitan Statistical Area ("MSA"). Complaint ¶ 27. In short, the Lansing MSA is a plausible geographic market because Lansing consumers do not view health insurance plans that would require them to use hospitals and physicians far from Lansing (*e.g.*, in Grand Rapids) as reasonable substitutes for health insurance plans that allow members to use Lansing hospitals.[12] As the Lansing example makes clear, the Complaint alleges plausible local markets.

Contrary to Blue Cross's claim, no authority precludes the use of MSAs as appropriate markets for antitrust analysis. Indeed, in the Supreme Court decision cited by Blue Cross for this

---

[12] Indeed, Michigan insurance regulations would forbid an HMO from selling coverage to Lansing residents without offering network access to Lansing hospitals. Complaint ¶ 31.

claim, *Conn. Nat'l Bank*, 418 U.S. at 670, *cited* BC Mem. 39-40 & n.30, the Court instructed the district court to determine geographic markets with a "localized approach," and the Court upheld using a metropolitan area as an appropriate geographic market in another decision issued *the same day*. 418 U.S. at 668, 670 n.9, *citing United States v. Marine Bancorporation, Inc.,* 418 U.S. 602, 619 (1974).[13]

Blue Cross argues that modern health insurance markets may be "national" rather than local, citing a 25-year-old case, *Ball Mem'l Hosp. v. Mut. Hosp. Ins. Inc.*, 784 F.2d 1325, 1335 (7th Cir. 1986), which focused on whether capital for spreading financial risk can be supplied on a national basis. BC Mem. 40, n.31. But *Ball Memorial* failed to address the significance of provider networks.[14] As the Complaint alleges, the core component of health insurance products today is access to a local network of health care providers at rates far lower to those that an individual could negotiate directly. The common-sense allegation that consumers demand access to local providers, and therefore that health insurance markets are local, *see Reazin*, 899 F.2d at 971-72 & n.32, is all that is needed to make the Complaint's geographic market definitions "plausible" under *Twombly*.

---

[13] Many courts have found MSAs or counties to be proper geographic markets. *See, e.g., F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 461 (1986) ("markets for dental services tend to be relatively localized," delineating markets by county); *Marathon Oil Co. v. Mobil Corp.,* 669 F.2d 378, 381 (6th Cir. 1981) (upholding finding of local geographic markets, including Muskegon, MI); *Weiss v. York Hospital,* 745 F.2d 786, 825 (3d Cir. 1984) (jury finding that the appropriate geographic market was the York, Penn. MSA); *cf. Marshfield Clinic*, 65 F.3d at 1411 (in defining physician service markets, "it would have been much simpler . . . to have treated the counties as the market"), *cited* BC Mem. 1.

[14] In *Reazin*, the Tenth Circuit disagreed with *Ball Memorial* and recognized the importance of Blue Cross of Kansas's provider network, including direct contracts with local hospitals, as a source of competitive advantage over other insurers that could not until recently contract directly. 899 F.2d at 971-72 & n.32.

-13-

3.     *Market Power*

At the pleading stage, all that is required to plead market power is that the complaint "provide a sufficient factual predicate to support its allegations that the defendants enjoy market power in the relevant market."  *Southeastern Milk*, 555 F. Supp. 2d at 946, *citing Foundation for Interior Design v. Savannah College*, 244 F.3d 521, 531 (6th Cir. 2001).

Market power can be inferred from high market shares, *Spirit v. Northwest*, 431 F.3d at 935, and the Complaint alleges Blue Cross's approximate market share in each alleged geographic market – shares ranging from more than 40% to more than 80%.  Complaint ¶ 28.  Blue Cross acknowledges that it is the "dominant" health insurer in Michigan, BC Mem. 16, as Michigan's Office of Financial and Insurance Regulation ("OFIR") has also observed.[15]

Blue Cross nonetheless claims that the Complaint is "without any allegations of market shares," because the Complaint does not allege market shares by geographic market *separately* for group and individual health insurance.  BC Mem. 36.  The shares in the Complaint are the Plaintiffs' best estimate of Blue Cross's market shares in group and individual insurance,[16] and

---

[15]   OFIR, *The State of Competition in the Small Employer Carrier Health Insurance Market in the State of Michigan*, at 16 (May 2009) (App. 1).  Appendices to this memorandum are cited as, *e.g.*, "App. 1."  Blue Cross's appendices are cited as, *e.g.*, "BC App. 1."

[16]   The Complaint alleges that "approximately 53% of Michigan residents obtained . . . [commercial] group health insurance," and "about 7% obtained [commercial] individual insurance . . . ."  Complaint ¶ 13. Thus, 88% of commercially insured lives are covered by group insurance.  Because commercial insurance is overwhelmingly group insurance, it would be surprising if Blue Cross's share of a local commercial group health insurance market were materially different from its share of commercial insurance in the local market overall.  The 40-80% shares alleged in Complaint ¶ 28 are sufficiently high that slight differences between commercial insurance shares and shares in group and individual insurance, respectively, are unlikely to make Blue Cross's share in either market insufficient to infer market power, especially in light of the additional facts alleged in the Complaint, such as Blue Cross's overall shares and dominance statewide, *id.* ¶ 1.

-14-

courts have relied on approximations of market share well past the pleading stage. *See, e.g., PPG*, 798 F.2d at 1505 (preliminary injunction); *Delta Dental*, 943 F. Supp. at 192 (denying motion to dismiss complaint challenging MFNs where "a plausible allegation that Delta possesses significant market power due to its 35%-45% share"); *Korea Kumho Petrochem. v. Flexsys Am. L.P.*, 2008 WL 686834, at *9 (N.D. Cal. Mar. 11, 2008) (an antitrust complaint "need not necessarily quantify [defendant's] market share with precision"). The 40% to 80% estimates of Blue Cross's share of commercial health insurance in the various alleged geographic markets, Complaint ¶ 28, are more than sufficient to support an inference of market power. *See, e.g., Toys 'R' Us, Inc. v. F.T.C.*, 221 F.3d 928, 937 (7th Cir. 2000) (shares between 20% and 49% sufficient, with evidence of actual anticompetitive effects, to sustain an antitrust claim).

The Complaint also alleges facts in addition to market shares that are more than sufficient to support the inference of market power, by showing that the MFNs have excluded competitors and caused price increases. *See* Complaint ¶¶ 41-79. That Blue Cross has obtained MFNs itself would support a finding of market power *at trial*. *See Reazin*, 899 F.2d at 971 & n.30.

Blue Cross's charge that the Complaint makes only "conclusory allegations" regarding entry barriers, BC Mem. 42, ignores the Complaint's discussion of the competitive significance of local provider networks as a barrier to entry, Complaint ¶ 14, and the role of Blue Cross's MFNs in maintaining those barriers, *id.* ¶ 6. *See Reazin*, 899 F.2d at 971-72 ("to the extent that the *Ball Memorial* court opined that barriers in the health care financing market are *always* low, in any health care financing market in the country, we respectfully disagree," emphasis in original).

Moreover, the Complaint's allegations of actual detrimental effects on competition lessen the need for an elaborate inquiry into market power.  "Since the purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition, 'proof of actual detrimental effects, such as a reduction of output,' can obviate the need for an inquiry into market power, which is but a 'surrogate for detrimental effects.'"  *Indiana Fed'n of Dentists*, 476 U.S. at 460-61.

B.   The Complaint Plausibly Alleges that the MFNs have Caused Anticompetitive Effects.

Blue Cross asserts, in essence, that MFNs in general are procompetitive, and it relies on this assertion to suggest that Plaintiffs allege no facts plausibly showing that its own MFNs had any anticompetitive impact.  As discussed at pp. 4-5 above, the case law provides no support for this proposition. Although MFNs may indeed have a procompetitive effect, whether or not a particular MFN has such an effect requires a factual inquiry and, ultimately, a balancing of anticompetitive and procompetitive effects.  *See Delta Dental*, 943 F. Supp. at 176.  Indeed, a rule-of-reason analysis of MFNs "turns precisely on the severity of the alleged anticompetitive effects flowing from the application of [the defendant's] MFN clause juxtaposed against any competitive benefits."  *Delta Dental,* 943 F. Supp. at 179.  This balancing is not appropriate at the pleading stage where, as here, plaintiffs have alleged plausible harm.[17]

---

[17]  Blue Cross argues that the Complaint is "facially implausible" in alleging "an identical lack of procompetitive benefits" for each market.  BC Mem. 42, citing Complaint ¶ 81.  At the appropriate time, Blue Cross, not Plaintiffs, bears the burden of presenting evidence of procompetitive benefits.  *Care Heating & Cooling, Inc. v. American Standard, Inc.*, 427 F.3d 1008, 1012 (6th Cir. 2005).

-16-

Blue Cross's claim that the Complaint fails to allege facts that "the MFNs had any anticompetitive impact in any one of these numerous markets," BC Mem. iii, 33, is baseless. The Complaint includes detailed allegations explaining how Blue Cross's MFN clauses have negatively affected competition in health insurance markets throughout Michigan, by raising competitors' costs, likely increasing premiums, and directly increasing costs to self-insured employers.  Complaint ¶¶ 41-48.  The Complaint also provides specific examples, including in the Upper Peninsula, Alpena County, and the Lansing area:

> ● Blue Cross entered into an MFN-plus with Marquette General, the only tertiary care hospital in the Upper Peninsula, that requires the hospital to charge competing insurers at least 23% more than it charges Blue Cross.  Complaint ¶ 49.  That MFN prevented Priority Health and other potential competitors from entering the market.  *Id.* ¶ 55.  In Blue Cross's own words, its contract with Marquette General will "keep blue lock on U.P.," *id.* ¶ 57, and protect Blue Cross's market share of more than 65% in that market, *id.* ¶ 28a.

> ● Blue Cross offered Alpena Regional Medical Center, the only hospital in the Alpena area, a substantial rate increase in exchange for an MFN-plus and a commitment that, during the four-year term of the contract, the hospital would not improve the discount it gave to any other health insurer.  *Id.* ¶ 68.  As a result of the MFN-plus, Alpena Regional increased its prices to Priority Health, likely resulting in a significant loss of competition in the health insurance market in the Alpena area.  *Id.* ¶ 69.     ● Blue Cross entered into a ten-year contract with Sparrow Hospital, in Lansing,  that requires the hospital to charge most other insurers at least 12% more than what Blue

Cross pays.  This MFN-plus will likely result in a price increase this year to the third-largest insurer in Lansing, and could cause other hospitals to increase prices charged to Sparrow's own health plan.  *Id.* ¶¶ 60, 63, 64.

The Complaint provides additional, specific examples of the actual anticompetitive effects of Blue Cross's MFNs in Traverse City, *id.* ¶¶ 70-72, the Thumb, *id.* ¶¶ 73-76, and at several community hospitals, *id.* ¶¶ 53-54, 65, 77-79.  Indeed, the allegations that actual anticompetitive effects have already occurred support the plausibility of the alleged likely anticompetitive effects.  *See Indiana Fed'n of Dentists*, 476 U.S. at 460-61.

Blue Cross offers no reasoned argument why the alleged anticompetitive effects are implausible.  Instead, Blue Cross argues that the Complaint fails to allege "foreclosure."  BC Mem. 43.  Plaintiffs are not required to allege  "foreclosure" or other conclusory "magic words," so long as "the facts alleged may reasonably be construed to state a claim."  *Archey v. Hyche*, 935 F.2d 269, 1991 WL 100586, at *4 (6th Cir. 1991) (table); *accord, e.g., Segal v. Fifth Third Bank*, 581 F.3d 305, 310-11 (6th Cir. 2009).

A competitor is "foreclosed" from competing when it is denied or disadvantaged in its access to significant sources of input or distribution.  *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 189-90 (3d Cir. 2005).  Blue Cross has entered into MFNs with major hospitals and hospital systems, and with community hospitals, each of which is typically the only hospital in its community.  Complaint ¶ 4(b).  Because health insurers compete on the breadth and quality of their networks, Blue Cross's competitors must include the hospitals with MFNs in their networks if they are to be able to compete effectively against Blue Cross.  *Id.* ¶ 14.  The importance of these hospitals to competitors' networks is shown by the fact that competitors have agreed to pay

dramatically higher prices resulting from the MFNs.  *See, e.g., id.* ¶¶ 69 (Alpena), 77-79 (other

community hospitals).  Moreover, some competitors have been excluded altogether.  In the

Upper Peninsula, Priority's inability to obtain competitive hospital prices, as a result of Blue

Cross's MFN-plus with Marquette General, caused Priority not to enter the Upper Peninsula

market.  *Id.* ¶ 56.  Thus, the Complaint explicitly alleges exclusion (or "foreclosure") of Priority

in the Upper Peninsula, as well as alleging facts that Priority and other competitors were

disadvantaged in obtaining competitive contracts with significant inputs – major hospitals – in

other markets.

Blue Cross's argument that the Complaint should be dismissed because it does not allege

"recoupment" is similarly misplaced.  BC Mem at 45, *citing Weyerhaeuser Co. v. Ross-Simmons*

*Hardwood Lumber Co.*, 549 U.S. 312 (2007).  *Weyerhauser* reviewed a claim that the defendant

paid too much for an important input (alder sawlogs), which "logically require[d]" defendant to

"incur short-term losses."  549 U.S. at 322.  The claim was that the high prices bid by

Weyerhaeuser for alder sawlogs were the sole source of the [commercial] putative

anticompetitive effects, which the Court characterized as "predatory bidding."  *Id.* at 320.  The

Court held that to prove a predatory bidding claim a plaintiff must prove the "defendant has a

dangerous probability of [later] recouping the losses incurred" after competing purchasers were

excluded from the market.  509 U.S. at 325.  The Court imposed this requirement in part because

the allegedly anticompetitive bidding would otherwise be indistinguishable from vigorous

competition for purchasing an input, which typically benefits consumers.  *Id.* at 323-24.

This is not a predatory bidding case.  Here, the challenged anticompetitive device is Blue

Cross's use of MFNs, which prevents other insurers from acquiring hospital services at prices

lower than or equal to what Blue Cross pays.  The Complaint alleges that, in securing some of

the MFNs, Blue Cross paid an inducement to hospitals.  Complaint ¶ 5.  Properly construed, the

Complaint alleges those inducements exacerbate the harm caused by Blue Cross's MFNs –

higher hospital prices and, in turn, higher commercial health insurance prices – not that the

higher payments to hospital were the sole source of the alleged harm.  Indeed, the Complaint

does not allege that Blue Cross paid all hospitals more for its MFNs, but instead alleges that its

MFNs lead to actual or likely anticompetitive effects.  Moreover, unlike the claim in

*Weyerhaeuser*, the Complaint here does not allege that Blue Cross incurred short-term losses

when it paid some hospitals to accept the MFNs, which would be necessary to trigger

*Weyerhaeuser*'s recoupment requirement.  Therefore, that recoupment requirement does not

apply to this case.

## II.   BLUE CROSS HAS NOT SHOWN THAT THE CHALLENGED CONDUCT IS ENTITLED TO THE STATE ACTION EXEMPTION.

In light of the strong federal interest in the Sherman Act's "overarching and fundamental

polic[y]" of protecting competition, *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S.

389, 398-99 (1978), the state action doctrine is "narrowly construed."  *First Am. Title Co. v.

Devaugh*, 480 F.3d 438, 445 (6th Cir. 2007).  Its application is "rigorous," *Patrick v. Burget*, 486

U.S. 94, 100 (1988), not the "low hurdle" Blue Cross claims.  BC Mem. 9.  To prevail on its

state action defense, Blue Cross must satisfy the Supreme Court's two-part *Midcal* test:  Blue

Cross must show *both* that the Michigan legislature has articulated a clear and affirmative policy

to allow the anticompetitive conduct in question *and* that the State of Michigan provides active

supervision of that anticompetitive conduct.  *California Retail Liquor Dlrs. Ass'n v. Midcal*

*Aluminum*, 445 U.S. 97, 105 (1980).  Blue Cross has the burden of proving both elements.  *FTC*

*v. Ticor Title Ins. Co.*, 504 U.S. 621, 631 (1992).

Blue Cross's state action defense is baseless and is contradicted by its own arguments in

prior cases.  Far from being the public entity it purports to be, Blue Cross is a private entity not

subject to state control.  Indeed, prior to this action, Blue Cross itself has insisted in court filings

that it is a private entity, including in a recent lawsuit regarding its contracts with healthcare

providers:

> BCBSM is a private entity.  The State of Michigan has *not* "so far insinuated itself
> into a position of interdependence" with BCBSM so as to be recognized as a
> participant in BCBSM's challenged activities.  Although BCBSM's regulation by
> the state may meet or even exceed that of some other insurance companies,
> BCBSM is a private corporation, which is *not* an agent of the state.  "Although
> BCBSM is regulated by the Commissioner, it is not managed by the
> Commissioner.  It has its own officers and board of directors to which
> management of the corporation is statutorily entrusted."  *Blue Cross and Blue*
> *Shield of Michigan v. Demlow*, 403 Mich. 399, 418, 270 N.W.2d 845 (1978).

Brief of Blue Cross and Blue Shield of Michigan, *Michigan Chiropractic Association v. Office of*

*Fin. and Ins. Servs. & Blue Cross and Blue Shield of Michigan*, Mich. Ct. App. No. 264701

(filed Oct. 24, 2005).  The court agreed that Blue Cross was a private actor.  2006 WL 335857, at

*4 (Mich. App. Feb. 14, 2006).  *See* pp. 33-35 below.

Nor does Blue Cross's claim that it is "not a private profit-seeking competitor" matter.

BC Mem. 1.  "It is beyond debate that [tax-exempt] nonprofit organizations can be held liable

under the antitrust laws."  *American Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456

U.S. 556, 576 (1982).  Even if Blue Cross were a state agency (which it is not), the state action

exemption would be disfavored when (as here) the anticompetitive conduct at issue is

commercial rather than regulatory activity.  *See City of Columbia v. Omni Outdoor Advertising*,

499 U.S. 365, 374-75 (1991) (contrasting the governmental function of zoning with commercial activity).[18]

In any event, state action analysis focuses on the nature of the alleged anticompetitive *conduct*, not the nature of the defendant.  *See Devaugh*, 480 F.3d at 444-49 (examining *conduct* of elected public officials).  Blue Cross tries to blur this focus by claiming that it is a pervasively regulated entity.  *See*, *e.g.*, BC Mem. at 2-3, 9, 11-12, 14-17, 19-21, 23, 27, 29, 32.  That effort is misplaced.  Courts have repeatedly rejected arguments from heavily regulated entities that a regulatory program – no matter how extensive – itself justifies application of the state action doctrine.[19]  In *Ticor*, the Court noted *Cantor*'s holding that "Michigan [can] regulate its public utilities without authorizing monopolization," or giving rise to a valid state action defense.  504 U.S. at 635.

A.    The Michigan Legislature Has Not Clearly Articulated an Intent To Displace Competition with Regulation Contemplating the Challenged Conduct.

The clear-articulation requirement ensures that a defendant cannot thwart the national policy in favor of competition "by casting a gauzy cloak of state involvement over what is essentially" private anticompetitive conduct.  *Midcal*, 445 U.S. at 106.  Thus, any state policy to allow the challenged anticompetitive conduct must be one "clearly articulated in the first

---

[18]  *See also Delta-Turner, Ltd. v. Grand Rapids–Kent County Convention/Arena Authority*, 600 F. Supp. 2d 920, 929 (W.D. Mich. 2009) (conduct of county-owned arena that raised costs of rival arena was "commercial market activity," and any state action exemption would be "less justified").

[19]  *See*, *e.g.*, *Cantor v. Detroit Edison Co.*, 428 U.S. 579, 595-96 (1976) ( "[A]ll economic regulation does not necessarily suppress competition.  . . . .  There is no logical inconsistency between requiring [a public utility] to meet regulatory criteria insofar as it is exercising its natural monopoly powers and also to comply with antitrust standards to the extent that it engages in business activity in competitive areas of the economy.").

instance not by a state agency, but by the State itself, such as a policy approved by a state legislature . . . ." *Brentwood Academy v. Tenn. Sec. Sch. Athletic Ass'n*, 442 F.3d 410, 441 (6th Cir. 2006), *rev'd on other grounds*, 551 U.S. 291 (2007).

Blue Cross's MFNs fail to satisfy the "clear articulation" test for two reasons. *First*, its anticompetitive agreements with Michigan hospitals are not the logical or foreseeable result of any state legislative enactment. *Second*, the clear policy of the State is to promote, rather than displace, competition between health insurers.

### 1. *MFNs Are Not the Logical or Foreseeable Result of a Legislative Enactment.*

As Blue Cross implicitly concedes, no law or regulatory scheme expressly authorizes Blue Cross to enter into anticompetitive agreements with hospitals. Consequently, Blue Cross must show that its allegedly anticompetitive MFN and MFN-plus clauses are the "foreseeable" or "logical" result of state legislation. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 43 (1985); *Four T's, Inc. v. Little Rock Mun. Airport Comm'n*, 108 F.3d 909, 914 (8th Cir. 1997) ("challenged restraint" must be "a necessary and reasonable consequence of engaging in the authorized activity").[20]

In an attempt to show a clear statutory articulation, Blue Cross relies on general statutory grants of authority to enter into hospital contracts. However, the mere grant of power to enter into purchasing contracts does not foresee, let alone logically result in, *anticompetitive* activity.

---

[20] "[P]lainly the requirement of 'clear articulation and affirmative expression' is not satisfied when the State's position is one of mere *neutrality* respecting the municipal actions challenged as anticompetitive." There is no clear articulation "when the State's position is one of mere neutrality respecting the actions challenged as anticompetitive." *Community Comm'ns v. City of Boulder*, 455 U.S. 40, 55 (1982); *accord Brentwood Academy,* 442 F.3d at 441.

*Devaugh* – the controlling Circuit authority – makes this point clearly.[21]  Defendants there were

elected county officials – registers of deeds – who refused to sell duplicate title records in an

electronic format unless the purchaser agreed not to resell or give the records to anyone else.

480 F.3d at 440.  The registers claimed that statutory provisions that gave them the power to sell

copies of title documents and manage their own business affairs logically and foreseeably

implied the power to condition the provision of electronic records on condition that the buyer not

resell or give away the copies (in competition with the registers).  *Id.* at 454-55.

The Court of Appeals rejected this argument, holding that the fact that the state granted

"general powers to make contracts . . . tells us nothing . . . about whether [] exercise of that []

power qualifies" for exemption from the Sherman act under the state action [doctrine]."  *Id.*

at 455.  In particular, the Court held that "the discretion" to engage in a commercial function

"does not logically result in" exercising that discretion to advantage the registers against "others

who might compete with" them.  *Id.* at 449.  Blue Cross ignores *Devaugh*.[22]

Similarly, the Legislature's grant to Blue Cross of authority to contract with hospitals

does not logically or foreseeably lead to the conclusion that the Legislature authorized Blue

---

[21]  *See also Shames v. Cal. Travel & Tourism Comm'n*, 626 F.3d 1079, 1084 (9th Cir.
2010) (facilitation of collusive agreement among rental car companies not logical result of
authority to assess fees to companies and in turn allow companies to pass on fees to customers);
*Brentwood Academy*, 442 F.3d at 441 (grant of authority to agency to develop policies for public
schools did not establish policy to allow anticompetitive recruiting agreements).

[22]  Instead, Blue Cross relies on an earlier decision, *Jackson, Tenn. Hosp. Co., LLC v.
West Tenn. Healthcare*, 414 F.3d 608 (6th Cir. 2005), BC Mem. 10, where the issue was whether
there was clear authorization for a hospital district to enter into allegedly anticompetitive
exclusive agreements with doctors and insurance companies.  The Court found clear articulation
in a provision expressly granting the hospital authority to enter into agreements "regardless of
the competitive consequences thereof."  414 F.3d at 612.  Blue Cross can point to no such
provision in Michigan law applicable to its contracting or its MFNs.

Cross to contract on any particular terms – and therefore Blue Cross's use of MFNs, like the

*Devaugh* registers' resale prohibitions, is not clearly articulated under *Town of Hallie*.

Other courts of appeals have reached the same conclusion as *Devaugh* in cases involving

health care. *See, e.g., Surgical Care Center of Hammond, L.C. v. Hospital Service Dist. No. 1 of

Tangipahoa*, 171 F.3d 231, 235 (5th Cir. 1999) (en banc) (statute allowing hospital to enter into

contracts with insurers did not authorize anticompetitive exclusive contracts); *Lancaster

Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 400 (9th Cir. 1991) ("broad

authority to provide hospital services, in and of itself," does not "establish authority to exclude

others from providing hospital services").[23]

Blue Cross's reliance on Michigan's Nonprofit Health Care Corporation Reform Act, PA

350, MCL § 550.1101 *et seq*. (BC App. 26), which purportedly "embraces [its] hospital

contracts," BC Mem. 13, is misplaced.  To the extent that statute does address the competitive

effects of Blue Cross's hospital contracts, it is concerned with ensuring that they do *not* reduce

competition.  The statute provides that "no portion of [Blue Cross's] fair share of hospitals'

reasonable financial requirements shall be borne by other health care purchasers."  MCL §

550.1516(2)(b).  It does not authorize Blue Cross to *increase* other purchasers' (*i.e.*, its

competitors') hospital costs.  PA 350's authorization of "financial incentives and disincentives"

in provider contracts, MCL § 550.1516(2)(b), *cited* BC Mem. 12, does not support Blue Cross's

contention.  The section refers only to "incentives to promote alternate methods of delivery of

---

[23]  *See also* 1A P. Areeda & H. Hovenkamp *Antitrust Law* ¶ 225b4, at 151 (3d ed. 2006)
("Areeda") ("most corporations have [the power to make contracts but] one does not infer . . .
from them the power to behave anticompetitively").

health care, including preventative health care, home health care, and nurse midwives." It makes

no mention of MFNs or other devices that raise hospital costs to rival insurers wrongly.[24]

Blue Cross also relies on a statement in the legislative history that it should "use . . . its

size to obtain hospital rates that would be lower than those available to commercial health

insurers." BC Mem. 16, *quoting* House Bill 4555 Second Analysis, at 7 (Feb. 19, 1981) (BC

App. 21). Obviously that statement provides no basis to infer that the Legislature intended to

allow Blue Cross to harm competition by causing hospitals to charge Blue Cross's competitors

substantially *higher* prices than they would otherwise pay. Indeed, four years after this statement

was made, the Legislature passed the Prudent Purchaser Act, which allowed all health insurers to

"negotiate with providers for the provision of lower cost services." House Bills 4798-4801,

5067-5069 Third Analysis, at 3 (Jan. 12, 1984) (App. 2). The Legislature intended that law to

"inject[] a much-needed measure of price competition into the health care marketplace," *id.*, an

intent clearly inconsistent with the use of anticompetitive agreements.

2.     *Michigan Law Seeks To Promote Competition in Health Insurance, Not Displace It.*

Far from enacting "a clear and affirmative state policy to displace pure competition,"

*Shames*, 626 F.3d at 1083, *citing City of Columbia*, 499 U.S. at 373, Michigan's Legislature

clearly intended that health insurance markets in the State be competitive. When a state

legislature adopts competition as its policy, it does not intend to displace competition with

---

[24] BC App. 9 at 3; BC App. 2 at 15 (noting "incentives for additional efficiency and quality initiatives"). To the extent the statute is ambiguous, courts find clear articulation "lacking when the claimed authorizing provision seems to have alternative competitive and anticompetitive meanings, but the defendant relies on the latter." Areeda ¶ 225, at 149.

anticompetitive regulation. *Lancaster*, 940 F.2d at 403 ("indications that a state's policy is to support competition" via legislation passed after enabling statute preclude finding of clear articulation).[25]

The Michigan Legislature has adopted a policy that promotes competition among health insurers – Blue Cross included – and that recognizes the benefits of competition among health insurers, including lower premiums and better quality of care:

  • Michigan licenses other commercial health insurers, including for-profit carriers and non-profit HMOs, to sell health insurance in Michigan in competition with Blue Cross. *See* MCL §§ 500.3507 (HMOs), 500.3405 (PPOs).

  • Michigan allows all health insurers to negotiate discounted contracts with hospitals. *See* MCL §§ 500.3531(2) (HMOs); 550.53(1) (PPOs). These agreements must "control health care costs" and ensure "quality of health care," MCL §§ 500.3531(2), 550.53(1), just as Blue Cross's provider agreements are supposed to do.

  • OFIR must conduct an annual evaluation of the state of competition in the small group employer market for health insurance, and determine whether there is "a reasonable degree of competition" among health insurers, including Blue Cross.[26] MCL § 500.3701 *et seq.* In passing this law, the legislature recognized the need for "a

---

[25] *Devaugh*, 480 F.3d at 448; *California ex rel. Lockyer v. Mirant Corp.*, 266 F. Supp. 2d 1046, 1056 (N.D. Cal. 2003) ("if the state policy does not conflict with the goal of the federal antitrust laws, there is no need to apply the [state action] doctrine at all"); *Reazin*, 663 F. Supp. at 1418 (MFNs not exempt under state action doctrine because state policy is "pro-competitive").

[26] OFIR has found that Blue Cross is the "dominant carrier in the market." *See* App. 1 at 16. The Commissioner also found a "reasonable degree of competition," *id.* at 17, but did not discuss MFNs, and was then unaware of Blue Cross's MFN-pluses. *See* p. 30 below.

competitive marketplace" for health insurance.  Senate Bill 460 First Analysis, at 11 (May 23, 2003) (App.3).

● PA 106 of 2007 requires that public employers solicit "4 or more bids" when selecting a health insurance carrier.  MCL § 124.75(2).  The Legislature believed that an absence of competition for these employers was responsible for a "dramatic[]" increase in health care costs in Michigan.  Senate Bill 418 Second Analysis, at 7 (Sept. 7, 2007) (App.4).  In response, the Legislature felt that the Act would "reduce the cost of health benefits for public employers in the State" by means of "competitive bidding."  *Id.*

● OFIR must review mergers of insurance companies to determine whether the "effect of the merger . . . would be to substantially lessen competition in insurance in [Michigan] or tend to create a monopoly in" Michigan, and block mergers that violate this standard.[27]  MCL § 500.1315(b) (adopting standard from Clayton Act § 7, 15 U.S.C. § 18).

Michigan's Legislature has confirmed its endorsement of competition as state policy by stating that OFIR approval of Blue Cross's conduct "shall not affect the enforcement of the federal antitrust act by federal courts or federal agencies."  MCL § 445.774(6) (BC App. 27).[28] This statutory language negates any claim that the Michigan Legislature "clearly" intended to

---

[27]  *See McCaw Personal Commn's, Inc. v. Pacific Telesis Group*, 645 F. Supp. 1166, 1172 (N.D. Cal. 1986) (no clear articulation where "antitrust component" incorporated into state agency review of acquisitions because the inclusion of such a provision suggests that state's intent was to "*foster* competition, rather than to displace it") (emphasis in original).

[28]  "This act [the state antitrust act] shall not apply to a transaction or conduct of an authorized health maintenance corporation, health insurer, medical care corporation, or health service corporation, when the transaction or conduct is to reduce the cost of health care and is permitted the commissioner.  *This subsection shall not affect the enforcement of the federal antitrust act by federal courts or federal agencies*."  MCL § 445.774(6) (emphasis added).

-28-

exempt Blue Cross or its anticompetitive conduct from *federal* antitrust enforcement.[29]  That the State of Michigan has joined this lawsuit as a *plaintiff* is also "powerful" evidence that application of the state action doctrine is not consistent with the "States' best interest." *Ticor*, 504 U.S. at 635.

All of these statutes show that the Michigan Legislature seeks a *competitive* health insurance marketplace, and that competition helps to lower premiums and improve health care quality.[30]  These laws endorse robust competition among health insurers, including Blue Cross, and refute Blue Cross's contention that the State intended "Blue Cross [to] use its size to . . . put [other] insurers at a competitive disadvantage." BC Mem. 16.

     B.     <u>The State Has Not Actively Supervised Blue Cross's Conduct at Issue.</u>

          1.     *The State Has Not Approved or Supervised the MFNs.*

Blue Cross also cannot satisfy *Midcal*'s "active supervision" test.  That test requires Blue Cross to show that Michigan has "exercised sufficient independent judgment and control so that the details of [its MFN and MFN-plus clauses] have been established as a product of deliberate state intervention, not simply by agreement among private parties." *Ticor*, 504 U.S. at 634-35.

---

[29]  This Court should not read *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 22 F.3d 1260 (3d Cir. 1994), or *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429 (9th Cir. 1992), to the contrary.  Those cases dealt with a *federal* statute that was superficially similar to the state statute at issue here.  *See* 16 U.S.C. § 2603(1).  In interpreting that provision, those courts were reconciling two *federal* statutes, not seeking to determine a *state's* intent regarding competition.

[30]  Competition in health insurance is widely regarded as lowering premiums and health care costs.  *See, e.g., U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 599 (1st Cir. 1993) ("competition remains an essential force in controlling costs and improving quality in health care"); Patient Protection and Affordable Care Act, Pub. L. No. 111-148 & 111-152, 124 Stat. 119, 137, § 2718(b)(2) (2010) (in determining ratios for customer rebates, states "shall seek to ensure . . . competition in the health insurance market" so that premiums will be used for "quality improvements").

"Actual state involvement, not deference" to private anticompetitive conduct, is the "precondition" for a finding of active supervision. *Id.* at 633. Blue Cross has not shown that Michigan actively supervised Blue Cross's use of MFNs.

As Blue Cross recognizes, the Complaint challenges "two completely different types of MFNs," BC Mem. 6, which have different histories. Blue Cross negotiated its *MFN-plus* agreements (and a few equal-to MFNs) individually with major hospitals. Complaint ¶ 36. Blue Cross does not claim that it disclosed these MFN-pluses to OFIR, or that OFIR ever approved them. BC Mem. 24.

The *equal-to MFN* in Blue Cross's Participating Hospital Agreement with more than 40 smaller "Peer Group 5" hospitals, Complaint ¶ 40, was also initially withheld by Blue Cross from OFIR, was eventually disclosed, but was never specifically approved by OFIR. BC App. 2 at 16. Because the state did not approve either type of MFN there can be no "active supervision." *Ticor*, 504 U.S. at 638.[31]

### a. *MFN-plus Clauses*

Blue Cross does not point to any instance where it sought, let alone received, OFIR's review or approval of MFN-pluses. Indeed, Blue Cross acknowledges that OFIR did not conduct a "careful MFN-by-MFN evaluation in the context of balancing Blue Cross's goals and mission." BC Mem. 24. Blue Cross's only attempt to show active supervision of its MFN-pluses is to point to a complaint made at a public hearing held by OFIR on another subject on

---

[31]   *See also CTC Comm'ns Corp. v. Bell Atl. Corp.*, 77 F. Supp. 2d 124, 135 (D. Me. 1999) ("if the particular action at issue was never authorized by the state regulatory commissions, there can be no active supervision"); Areeda ¶ 226, at 182 (viable active supervision argument requires a showing that "the practice at issue was brought to the attention of the regulatory agency, the agency considered the practice with the requisite degree of attention, and that the agency then approved it").

November 23, 2009, and OFIR's subsequent *inaction* in response to those complaints.  BC Mem.
24.  That is not the "pointed reexamination" of the MFN-plus clauses the state action doctrine
requires.  *Midcal*, 445 U.S. at 106 (proof required that state officials engaged in a "pointed
reexamination" of the conduct in question).[32]  Active supervision cannot be inferred from the
silence of state authorities.  *Ticor*, 504 U.S. at 638 (party arguing state action "must show that
state officials have undertaken the necessary steps to determine the specifics" of the
anticompetitive conduct).[33]

### b. *Equal-to MFN Clauses*

Similarly, OFIR's minimal, after-the-fact review of the equal-to-MFNs with Peer Group
5 community hospitals did not constitute active supervision.  Blue Cross overstates the nature
and scope of OFIR's review of the Provider Class Plan ("PCP") that contained most of the equal-
to MFNs at issue.[34]  A PCP is a template for Blue Cross's agreements with hospitals (or another
class of providers), and must include measurable objectives for meeting PA 350's access, quality
of care, and cost goals.  OFIR's review of the PCP is limited to determining whether the PCP
meets these three goals.  BC App. 10 at 7.

---

[32] *Kentucky Household Goods Carriers Ass'n Inc.,* 139 F.T.C. 404, 416-17 (2005) (App.
6) (for supervision to be sufficient, a "state official or agency must have ascertained the relevant
facts, examined the substantive merits of the private action, and assessed whether the private
action comports with the underlying statutory criteria"), *aff'd*, 199 F. App'x 410 (6th Cir. 2005).

[33] *See Kentucky Household Goods*, 199 F. App'x at 411(state agency must publish an
explanation of why challenged restraint is permissible); *American Tel. & Tel. Co. v. IMR Capital
Corp.*, 888 F. Supp. 221, 240 (D. Mass. 1995) (neither "mere failure to act against allegations"
nor "theoretical power to regulate such behavior" is sufficient for active supervision).

[34] PCP review applies only to Blue Cross's "traditional" plan, *see* BC App. 2 at 10
("BCBSM's traditional program is the only benefit program subject to provider class plan
reviews"), which as of 2007 included less than 5% of Blue Cross's members.  *Id*. at 17.  Thus,
OFIR lacks authority to disapprove hospital reimbursement plans for 95% of Blue Cross's
membership, even though the equal-to-MFN applies to all Blue Cross commercial plans.

-31-

In June 2006, Blue Cross filed its initial hospital PCP with OFIR.  BC App. 2 at 15.  The PCP did not contain the hospital reimbursement methodology that would later contain the equal-to-MFN because Blue Cross claimed that such information was proprietary.  *Id.* at 16.  OFIR's initial review merely verifies that the PCP "*contains* a reimbursement arrangement and objectives for each goal provided in section 504," and there was no substantive review at that time of the reimbursement arrangement itself.  MCL § 550.1506(2) (emphasis added).[35]  The PCP took effect in 2006, and Blue Cross entered into equal-to MFNs with community hospitals in 2007.  It was not until 2008 that Blue Cross finally turned over to OFIR the reimbursement methodology containing the MFN, two years after it filed the PCP and a year after the MFNs were inserted into Blue Cross's agreements with hospitals.  BC App. 10 at 2.  Another year passed before OFIR issued its Determination Report in July 2009, concerning the 2006 PCP.  BC App. 2 at 16.

Under MCL § 550.1509(b), OFIR conducts its retrospective review of the PCP only after the PCP has been in effect for two years.  This "negative-option" review, occurring years after the anticompetitive conduct in question, cannot support a finding of active supervision.[36]  The Supreme Court has squarely held that "so-called negative option" review does not constitute

---

[35] This perfunctory review cannot be grounds for a finding of active supervision.  *See, e.g., Kentucky Household Goods Inc.*, 199 F. App'x at 411 (no "active supervision" without hearings, notice and written decision); Areeda ¶ 226c, at 169 (Supreme Court has required "active supervision in the sense of government review of specific decisions of private parties on their substantive merits, not merely on their procedural adequacy").

[36] In contrast, in Pennsylvania (which Blue Cross cites as an example of MFNs exempt under state action, BC Mem. 26), the relevant statute *requires* the Commissioner of Insurance to approve each *individual* hospital contract *before* it takes effect.  *See* 40 Pa. C.S.A. § 6124(a) ("all rates of payment to hospitals . . . and any and all contracts entered into . . . with any hospital, shall, at all times, be subject to the prior approval of the department") (repealed 1996).

active supervision. *Ticor*, 504 U.S. at 638-39; *see also Electrical Inspectors v. Village of East Hills*, 320 F.3d 110, 129 (2d Cir. 2003) ("mere negative option" is "likely inadequate supervision").

Further, OFIR's ultimate approval of the PCP did not include approval of the equal-to MFN itself. OFIR merely noted the clause's existence, in one sentence of a 56-page report, and neither approved nor disapproved the MFN. *See* BC App. 2 at 12 (Peer Group 5 "Hospitals must attest that their rates are at least as favorable as those for other non-governmental insurers"). Further, because the equal-to MFN was not scheduled to take effect until July 2009, the impact of the MFN was outside the scope of OFIR's review of the PCP for the 2006-2007 evaluation period. BC App. 10 at 5. Active supervision requires state agencies to engage in a detailed review process, with an explanation of why the restraint in question is permissible.[37] *Kentucky Household Goods*, 199 F. App'x at 410-11. That review never happened.

2. *Blue Cross Is Not Exempt from Active Supervision as a Public Entity.*

Blue Cross attempts to avoid *Midcal*'s active supervision requirement by arguing that it is a "quasi-public entity," citing *Town of Hallie.* BC Mem. 9. *Town of Hallie*'s exception applies only where public entities have "made the effective decision that resulted in the challenged anticompetitive conduct," *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 538 (6th Cir. 2002), because, "where the actor is a municipality, there is little or no danger that it is involved in a *private* price-fixing arrangement." *Town of Hallie*, 471 U.S. at 46-47 (emphasis in original).

---

[37] Michigan law requires that actual determinations be accompanied by "detailed statement[s]." MCL § 550.1509(5) (provider class plans); MCL § 24.285 (administrative determinations generally).

Blue Cross is a private entity, not a public one.[38]  When an entity is not controlled by state officials, it is not a public entity.  In *Riverview Investments, Inc. v. Ottawa Cmty. Improvement Corp.*, 899 F.2d 474, 480-82 (6th Cir. 1990), the Court of Appeals held that when 40% of the board was appointed by the state, the entity was *not* a public entity under *Town of Hallie*.  Barely 10% of Blue Cross's board (four of 35) is appointed by State officials, MCL § 550.1301(2); Blue Cross manages its own business, MCL § 550.1301(1); Blue Cross controls its contracting relationship with providers, *Michigan Chiropractic Association*, 2006 WL 335857, at *4; and it controls its own significant surpluses, MCL § 550.1206(1); *compare Fuchs v. Rural Elec. Convenience Cooperative, Inc.*, 858 F.2d 1210, 1218 (7th Cir. 1988) (electric cooperative not subject to active-supervision requirement in part because by-laws required that all excess amounts be refunded to customers).

This Court has long accepted Blue Cross's arguments that it is a private firm, not a state actor.  *E.g., Loftus v. Blue Cross Blue Shield of Michigan*, 2010 WL 1139338, at *4 n.1 (E.D. Mich. Mar. 24, 2010) (Hood, J.) (rejecting § 1983 liability because Blue Cross "is not a state actor").[39]  After benefitting for decades from "private actor" status as a defense to § 1983 claims, Blue Cross now cannot reverse its position and claim to be a public actor for state action

---

[38]  Whether BCBSM is a private actor is a question of federal law.  *Crosby v. Hosp. Auth. of Valdosta and Lowndes County*, 93 F.3d 1515, 1524 (11th Cir. 1996), *cited* BC Mem. 18.  At any rate, "most corporations have [the power to make contracts but] one does not infer . . . from them the power to behave anticompetitively. . . .  When the corporation is of a public or quasi-public character, no different presumption is warranted."  Areeda ¶ 225b4, at 151.

[39]  *See also Nuckols v. Blue Cross Blue Shield of Michigan*, 2007 WL 4358194, at *1 (E.D. Mich. Dec. 13, 2007) (Cohn, J.) (same); *Michigan State Podiatry Ass'n v. Blue Cross and Blue Shield of Michigan*, 1982 WL 1859, at *2 (E.D. Mich. Apr. 16, 1982) (Churchill, J.) (Blue Cross "has been found to be a private corporation and not an arm of the State of Michigan").

analysis. *See National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 195 n.14 (1988) (comparing state action and § 1983 analyses).

Because Blue Cross is a private actor, it can avoid satisfying the "active supervision" prong of the *Midcal* test only if the State "made the effective decision that resulted in the challenged anticompetitive conduct." *Michigan Paytel*, 287 F.3d at 538.  Here, "although [Blue Cross] is a unique creation subject to extensive regulation, [its] decisions to enter directly into distinct contracts with providers are made by [Blue Cross's] management, which is private." *Michigan Chiropractic Ass'n*, 2006 WL 335857, at *4.  Blue Cross was the effective decision maker regarding the MFNs and "active state review is clearly necessary where private defendants are empowered with some type of discretionary authority in connection with anticompetitive acts." *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1499 (10th Cir. 1997).  Therefore, Blue Cross's actions are not actions of the State, and Blue Cross must satisfy the active supervision requirement, which it has not done.

III.     THE COURT SHOULD NOT ABSTAIN FROM HEARING THIS CASE.

Finally, Blue Cross asks the Court to take the unprecedented step of abstaining from hearing a federal antitrust claim brought by the federal government in federal court.  The abstention doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), is not a "sharp[] limit" to the federal antitrust laws as Blue Cross maintains, BC Mem. 30, but an "extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," and "only the clearest of justifications" can support abstention.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (federal courts have a "virtually unflagging

obligation . . . to exercise the jurisdiction given them"). Abstention is not warranted here for two reasons.

*First,* Blue Cross must show that "timely and adequate state-court review is available." *Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 660 (6th Cir. 2002). Blue Cross has not done so. It argues that an action challenging a decision by the Commissioner – although there has been no such decision – is an adequate state court remedy for the United States' statutory mandate to enforce the federal antitrust laws.[47] To the contrary, the United States' only forum for enforcing the federal antitrust laws is in federal district court. Federal courts' exclusive jurisdiction over federal antitrust claims, Sherman Act § 4, 15 U.S.C. § 4, has been recognized repeatedly as precluding *Burford* abstention. *E.g., Andrea Theaters, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 63 (2d Cir. 1986).[48] "Indeed, abstention [in a federal antitrust case] would run counter to Congress's determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims." *Id.*

*Second*, even if state court review *were* available, the court would be required to balance the "federal interests in retaining jurisdiction against the competing concern for the independence of state action." *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*,

---

[47] BC Mem. 31-32. The United States could not proceed against *Blue Cross* in state court. "Only the [Michigan] Attorney General and the Insurance Commissioner are entitled to enforce [PA 350] directly against [Blue Cross]." *BPS Clinical Laboratories v. Blue Cross Blue Shield of Michigan*, 217 Mich. App. 687, 698, 552 N.W.2d 919, 924 (1997). Therefore, the United States would be unable to obtain the review Blue Cross suggests is available.

[48] *See also Pinhas v. Summit Health Ltd.*, 894 F.2d 1024, 1031 (9th Cir. 1989); *Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir. 1981) (Kennedy, J.) (*Burford* abstention "certainly not warranted" in Sherman Act case); *Ticket Center, Inc. v. Banco Popular de Puerto Rico*, 399 F. Supp. 2d 79, 85 (D.P.R. 2005) ("federal district courts do not have discretion to abstain from deciding federal antitrust issues").

621 F.3d 554, 562 (6th Cir. 2010).  Blue Cross ignores this recent and controlling decision, and

ignores the federal interests altogether.  *See also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706,

727-28 (1996) ("disrupt[ion] of state efforts to establish a coherent policy," and  "difficult

questions of state law" must be balanced against federal interests).

      The federal interests weighing against abstention are substantial.  Actions by the United

States to enforce any federal law "militates strongly against the applicability of abstention."

*Chippewa Trading Co. v. Cox*, 365 F.3d 538, 545 (6th Cir. 2004); *see also Moses H. Cone Mem.*

*Hosp., v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) (presence of federal law claims is a

"major consideration weighing against" abstention).  Where the Court has exclusive jurisdiction

over the federal claim, abstention is plainly improper.

      Blue Cross's asserted state interests, by contrast, are not sufficient to warrant abstention.

*Burford* "does not require abstention whenever there exists [a complex state administrative]

process, or even in all cases where there is a potential for conflict with state regulatory law or

policy."  *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 423-24 (6th Cir.

2007).  Though Blue Cross claims this case would "usurp Michigan's ability to regulate," BC

Mem. 3, it does not point to any meaningful way in which the state's policy would be impeded,

let alone disrupted, by this Court adjudicating the legality of Blue Cross's MFN's under the

federal antitrust laws.  Indeed, as discussed above, the policy of the State of Michigan – to lower

health insurance costs through increased competition among insurers – is fully consistent with

this action.

      Moreover, because the applicability of the state action doctrine is a question of federal –

and not state – law, *City of Boulder*, 455 U.S. at 53 n.15, the United States' claim does not raise

any questions of state law, let alone difficult ones.  Abstention based on any question of state law implicated by Blue Cross's state action defense would be improper.[49]  This is especially true because of the strength of the federal interests outlined above.  *Caudill*, 301 F.3d at 661 ("no fear of federal disruption of state administrative processes" where "the federal interest [is] superior").

---

[49]  *See IMR Capital*, 888 F. Supp. at 243 (state action defense impermissible basis on which to abstain under *Burford*); *see also Rouse v. DaimlerChrysler*, 300 F.3d 711, 716 (6th Cir. 2002) (where plaintiff's claim is "strictly federal," *Burford* abstention is inapplicable).

<u>Conclusion</u>

For the foregoing reasons, defendant's motion to dismiss the Complaint should be denied.

Respectfully submitted,

Christine A. Varney                     Barry J. Joyce
Assistant Attorney General              Ann Marie Blaylock
                                        Ryan Danks
Joseph F. Wayland                       David Z. Gringer
Deputy Assistant Attorney General       Steven Kramer
                                        Richard Liebeskind
Joshua H. Soven, Chief                  Trial Attorneys
Peter J. Mucchetti, Assistant Chief     Antitrust Division
Litigation I Section                    U.S. Department of Justice
Antitrust Division                      450 Fifth Street, N.W.
U.S. Department of Justice              Suite 4100
Washington, D.C. 20530                  Washington, D.C. 20530

                                        By <u>/s/ Ryan Danks</u>
                                        Trial Attorney
                                        Antitrust Division
                                        U.S. Department of Justice
                                        450 Fifth Street, N.W.
                                        Suite 4100
                                        Washington, D.C. 20530
                                        (202) 305-0128
                                        Illinois Bar # 6277334
                                        ryan.danks@usdoj.gov

Barbara L. McQuade                      Peter Caplan (P-30643)
United States Attorney                  Assistant United States Attorney
Eastern District of Michigan            United States Attorney's Office
                                        Eastern District of Michigan
                                        211 W. Fort Street, Suite 2001
                                        Detroit, Michigan 48226
                                        (313) 226-9784
January 20, 2011                        peter.caplan@usdoj.gov