## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA
and the STATE OF MICHIGAN,

                Plaintiffs,

                              Civil Action No. 10-cv-14155-DPH-MKM

v.                              Hon. Denise Page Hood

                              Mag. Mona K. Majzoub

BLUE CROSS BLUE SHIELD OF
MICHIGAN, a Michigan nonprofit
healthcare corporation,

                Defendant.

---

### REPLY BRIEF IN SUPPORT OF DEFENDANT BLUE CROSS BLUE SHIELD OF MICHIGAN'S MOTION TO DISMISS

Joseph A. Fink (P13428)
Thomas G. McNeill (P36895)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
313-223-3500
jfink@dickinsonwright.com

Todd M. Stenerson (P51953)
D. Bruce Hoffman (Adm. E.D. MI, DC Bar 495385)
Neil K. Gilman (Adm. E.D. MI, DC Bar 449226)
Marty Steinberg (E.D. MI Admission pending; DC Bar 996403)
David A. Higbee (E.D. MI Admission pending; DC Bar 500605)
HUNTON & WILLIAMS LLP
1900 K Street, NW
Washington, DC 20006
202-955-1500
tstenerson@hunton.com

Robert A. Phillips (P58496)
BLUE CROSS BLUE SHIELD OF MICHIGAN
600 Lafayette East, MC 1925
Detroit, MI  48226
313-225-0536
rphillips@bcbsm.com

---

## TABLE OF CONTENTS

CONTROLLING AUTHORITY FOR RELIEF SOUGHT ......................................................... iii

INTRODUCTION ........................................................................................................................ 1

    **I.**    State Action Immunity Bars The Federal Antitrust Claims.................................... 1

        **A.**    Michigan's Regulatory Structure Meets the Clear Articulation Test ......... 2

        **B.**    Blue Cross Need Only Establish "Clear Articulation" For Immunity........ 6

        **C.**    The Active Supervision Test Is Inapplicable, But Met............................. 8

    **II.**    This Court Should Abstain From Exercising Jurisdiction Pursuant To *Burford* .. 11

    **III.**    The Complaint Fails To State A Claim .............................................................. 14

        **A.**    Plaintiffs Do Not Plead Foreclosure And Recoupment ......................... 14

        **B.**    Plaintiffs Fail To Allege Required Elements Of Their Markets............... 16

    **IV.**    The Michigan Law Claims Fail ....................................................................... 19

CONCLUSION ......................................................................................................................... 20

## CONTROLLING AUTHORITY FOR RELIEF SOUGHT

### Federal Cases

*Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414 (6th Cir. 2007)

*Blue Cross & Blue Shield of Wis. v. Marshfield Clinic*, 65 F.3d 1406 (7th Cir. 1995)

*Brentwood Academy v. Tenn. Secondary Sch. Athletic Assn'n*, 442 F.3d 410 (6th Cir. 2006), *rev'd on other grounds*, 551 U.S. 291 (2007)

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993)

*Burford Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1 (1983)

*Capitol Tel. Co., Inc. v. N.Y. Tel. Co.*, 750 F.2d 1154 (2d Cir. 1984)

*Coal. for Health Concern v. LWD, Inc.*, 60 F.3d 1188 (6th Cir. 1995)

*Consol. Television Cable Serv., Inc. v. City of Frankfort*, 857 F.2d 354 (6th Cir. 1988)

*DFW Metro. Line Servs. v. Sw. Bell Tel. Corp.*, 988 F.2d 601 (5th Cir. 1993)

*Destec Energy, Inc. v. S. Cal. Gas. Co.*, 5 F. Supp. 2d 433 (S.D. Tex. 1997)

*Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002)

*F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621 (1992)

*First Am. Title Co. v. Devaugh*, 480 F.3d 438 (6th Cir. 2007)

*Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521 (6th Cir. 2001)

*Jackson, Tenn. Hosp. Co., LLC v. West Tenn. Healthcare*, 414 F.3d 608 (6th Cir. 2005)

*Knudsen Corp. v. Nevada State Dairy Comm'n*, 676 F.2d 374 (9th Cir. 1981)

*Levy v. Lewis*, 635 F.2d 960 (2d Cir. 1980)

*McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399 (6th Cir. 2006)

*Mich. Paytel, J.V. v. City of Detroit*, 287 F.3d 527 (6th Cir. 2002)

*Miranda v. Michigan*, 141 F. Supp. 2d 747 (E.D. Mich. 2001)

*Nugget Hydroelectric v. Pac. Gas & Elec.*, 981 F.2d 429 (9th Cir. 1992)

*Ocean State Physicians Health Plan Inc. v. Blue Cross & Blue Shield of R.I.*, 883 F.2d 1101 (1st Cir. 1989)

*Patrick v. Burget*, 486 U.S. 94 (1988)

*Pinhas v. Summit Health Ltd.*, 894 F.2d 1024 (9th Cir. 1989)

*Riverview Invs., Inc. v. Ottawa Cmty. Improvement Corp.*, 899 F.2d 474 (6th Cir. 1990)

*S. Motor Carriers Rate Conf., Inc. v. United States*, 471 U.S. 48 (1985)

*Smith v. Metro. Prop. & Liability Ins. Co.*, 629 F.2d 757 (2d Cir. 1980)

*Stephens v. Cooper*, 746 F. Supp. 292 (E.D.N.Y. 1990)

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961)

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842 (S.D. Ohio 2007)

*Total Benefits Planning Agency v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430 (6th Cir. 2008)

*Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985)

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312 (2007)

*Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955 (6th Cir. 2004)

*Yeager's Fuel, Inc. v. Pa. Power & Light*, 22 F.3d 1260 (3d Cir. 1994)

**State Cases**

*Attorney General v. Blue Cross Blue Shield of Mich.*, Nos. 290167, 295750, ___ N.W.2d ___, 2010 WL 4963015 (Mich. Ct. App. Dec. 7, 2010)

*BPS Clinical Laboratories v. Blue Cross Blue Shield of Mich.*, 217 Mich. App. 687, 552 N.W.2d 919 (Mich. Ct. App. 1996)

*Blue Cross & Blue Shield of Mich. v. Milliken*, 422 Mich. 1, 367 N.W.2d 1 (1985)

*In Re 1987-1988 Med. Doctor Provider Class Plan*, 203 Mich. App. 707, 514 N.W.2d 471 (Mich. Ct. App. 1994)

**Statutes**

Mich. Comp. Laws §§ 550.1101-1704 (P.A. 350)

Mich. Comp. Laws §§ 445.774, 784 (MARA)

Defendant Blue Cross Blue Shield of Michigan ("Blue Cross") respectfully submits this reply brief in support of its Motion to Dismiss the Complaint.

## INTRODUCTION

[Blue Cross] is a unique creation. It is a non-profit, tax exempt "charitable and benevolent institution", incorporated pursuant to special enabling legislation enacted by the Michigan Legislature in 1939, for the purpose of providing a mechanism for broad health care protection to the people of the State of Michigan.[1]

Plaintiffs' responses to Blue Cross's Motion to Dismiss confirm that dismissal is required. On state action immunity and *Burford* abstention, the United States ("DOJ")—abandoned on these issues by the State of Michigan (the "State")—misconstrues Michigan's statutory and regulatory structure, and state action law, as well as resorts to an impermissible attempt to second-guess Michigan's policy decisions. Plaintiffs' effort to defend the adequacy of their pleading fails because—as Plaintiffs effectively admit—that defense would require the Court to disregard controlling Supreme Court and Sixth Circuit law. And, the State's defense of its state law claims fails both because those claims are barred by the same obstacles as the federal claims, and because Michigan's antitrust statutes are facially inapplicable.

## I.   State Action Immunity Bars The Federal Antitrust Claims

DOJ's attempt to defend Count I of the Complaint against dismissal under state action immunity (the State did not join DOJ on this issue) fails. <u>First</u>, Michigan's comprehensive regulatory structure establishes a clearly articulated state policy. Michigan has displaced unfettered competition in health care financing with regulation, and Blue Cross's conduct was foreseeable under that regulation. <u>Second</u>, DOJ cites no case holding that a state-created nonprofit health care corporation serving the public interest is subject to the active supervision

---

[1] *Attorney General v. Blue Cross Blue Shield of Michigan*, ___ N.W.2d ___, 2010 WL 4963015, at *1 (Mich. Ct. App. Dec. 7, 2010) (internal quotations omitted).

requirement and ignores the cases rejecting any such notion. <u>Third</u>, even if active supervision

was needed, the Commissioner's power "to review particular anticompetitive acts … and

disapprove those that fail to accord with state policy," *Patrick v. Burget*, 486 U.S. 94, 101

(1988), a power exercised here, supplies it.[2]

### A.    Michigan's Regulatory Structure Meets the Clear Articulation Test

The "clear articulation" test is simple and not contested by DOJ. First, the state must

clearly articulate a policy to displace unfettered competition in a given field with a regulatory

structure; and second, the challenged conduct must foreseeably flow from that regulatory

structure. *See Mich. Paytel, J.V.  v. City of Detroit*, 287 F.3d 527, 534-35 (6th Cir. 2002).

Both elements are easily met. Michigan's regulatory scheme governing Blue Cross was

devised specifically to replace unfettered competition because of the Legislature's determination

that such competition would leave millions without access to health care. *Blue Cross & Blue

Shield of Mich. v. Milliken*, 422 Mich. 1, 13-14, 367 N.W.2d 1, 9 (1985).[3] The Commissioner is

not "authorized to choose free-market competition" as would be required for mere neutrality, *S.

Motor Carriers Rate Conf., Inc. v. United States*, 471 U.S. 48, 65 n.25 (1985), but is required to

regulate Blue Cross to achieve the State's public policy goals of "secur[ing] for all of the people

of this state who apply for a certificate, the opportunity for access to health care services at a fair

---

[2] DOJ's claim that state action is "disfavored" when "commercial activity" is involved is wrong. Even if Blue Cross's activity was "commercial," there is no "commercial" exception to state action. *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,* 155 F.3d 59, 80-81 (2d Cir. 1998); *see also Crosby v. Hosp. Auth. of Valdosta and Lowndes County*, 93 F.3d 1515, 1525 (11th Cir. 1996) ("engag[ing] in the competitive business of health care … does not remove [defendant] from the protective cloak of state action immunity").

[3] The Michigan Legislature enacted P.A. 350 pursuant to Mich. Const. art. IV, § 51, which declares health and general welfare to be "matters of primary public concern" and empowers the legislature to "pass suitable laws for the protection and promotion of the public health." *See* Op. Mich. Att'y Gen. No. 7115, at 1 (BC Mem. App. 1).

and reasonable price."  MCL § 550.1102(2).[4]  Comprehensive service at "fair and reasonable" prices is a quintessentially regulatory, not competitive, goal of the type long held sufficient to establish a "clearly articulated state policy."[5]  Further, by creating Blue Cross as a "quasi-public" tool of public policy with burdens and benefits different from commercial insurers, the State understood (and even intended) that Blue Cross would necessarily engage in conduct of the nature at issue here:

> If the Blues did not cover so many people they would find it difficult to negotiate the discounts and lower rates of reimbursements for hospitals and physicians they enjoy as advantages over the commercial insurers.

House Bill 4555 First Analysis at 6 (Nov. 28, 1979) (BC Mem. App. 14).

Unable to cite any decision rejecting "clear articulation" under facts even remotely as compelling as these, DOJ first attacks Michigan's regulatory scheme, and then, like many unsuccessful plaintiffs before it, claims that Michigan's decision to permit some competition precludes state action immunity.  Both arguments fail.

The centerpiece of DOJ's challenge is its claim that "Blue Cross relies on general statutory grants of authority to enter into hospital contracts."  DOJ Br. at 23.  Not so.  Blue Cross relies on statutes and regulations that (among many other things) require it to contract with hospitals across Michigan to provide comprehensive, "insurer of last resort" coverage, and expect it to use its market size to achieve prices superior to its commercial competitors'.  Indeed, Blue Cross may not cease serving the public health without legislative permission:  it is statutorily barred from dissolving or merging.  MCL § 550.1218.  Thus, Michigan has expressed

---

[4] *See Milliken*, 367 N.W.2d at 12 (P.A. 350 is "a unique statutory scheme which combines both free-market and government regulatory methods of control.").

[5] *See S. Motor Carriers*, 471 U.S. at 63-64 (requirement to set "just and reasonable" rates established clear articulation).

the same intent to displace competition as Tennessee did in *Jackson, Tenn. Hosp. Co., LLC v. West Tenn. Healthcare*, 414 F.3d 608, 612 (6th Cir. 2005), contrary to DOJ's suggestion.[6]

DOJ says little about Michigan's sweeping regulation of Blue Cross, and what it says is wrong. Contrary to DOJ's claim that P.A. 350 is concerned "with ensuring that [Blue Cross's hospital contracts] do not reduce competition," DOJ Br. at 25, as discussed above, P.A. 350 and the Legislature recognize that those contracts might do just that. And DOJ's contention that the Legislature intended the Commissioner to act as a check on Blue Cross's anticompetitive use of its statutorily-granted powers confirms "clear articulation." There can be no clearer evidence that anticompetitive conduct might foreseeably result from a regulatory scheme than that the Legislature created a *regulatory* mechanism to address that possibility. *See Capital Tel. Co., Inc. v. N.Y. Tel. Co.*, 750 F.2d 1154, 1160-61 (2d Cir. 1984).[7]

DOJ's other attacks fall equally flat. Notwithstanding DOJ's claim that § 550.1516(2)(b) does not "authorize" Blue Cross to increase other purchasers' costs, neither the challenged conduct nor its effect needs to be specifically "authorized." *See First Am. Title Co. v. Devaugh*, 480 F.3d 438, 447 (6th Cir. 2007);[8] *Mich. Paytel*, 287 F.3d at 535. Moreover, the statute anticipates that Blue Cross's contracts might result in commercial insurers bearing *some* portion

---

[6] Michigan's intent to displace unfettered competition is further confirmed by the state antitrust exemption for Blue Cross. *See* MCL § 445.774(6); Michigan Attorney General's Br. ("AG Br.") at 2-3; *Green v. Peoples Energy Corp.*, 2003 WL 1712566, at *5 (N.D. Ill. Mar. 28, 2003) (unpublished).

[7] *See also Cal. CNG, Inc. v. S. Cal. Gas Co.*, 96 F.3d 1193, 1197 (9th Cir. 1997); *Yeager's Fuel, Inc. v. Pa. Power & Light*, 22 F.3d 1260, 1270 (3d Cir. 1994).

[8] DOJ's heavy reliance on *Devaugh* is misplaced. That case involved a simple statute providing defendants specific and limited options for how they made and charged for copies of county title records. Disregarding the statute, defendants imposed copying charges and restrictions not allowed by the statute. *Devaugh* bears no resemblance to the comprehensive competition-displacing regulation of health care at issue here.

4

of hospital costs, but provides that the Commissioner should ensure that portion does not include *Blue Cross's* "fair share."  MCL §§ 550.1516(2)(b), 1603.  As explained above, this is compelling evidence of foreseeability.

Further, the statute appears to "authorize" Blue Cross contracts that shift *more* than Blue Cross's "fair share" of hospitals' costs to competitors so long as the contracts "include financial incentives and disincentives."  MCL § 550.1516(2)(b).  Recognizing that this could *specifically authorize* conduct similar to but more anticompetitive than that at issue here—far more than required for clear articulation—DOJ tries to rewrite the statute by (1) deleting the qualifier "however," and (2) inserting, without citation, language purporting to limit it to "incentives to promote alternate methods of delivery of health care, including preventative health care, home health care, and nurse midwives."  DOJ Br. at 25-26.  *But that language does not appear anywhere in the provision*,[9] and was apparently cut and pasted by DOJ from an entirely different part of P.A. 350 dealing with alternative health care.  *See* MCL § 550.1207(b).

DOJ further asserts that the Legislature's intent that Blue Cross obtain price *advantages* over competitors "provides no basis to infer that the Legislature intended to allow Blue Cross to harm competition by causing hospitals" to impose price *disadvantages* on competitors.  DOJ Br. at 26.  Not only is the fine semantic line DOJ attempts to carve implausible on its face, but also "it is not for this Court to parse … state law to determine whether" the precise conduct was contemplated.  *Consol. Television Cable Serv., Inc. v. City of Frankfort*, 857 F.2d 354, 358-59 (6th Cir. 1988).  Indeed, "clear articulation" does not require that the Legislature "intend harm" to competition, much less "intend" the precise conduct or effect, or explicitly announce any such

---

[9] The relevant section, in its entirety, reads "No portion of the health care corporation's fair share of hospitals' reasonable financial requirements shall be borne by other health care

intention.  *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 42-44 (1985); *Yeager's Fuel*, 22 F.3d at 1266 ("a state policy need not be aimed at restraining competition for a person acting pursuant to the policy to be immune from antitrust liability").

Nor does the State's willingness to permit competition to coexist with its regulation of Blue Cross undermine state action immunity.[10]  *See, e.g., Miranda v. Mich.*, 141 F. Supp. 2d 747, 754 (E.D. Mich. 2001); *see also Cal. CNG*, 96 F.3d at 1197; *Crosby*, 93 F.3d at 1534-35; *Destec Energy, Inc. v. S. Cal. Gas. Co.*, 5 F. Supp. 2d 433, 449-50 (S.D. Tex. 1997); *Davis v. S. Bell Tel. & Tel. Co.*, 755 F. Supp. 1532, 1539 (S.D. Fla. 1991); *Gulf Marine Repair Corp. v. Liberty Mut. Ins. Co.*, 1994 WL 805208, at *10 (M.D. Fla. Jan. 13, 1994) (unpublished).[11]

## B.   Blue Cross Need Only Establish "Clear Articulation" For Immunity

Extensive authority cited in our initial brief establishes that "quasi-public" state-created health care authorities and similar nonprofit entities serving state policy goals are "prong one" entities that need only show "clear articulation," not "active supervision."  BC Mem. at 17-18. DOJ responds to none of this authority.  Rather, DOJ attempts to construct a rigid, bright-line

---

purchasers.  However, this subdivision shall not preclude reimbursement arrangements which include financial incentives and disincentives."  MCL § 550.1516(2)(b).

[10] The statutes DOJ cites, DOJ Br. at 27-8, make a particularly weak showing of any desire to foster competition.  That Michigan licenses commercial insurers and allows them to negotiate discounts shows only that Michigan has not *prohibited* competition.  That the Commissioner annually examines whether there is "reasonable" competition in one slice of the health care financing business, and that Michigan requires competitive bidding for public employers, do nothing to negate the regulation of Blue Cross.  And that the Commissioner may prohibit health insurance *mergers* that reduce competition in no way establishes the absence of a comprehensive regulatory scheme governing Blue Cross's *non-merger conduct*.

[11] Contrary to DOJ's assertions (DOJ Br. at 28-9), MCL § 445.774(6) supports state action immunity.  *See* MCLA § 445.774 ("The numerous exclusions and exemptions to the federal antitrust laws … are to be read into this Act …. Thus, it is not necessary to attempt to list … state action ….") (DOJ Br. App. 5 at 2); MCL § 445.784.  The lone 35-year-old California district court case on which DOJ relies is not to the contrary.  *See Green*, 2003 WL 1712566, at *5 (state antitrust exemption incorporating the state action doctrine shows clear articulation).

rule under which "public" entities receive immunity via "clear articulation," while "private entities" must show active supervision. DOJ Br. at 21, 33-35. And, almost entirely on the basis that Blue Cross is not a "state actor" under 42 U.S.C. § 1983, DOJ attempts to pigeonhole Blue Cross into the "private entity" category. DOJ is wrong on all points.

First, DOJ cites no authority for its "bright line." This is because "[t]he dividing line is neither sharply drawn nor easily perceived." *Fuchs v. Rural Elec. Convenience Co-op, Inc.*, 858 F.2d 1210, 1216 (7th Cir. 1988); *see Riverview Invs., Inc. v. Ottawa Cmty. Improvement Corp.*, 899 F.2d 474, 479-80 (6th Cir. 1990) (examining multiple factors to determine prong one status); *Consol. Television*, 857 F.2d at 358-59 (same).[12]

Second, DOJ makes no effort to show how its four quibbles concerning Blue Cross's "prong one" status, DOJ Br. at 34, could outweigh the facts DOJ leaves unaddressed. Nor are DOJ's quibbles substantial. Thus, the *Riverview* Court's finding that an economic development corporation operating almost entirely free of any governmental oversight was not nudged across the "prong one" line merely because 40% of its board consisted of public officials appointed by *the defendant* with no state involvement is irrelevant. The State dictates the *entire* composition of Blue Cross's Board *and* directly appoints four of its members. *See* MCL §§ 550.1301-1305. And, that Blue Cross manages its own business and does its own contracting (under strict state requirements and state review) is of no significance. *See Consol. Television*, 857 F.2d at 358 (prong one treatment where municipal corporation left the "day-to-day operations in the hands of those who run [the non-municipal entity]"). DOJ's next assertion, that Blue Cross "controls its

---

[12] *See also Crosby*, 93 F.3d at 1524-26 (hospital authorities "lying somewhere between a local, general-purpose governing body … and a corporation," and possessing "many of the attributes of a sovereign" but "clearly limited in their character" and "private actors in many respects" found to be prong one entities); *Ambulance Serv. of Reno, Inc. v. Nev. Ambulance*

own significant surpluses," DOJ Br. at 34, is incorrect (even if it mattered).  The statute DOJ

cites, MCL § 550.1206(1), says nothing about Blue Cross's surpluses, which Blue Cross is

*required* to maintain in an amount set by the Commissioner.  MCL § 550.1204a.

Finally, DOJ ignores the Sixth Circuit's holding that the § 1983 "state actor" test is not

the same as the test for "prong one" treatment for state action immunity.  *Brentwood Acad. v.*

*Tenn. Secondary Sch. Athletic Ass'n*, 442 F.3d 410, 440 (6th Cir. 2006) *rev'd on other grounds*,

551 U.S. 291 (2007).  Indeed, in *McCarthy v. Middle Tenn. Elec. Membership Corp.*, the Sixth

Circuit, while it did not decide the issue, strongly supported prong one status for an electrical

cooperative after concluding that the cooperative was not a "state actor" under § 1983.  466 F.3d

399, 412, 414 n.25 (6th Cir. 2006).  Numerous other cases so hold.[13]

### C.      The Active Supervision Test Is Inapplicable, But Met

DOJ's few active supervision arguments are internally contradictory, factually wrong,

and rest on an erroneous legal standard.

First, the "equal to" MFNs that were contained in model contracts filed as part of the

2007 PCP, 2009 OFIR Order at 8-9 (BC Mem. App. 2), received the supervision *DOJ* claims is

required, *see* DOJ Br. at 32 n.36.  The Commissioner rejected the 2007 filing because the

documents containing the MFNs were not attached.  Blue Cross provided the documents in 2008,

but the MFNs did not go into effect until July 1, 2009.  By that time, the Commissioner had

conducted an extensive review and approved the PCP, specifically citing the recently effective

---

*Servs., Inc.*, 819 F.2d 910, 913 (9th Cir. 1987) (entity "somewhere between" private and public
status deemed a prong one entity).

   [13] *See Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1565 n.6 (10th Cir. 1991);
*Tripathi v. Univ. of Chicago*, 1985 WL 2902, at *2 (N.D. Ill. Sept. 30, 1985) (unpublished)
("While they share a common label-'state action,' the antitrust doctrine and the element of
§ 1983 actions have little in common.").

MFNs.  2009 OFIR Order at 5 (BC Mem. App. 2).  DOJ first claims that the Commissioner's

review was too late—"years after the anticompetitive conduct in question," DOJ Br. at 32—and

then, contradicting itself, that the review was too early because "the equal-to MFN was not

scheduled to take effect *until July 2009*," *id.* at 33 (emphasis added), after most of the period

covered by the review.  But there is not some fleeting "just right" moment—not "too early" and

not "too late"— at which active supervision must occur.  The Commissioner comprehensively

reviewed the contracts containing the MFNs and approved them as they were taking effect.  This

review—*more* searching than the review DOJ concedes sufficed in Pennsylvania—bore no

resemblance to the "negative option" rejected in *F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621

(1992), and far exceeded the requirements of active supervision.

    Second, having conceded that *prior* review suffices, DOJ Br. at 32 n.36, DOJ is left to

portray the Commissioner's inquiry as "after-the-fact."  DOJ Br. at 31.  It was not: but if it was,

*Ticor* does not prohibit retroactive review.  As the *Ticor* Court said, "we do not here call into

question a regulatory regime in which sampling techniques or a specified rate of return allow

state regulators to provide comprehensive supervision without complete control, or in which

there was an infrequent lapse of state supervision." *Ticor*, 504 U.S. at 640.[14]  This was exactly

what occurred in *Southern Motor Carriers*, where DOJ conceded that regular retroactive review

sufficed for active supervision.  *See id.* at 639 (citing *S. Motor Carriers*, 471 U.S. at 51-52).

---

[14] DOJ also cites *Ky. Household Goods Carriers Ass'n v. F.T.C.*, 199 F. App'x 410 (6th Cir. 2006), but that case does not support DOJ's arguments.  The Sixth Circuit's unpublished decision, applying deferential review, merely observed that the total absence of the factors identified by the FTC—hearings, notice, written decisions, published explanations—supported the FTC's rejection of active supervision; it did not hold that any of those factors, much less all, were *required*.  Indeed, the FTC has acknowledged that its administrative findings in that case reflect the FTC's view of what it wishes the law to be, not what the law is.  *See* Report of the State Action Task Force, Federal Trade Commission, 53-55 (2003) (App. 1); *Ticor*, 504 U.S. at 639 ("We do not imply that some particular form of state or local regulation is required ….").

Third, DOJ's challenge to the *substance* of the Commissioner's review is similarly misguided.  The Commissioner gave public notice, solicited written submissions, held hearings, and issued an order with a "detailed statement of findings" specifically referencing the MFNs.  A regulator's order approving contracts and "acknowledg[ing] the presence" of challenged provisions clearly suffices for active supervision.  *Destec*, 5 F. Supp. 2d at 456-58.  Indeed, federal courts are barred from second-guessing state regulators' decisions in these circumstances.  *See Ticor*, 504 U.S. at 634 (active supervision analysis "is not to determine whether the State has met some normative standard…"); *Destec*, 5 F. Supp. 2d at 456-58.

Fourth, the "lowest price" MFNs (what DOJ calls "MFN-plus") were challenged in oral and written submissions to the Commissioner during hearings in November 2009.  *See* BC Mem. at 24.  In those challenges, the "anticompetitive" effects DOJ now vaguely alleges were raised.  *See id*.  Had the Commissioner found these complaints credible, he could have ordered Blue Cross to modify or eliminate the MFNs, or taken other steps.  *See, e.g.,* MCL § 550.1603.  That DOJ might have made a different substantive decision than the Commissioner does not demonstrate the absence of supervision.  *See Destec*, 5 F. Supp. 2d at 456-58.

Fifth, with respect to both types of MFNs, "specific" review and approval of the exact conduct at issue is not necessary.  DOJ Br. at 30, 30 n.31, 33.  Courts have repeatedly found active supervision where the challenged conduct had not itself been reviewed, but the regulator possessed the power to review it and had reviewed similar conduct in the past, or carried out a regular review of the defendant's activities, or even merely provided a forum to receive and act on complaints.  *See Trigen-Oklahoma City Energy Corp. v. Okla. Gas & Elec. Co.*, 244 F.3d 1220, 1226 (10th Cir. 2001); *DFW Metro. Line Servs. v. Sw. Bell Tel. Corp.*, 988 F.2d 601, 605-07 (5th Cir. 1993); *Nugget Hydroelectric v. Pac. Gas & Elec.*, 981 F.2d 429, 435 (9th Cir. 1992).

The regulation here clearly establishes active supervision.[15]

## II.  This Court Should Abstain From Exercising Jurisdiction Pursuant To *Burford*

DOJ (the State also did not join DOJ's *Burford* argument) does not dispute that the Commissioner wields specialized expertise to regulate Blue Cross, including Blue Cross's contracting.  DOJ has no response to the fact that the Commissioner's regulation effectuates State public policy regarding a traditional police power that is "far more complex than, and in some places contrary to, advancing unfettered private market competition," and must "balance and resolve … complex legislative mandates."  BC Mem. at 27, 28.  And DOJ leaves unrefuted: (1) that this case presents difficult questions of state law bearing on substantial state public policy issues, and poses a serious risk of interfering with the Commissioner's 2009 Order approving Blue Cross's hospital PCP and future ability to address similar issues; and (2) that the exercise of federal review in this case *and* future cases (such as the class actions descending on Blue Cross and dozens of Michigan's hospitals) would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotation omitted).

Instead of addressing these elements, DOJ makes two unpersuasive arguments against *Burford* abstention.  First, DOJ claims that there is no "adequate state court review" because

---

[15] DOJ concedes that the MFN clause contained in the PHA submitted to and commented on by OFIR "applies to all Blue Cross commercial plans [Traditional, PPO plan, and HMO plan]."  *See* DOJ Br. at 31 n.34.  DOJ incorrectly asserts, however, that the Commissioner lacks the ability to disapprove the plans under the Prudent Purchaser Act or HMO Act.  Both Acts, the PPA and HMO Acts, require contracts to be filed with the Commissioner and set out standards for controlling costs, and the Commissioner has wide-ranging remedial powers under both.  *See* MCL §§ 550.53(3) (requiring submission of PPA contracts setting out standards to control costs); MCL §§ 500.3529(6), 3531 (requiring HMO contract to be filed with Commissioner and to set out standards for controlling costs); MCL § 550.1605(1)(b) (Commissioner may suspend or limit certificate of authority if Blue Cross's practices are injurious to subscribers or the public).

federal antitrust claims can only be brought in federal court.  DOJ Br. at 36.  But DOJ's

argument misses the point, as courts abstain under *Burford* in antitrust cases.  *See, e.g.*, *Stephens*

*v. Cooper*, 746 F. Supp. 292, 296-97 (E.D.N.Y. 1990) (Sherman Act claims dismissed under

*Burford* due to state insurance regulation).[16]  Indeed, the only case DOJ cites in the text of its

brief for this argument ***was not a Burford case at all.***  Rather, *Andrea Theaters, Inc. v. Theatre*

*Confections, Inc.*, 787 F.2d 59 (2d Cir. 1986), involved *Colorado River* abstention, a different,

discretionary abstention doctrine involving parallel state and federal litigation.[17]  *Burford* looks

to the availability of adequate state court review of *the conduct at issue*, not the legal theory

under which that conduct is challenged.  DOJ concedes that such review is available here.[18]

Second, DOJ claims that abstention is unwarranted because the Court must first balance

federal and state interests.  But any "balancing" tips far in favor of abstention.  The state policy

at issue here—assuring reasonable access, cost, and quality of health care by regulating health

---

[16] *See also Capitol Indem. Corp. v. Curiale*, 871 F. Supp. 205, 209-210 (S.D.N.Y. 1994) (rejecting plaintiff's argument that *Burford* abstention was inappropriate because federal law governed the claim); *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1387, 1398 (E.D.N.Y. 1989) ("The fact that federal claims form the jurisdictional basis of a plaintiff's complaint is not significant in the application of *Burford* abstention.") (citing *Levy v. Lewis*, 635 F.2d 960, 964 (2d Cir. 1980) (noting that federal claims were present in the *Burford* case itself)).

[17] The cases cited in DOJ's footnote offer no better support.  *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024 (9th Cir. 1989), in its one paragraph on *Burford*, merely states "[a]pplication of the Sherman Act, in this case, does not involve difficult questions of state law."  *Id.* at 1031.  *Knudsen Corp. v. Nev. State Dairy Comm'n*, 676 F.2d 374, 377 (9th Cir. 1982), declined to apply *Burford* because *Burford*'s criteria were wholly lacking (no particular court for review, federal issues were easily separated from state issues, which were not complex and did not require background in state law).  And the sale of entertainment tickets in *Ticket Ctr., Inc. v. Banco Popular de Puerto Rico*, 399 F. Supp. 2d 79 (D.P.R. 2005), can hardly be compared to the "essential" public health interests at stake here, MCL § 550.1102(1).

[18] "[T]he [Michigan] Attorney General and the Insurance Commissioner are entitled to enforce [P.A. 350] directly against [Blue Cross]."  DOJ Br. at 36 n.47.  Moreover, "any person may bring an action [in state court] against the" Commissioner under P.A. 350.  MCL § 550.1619(3).

care financing generally and Blue Cross specifically—is "an essential part of the general health, safety, and welfare of the people of this state."  MCL § 550.1102(1).[19]  Indeed, insurance regulation is generally considered a paramount state interest[20] that trumps federal antitrust law.[21] And the federal interests here—which at most amount to a generalized federal interest in antitrust enforcement—are attenuated given that the Complaint targets only a single insurer's conduct in markets the Complaint claims are purely intrastate, under a unique state regulatory structure. This weak federal interest does not bar abstention.[22]

There can be no doubt that DOJ's challenge to Blue Cross's competitive advantages over private commercial insurers—while leaving untouched Blue Cross's competitive *disadvantages*—would inappropriately intrude on Michigan's efforts to regulate in this "essential" area.  And that impact would be magnified by both the overbroad relief DOJ seeks (and makes no effort to defend) and the flood of antitrust litigation to which DOJ has already

---

[19] *See also* BC Mem. at 1-2, 10-18, 20-23, and authorities cited there.

[20] *See., e.g., Accident Fund v. Baerwaldt*, 579 F. Supp. 729, 733 (W.D. Mich. 1984) (extensive Michigan insurance regulatory scheme demonstrated the "state's overriding interest in protecting its citizens from the effects of an unregulated insurance industry; a matter of substantial public concern"); *Levy v. Lewis*, 635 F.2d 960, 963-64 (2d Cir. 1980) (abstention required where federal review of plaintiff's claim would interfere with New York's "complex administrative and judicial" insurance regulatory scheme); *Chiropractic Am. v. Lavecchia*, 180 F.3d 99, 105-106 (3d Cir. 1999) (automobile insurance regulations pertained to a matter of substantial public concern); *Allstate Ins. Co. v. Sabbagh*, 603 F.2d 228, 233 (1st Cir. 1979) (insurance regulation is "an area of intensely local interest").

[21] *Stephens*, 746 F. Supp. at 296-97.

[22] Once again, most of the cases DOJ cites do not stand for the proposition DOJ asserts. *Chippewa Trading Co. v. Cox*, 365 F.3d 538 (6th Cir. 2004), is a *Pullman* abstention case that does not mention *Burford*.  *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983), was a *Colorado River* case.  And DOJ's main *Burford* case, *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554 (6th Cir. 2010), involved settled Ohio common law on public nuisance, in which the state law standards are "clear and well-developed."  *Id.* at 566.

opened the door.  Under these circumstances the Court "must decline" jurisdiction.  *Coal. for Health Concern v. LWD, Inc.*, 60 F.3d 1188, 1194 (6th Cir. 1995); *see also Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414 (6th Cir. 2007).[23]

## III.   The Complaint Fails To State A Claim

The Complaint also fails to state a claim because, as Plaintiffs effectively concede, they do not plead required elements of their legal theories—the degree of foreclosure, and recoupment—and they do not meet the pleading standards required by the Sixth Circuit.

### A.   Plaintiffs Do Not Plead Foreclosure And Recoupment

The first fundamental flaw in the Complaint is that all of the alleged anticompetitive conduct occurred, not in the markets for selling health insurance, but in the markets for purchasing hospital services—and the Complaint alleges *nothing* about those markets.

Plaintiffs now claim that this is a foreclosure case.  DOJ Br. at 18.  They claim Blue Cross's MFNs are weak versions of exclusive contracts that make some hospitals more expensive for commercial insurers and so make it harder for those insurers to compete for insurance customers.  *Id.* at 18-19.  As in all foreclosure cases, the Complaint must allege facts showing the degree of the relevant market that is foreclosed and how that foreclosure causes an anticompetitive effect, *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 328-29 (1961),[24] *i.e.*, the degree of foreclosure in *each* market for buying hospital services, *and* the factual linkage between that foreclosure and the inability to compete downstream in each insurance market.  *See*

---

[23] DOJ claims that *Burford* is inapplicable because the applicability of the state action doctrine is a federal question and therefore there are no questions of state law raised by its Complaint.  DOJ Br. at 37-8.  DOJ's argument is a non-sequitur.  The questions of state law and policy at issue here are not those raised by state action immunity.  State action and *Burford* are alternative theories, resting on similar but not identical facts, mandating dismissal.

*Tampa Elec.*, 365 U.S. at 333-34 (relevant market with respect to vertical contract for purchase of coal is the coal buying market). Plaintiffs do nothing of the kind—the Complaint never alleges *any* hospital markets from which Blue Cross's competitors are allegedly "foreclosed"— and so the Complaint must be dismissed.

The absence of foreclosure is not the Complaint's only fundamental flaw. As Plaintiffs concede, they do not allege that Blue Cross could ever recoup the costs it purportedly incurred in obtaining the MFNs. Instead, Plaintiffs say that they do not have to allege recoupment because "this is not a predatory bidding case." DOJ Br. at 19.

Plaintiffs are wrong. As the Supreme Court has instructed, when a plaintiff alleges that a defendant "raise[s] prices for a key input to drive [competitors] out of business," the plaintiff "must prove that the defendant has a dangerous probability of recouping the losses incurred in bidding up input prices." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 322, 325 (2007). The Court was not using the term "bidding" in any mechanical sense: it was describing how that particular defendant used its purchases to raise the price of its rivals' purchases in one market to harm the competitive vigor of those rivals in an adjacent market. That is precisely what Plaintiffs allege here.

Plaintiffs also try to dodge *Weyerhaeuser* by disavowing the Complaint's allegations that Blue Cross "overpaid" for its MFNs. DOJ Br. at 20. This is astonishing, as at least twelve paragraphs of the Complaint make that allegation, and also allege that doing so raised Blue Cross's costs. Compl. ¶¶ 4-6, 18, 39-40, 44, 49, 58, 60, 68, 77. These are *exactly* the kind of allegations that were at issue in *Weyerhaeuser*. Further, if Plaintiffs are not pleading that Blue

---

[24] *See, e.g., E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.* 357 F.3d 1, 9 (1st Cir. 2004) ("There is no indication that Eastern has any hope of showing substantial foreclosure in a properly defined market.").

Cross "overpaid," *i.e.,* that it incurred costs in obtaining the MFNs that in turn forced Blue

Cross's subscriber rates to rise, the Complaint must be dismissed on its face.  *See Weyerhaeuser*,

549 U.S. at 325; *see also Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S.

209 (1993); *Ocean State Physicians Health Plan Inc. v. Blue Cross & Blue Shield of R.I.*, 883

F.2d 1101, 1110 (1st Cir. 1989) (holding, in the context of MFNs, that "[w]e agree with the

district court that such a policy of insisting on a supplier's lowest price—assuming that the price

is not 'predatory' or below the supplier's incremental cost—tends to further competition on the

merits and, as a matter of law, is not exclusionary").

Nor does Plaintiffs' claim that the MFNs "raised costs" matter.[25]  The overbuying in

*Weyerhaeuser* raised the defendant's costs, like the predatory pricing in *Brooke Group* reduced

the defendant's profits.  The Supreme Court's pleading requirements are unequivocal: a claim

that a defendant used its purchases of an input to drive up the costs of that input to rivals requires

factual allegations supporting recoupment.  Plaintiffs concede they make no such allegations.

## B.      Plaintiffs Fail To Allege Required Elements Of Their Markets

Despite Plaintiffs' effort to rely on pre-*Twombly* cases,[26] under the applicable law today

Plaintiffs must allege facts (not legal or conclusory allegations) showing, among other things,

that "the combination or conspiracy produced adverse, anticompetitive effects within relevant

product and geographic markets…."  *Total Benefits*, 552 F.3d at 436 (6th Cir. 2008) (internal

---

[25] This claim is contradicted not just by the Complaint, which shows that the contracts containing the MFNs obtained discounts from the prices the hospitals sought, Compl. ¶ 17, but also by Plaintiffs' recent concession that they do not allege that Blue Cross "overpaid."

[26] *E.g.*, *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987), on which Plaintiffs rely to pare their pleading obligations, DOJ Br. at 7, and *White and White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 504 (6th Cir. 1983), which Plaintiffs try to use to shrink the pleading requirements imposed by *Total Benefits Planning Agency v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008).

quotations omitted).  And they must make these allegations for each of the *at least* 34 separate antitrust violations they are claiming (two different products within seventeen separate and independent geographic markets).  Plaintiffs do not even come close.

    <u>First</u>, even if we were to accept Plaintiffs' clarification that they are trying to allege two product markets, commercial group health insurance and commercial individual health insurance, Plaintiffs do not make the allegations *required* by *Total Benefits*: "an explanation of the other insurance companies involved, and their products and services…."  And so, dismissal is required.  *Total Benefits*, 552 F.3d at 437.[27]

    <u>Second</u>, Plaintiffs fail to allege market power, because they allege no market share anywhere, for either product market that they now claim to allege, or in the hospital markets in which they claim the illegal conduct took place.[28]  The allegations of market share (and barriers to entry, and so forth) relate entirely to "commercial health insurance," *e.g.*, Compl. ¶¶ 33-35, which is not an alleged product market.  That is fatal.  *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 532 (6th Cir. 2001) ("Because the College did not allege that the Foundation has market power in the relevant market … we find

---

[27] Plaintiffs cannot brush off *Total Benefits* by claiming that it "concerned a complaint that '[failed] to identify a product market' altogether."  DOJ Br. at 11.  The complaint there, like the Complaint here, "[failed]" because, while it proposed geographic and product boundaries, it lacked sufficient facts to support those boundaries—notably in its failure to identify the relevant competitors and their products.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 852 (S.D. Ohio 2007) (providing more detail on the complaint's market allegations).  That Plaintiffs mention a few other insurers in a few of their purported geographic markets does not remotely begin to fill this gaping hole in their Complaint.

[28] *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986) and its progeny provide no straw for Plaintiffs to grasp.  As the Sixth Circuit has held, applying *Indiana Federation's* "quick look" analysis as a shortcut for defining markets and showing effects in contexts, such as here, where the market contours and effects are "neither obvious nor undisputed," is reversible error.  *Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 960-61 (6th Cir. 2004).

that the district court was correct to dismiss the College's antitrust claims.")[29]

Third, Plaintiffs effectively admit that they plead no facts plausibly delineating relevant geographic markets for anywhere but Lansing, which they say "illustrates" their markets, "as an example." DOJ Br. at 12. Plaintiffs cannot plead relevant markets for at least 34 entirely separate rule of reason claims by "illustration" and "example"; each relevant market must be plausibly alleged. *See supra* Part III*; see also Dickson v. Microsoft Corp.*, 309 F.3d 193 (4th Cir. 2002) (analyzing separate vertical conspiracies separately). Lacking *any* facts supporting *sixteen* of the seventeen drastically different alleged geographic markets—and deficient in the facts for the single market it actually discusses, as explained in our initial brief—the Complaint must be dismissed.[30]

Finally, Plaintiffs' plea that they should be allowed to use "illustrations" and "best estimates" to excuse them from the obligation to plead required elements until after discovery is particularly ill-founded here. Having conducted back-to-back investigations of Blue Cross stretching over more than a year and involving the production of nearly a half-million documents from Blue Cross (let alone from numerous other entities), Plaintiffs have already received more

---

[29] Plaintiffs' footnote 16 arguing that the Court could perhaps come up with a hypothetical guesstimate of market shares by engaging in a complex mathematical exercise and mixing and matching different Complaint paragraphs is both wrong—the shares discussed are statewide, not for any relevant market—and, in its piling of inference on inference and guess upon guess, is more telling than anything that might be said in response.

[30] Plaintiffs' claim that "Blue Cross does not seriously dispute" Plaintiffs' geographic markets, DOJ Br. at 11, is mistaken. The alleged markets are implausible, as even a cursory review of a map would show. Further, the allegation that Lansing serves as an "example" fails in the face of facts easily accessible on the internet and the face of the Complaint; only one other market bears any remote resemblance to Lansing when one looks at the relevant facets of area, population, number of hospitals, and number of alleged MFNs in the Lansing market.

discovery than most plaintiffs ever get.[31]  That they cannot plead basic market allegations now demonstrates the lack of a valid claim, not lack of discovery.

## IV.    The Michigan Law Claims Fail

In addition to the Complaint failing for the above reasons, the exemptions laid out in MCL § 445.774 specifically apply.  First, as the State recognizes, § 445.774(6) was enacted because Blue Cross raised concerns that the Michigan Antitrust Reform Act ("MARA") could harm its efforts to control costs.  *See* BC Mem. at 48 n.35; AG Br. at 2-3.  Courts recognize that MFN clauses are used to control costs.  *See, e.g., Blue Cross & Blue Shield of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995).  The statutory exemption does not turn on an *ex post* parsing of each clause's actual effect on costs; that would render it a dead letter.  And, because Blue Cross's MFNs on their face lower Blue Cross's costs and the Commissioner has not rejected them, the exemption applies.  *See BPS Clinical Labs. v. Blue Cross & Blue Shield of Mich.*, 217 Mich. App. 687, 699-700, 552 N.W.2d 919, 925 (1996).

Second, the Comment accompanying MARA lists state action as being among the provisions that should be read into this statute.  *See* MCLA § 445.774 cmt.  Section 445.774(4) is Michigan's codification of the state action doctrine, and if Blue Cross is immune under the federal state action doctrine, it is immune under state law.  Further, P.A. 350 expressly permits Blue Cross to offer incentives and disincentives in its provider agreements, even if that may shift costs to other purchasers.  *See* MCL § 550.1516(2)(b).  Under § 445.774(4), acts expressly authorized by an act of the State are exempt.  *See BPS Clinical Labs*, 552 N.W.2d at 925.

Finally, the AG's argument that *MFNs* must be the subject of the pervasive regulatory

---

[31]  BC Mot. to Stay Discovery at 11.  Further, "the fact that market definition generally requires discovery has not prevented this court, and others, from affirming grants of motions to dismiss on the basis of an insufficiently pled or totally unsupportable proposed market."  *Mich.*

scheme is incorrect.  Rather, the subjects of the regulation at issue in this case are Blue Cross's broader obligations under P.A. 350.  P.A. 350 plainly governs MFNs; indeed, OFIR cited the clauses in its report on the PCP.  *See* 2009 OFIR Order at 5 (BC Mem. App. 2).[32]

The AG also misreads the "exclusive jurisdiction" language.  The Commissioner has exclusive jurisdiction to regulate and supervise Blue Cross.  *See* MCL § 550.1601 (naming only "the commissioner" as the supervisor and regulator of a health care corporation); *In Re 1987-1988 Med. Doctor Provider Class Plan*, 203 Mich. App. 707, 730, 514 N.W.2d 471, 483 (Mich. Ct. App. 1994) ("the Legislature delegated the authority to regulate and supervise nonprofit health care corporations to the [commissioner], not to anyone else").  The AG's ability to appeal the Commissioner's determinations does not alter this fact.

## <u>CONCLUSION</u>

For the foregoing reasons, and the reasons stated in Blue Cross's initial brief, the Complaint should be dismissed in its entirety.

<u>    /s/ Todd M. Stenerson            </u>
Hunton & Williams LLP
1900 K Street, N.W.
Washington, DC  20006
tstenerson@hunton.com
P51953

---

*Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 733 (6th Cir. 2008).

[32] To the degree that the AG is claiming that P.A. 350 is not subject to the exemption in § 445.774(5) because it is not expressly identified in the statute, the Legislature specifically noted that the inclusion of the insurance code of 1956 was not meant to be exclusive by using the language "including but not limited to."  *See* MCL § 445.774(5).

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2010, I electronically filed the foregoing Reply with the Clerk of the Court using the ECF system which will send notification of such filing to the individuals registered to receive electronic service in this docket, and I hereby certify that there are no individuals listed on the Court's manual service list.  Below is the Court's Electronic Mail Notice List for Civil Action No. 10-cv-14155-DPH-MKM.

**Farayha J. Arrine**
farrine@dickinsonwright.com

**Ryan Danks**
ryan.danks@usdoj.gov,richard.liebeskind@usdoj.gov,david.gringer@usdoj.gov,steven.kramer@usdoj.gov,audrey.pak@usdoj.gov,barry.joyce@usdoj.gov,ann.blaylock@usdoj.gov,peter.j.mucchetti@usdoj.gov

**Joseph A. Fink**
jfink@dickinsonwright.com,lpage@dickinsonwright.com

**Mary Elizabeth Lippitt**
lippitte@michigan.gov,geem1@michigan.gov

**Thomas G. McNeill**
TMcNeill@dickinsonwright.com,LMolisee@dickinsonwright.com

**Robert A. Phillips**
rphillips@bcbsm.com,dbonaudo@bcbsm.com,vburnett@bcbsm.com

**Todd M. Stenerson**
tstenerson@hunton.com,jlasken@hunton.com,iconner@hunton.com,csmoot@hunton.com

    __/s/ Todd M. Stenerson_____
    Hunton & Williams LLP
    1900 K Street, N.W.
    Washington, DC  20006
    tstenerson@hunton.com
    P51953