**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATE OF AMERICA and
STATE OF MICHIGAN,

        Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

        Defendant.

_____/

Case No. 10-14155

HONORABLE DENISE PAGE HOOD

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS**
**and**
**ORDER REGARDING VARIOUS MOTIONS**

## I.     BACKGROUND/FACTS

On October 18, 2010, Plaintiffs United States of America ("United States") and the State of Michigan ("Michigan") filed the instant action against Defendant Blue Cross Blue Shield of Michigan ("Blue Cross") alleging that Blue Cross' use of most favored nation ("MFN") clauses in its agreements with various hospitals violate:  Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count One) and Section 2 of the Michigan Antitrust Reform Act, M.C.L. § 445.772 (Count Two).  The Complaint alleges that each of the provider agreements between Blue Cross and Michigan hospitals containing an MFN provision is a contract, combination and conspiracy within the meaning of Section 1 of the Sherman Act, 15 U.S.C. § 1.  (Comp., ¶ 85) The Complaint further alleges that Blue Cross entered into agreements with hospitals in Michigan that unreasonably restrain trade and commerce in violation of Section 2 of the Michigan Antitrust Reform Act, M.C.L. § 445.772.

(Comp., ¶ 90)

Blue Cross is a Michigan nonprofit healthcare corporation headquartered in Southfield, Michigan.  (Comp., ¶ 7)  Blue Cross is subject to federal taxation but is exempt from state and local taxation under Michigan law.  (*Id.*)  Directly and through its subsidiaries, Blue Cross provides commercial and other health insurance products, including preferred provider organization ("PPO") health insurance products and health maintenance organization ("HMO") health insurance products. (*Id.*)  Blue Cross is the largest provider of commercial health insurance in Michigan.  (Comp., ¶ 1) Blue Cross competes with for-profit and nonprofit health insurers.  (*Id.*)  Blue Cross' commercial health insurance policies cover more than three million Michigan residents, more than 60% of the commercially insured population.  (*Id.*) Blue Cross insures more than nine times as many Michigan residents as its next largest commercial health insurance competitor.  (*Id.*) Blue Cross had revenues in excess of $10 billion in 2009.  (*Id.*)

Blue Cross is also the largest non-governmental purchaser of health care services, including hospital services, in Michigan.  (Comp., ¶ 2)  As part of its provision of health insurance, Blue Cross purchases hospital services on behalf of its insureds from all 131 general acute care hospitals in Michigan.  (*Id.*)  Blue Cross purchased more than $4 billion in hospital services in 2007.  (*Id.*)

Blue Cross has sought to include MFNs (sometimes called "most favored pricing," "most favored discount," or "parity" clauses) in many of its contracts with hospitals over the past several years. (Comp., ¶ 3)  Blue Cross currently has agreements containing MFNs or similar clauses with at least 70 of Michigan's 131 general acute care hospitals.  (*Id.*) These 70 hospitals operate more than 40% of Michigan's acute care hospital beds. (*Id.*)

Blue Cross generally enters into two types of MFNs, which require a hospital to provide

2

hospital services to Blue Cross' competitors either at higher prices than Blue Cross pays or at prices no less than Blue Cross pays. (Comp., ¶ 4)  Both types of MFNs inhibit competition. (*Id.*) The first type is known as "MFN-plus." (Comp., ¶ 4(A))  Blue Cross' existing MFNs include agreements with 22 hospitals that require the hospital to charge some or all other commercial insurers *more* than the hospital charges Blue Cross, typically by a specified percentage differential. (*Id.*) These hospitals include major hospitals and hospital systems, and all of the major hospitals in some communities. (*Id.*)  These 22 hospitals operate approximately 45% of Michigan's tertiary care hospital beds (providing a full range of basic and sophisticated diagnostic and treatment services, including many specialized services.) (*Id.*) Blue Cross' MFN-plus clauses require that some hospitals charge Blue Cross' competitors as much as 40% more than they charge Blue Cross. (*Id.*) Two hospital contracts

with MFN-plus clauses also prohibit giving Blue Cross' competitors better discounts than they currently receive during the life of the Blue Cross contracts. (*Id.*) Blue Cross' MFN-plus clauses guarantee that Blue Cross' competitors cannot obtain hospital services at prices comparable to the prices Blue Cross pays, which limits other health insurers' ability to compete with Blue Cross. (*Id.*) Blue Cross has sought and, on most occasions, obtained MFN-plus clauses when hospitals have sought significant rate increases. (*Id.*)

The second type of MFN clause is considered as "Equal-to MFNs." (Comp., ¶ 4(B))  Blue Cross entered into agreements containing MFNs with more than 40 small, community hospitals, which typically are the only hospitals in their communities, requiring the hospitals to charge other commercial health insurers at least as much as they charge Blue Cross. (*Id.*) Under these agreements, Blue Cross agreed to pay more to community hospitals, which Blue Cross refers to as "Peer Group

5" hospitals, raising Blue Cross' own costs and its customers' costs, in exchange for the equal-to MFN. (*Id.*)  A community hospital that declines to enter into these agreements would be paid approximately 16% less by Blue Cross than if it accepts the MFN clause.  (*Id.*)  Blue Cross also entered into equal-to MFNs with some larger hospitals as well.  (*Id.*)

Blue Cross sought and obtained MFNs in many hospital contracts in exchange for increases in the prices it pays for the hospitals' services.  (Comp., ¶5)  In these instances, Blue Cross has purchased protection from competition by causing hospitals to raise the minimum prices they can charge to Blue Cross' competitors but, in doing so, has also increased its own costs.  (*Id.*) Blue Cross has not sought or used MFNs to lower its own cost of obtaining hospital services.  (*Id.*)

The United States and Michigan argue Blue Cross' MFNs have caused many hospitals to (1) raise prices to Blue Cross' competitors by substantial amounts, or (2) demand prices that are too high to allow competitors to compete, effectively excluding them from the market. (Comp., ¶6)  By denying Blue Cross' competitors access to competitive hospital contracts, the MFNs have deterred or prevented competitive entry and expansion in health insurance markets in Michigan.  (*Id.*)  This has resulted in increased prices for health insurance sold by Blue Cross and its competitors, in addition to higher prices for hospital services paid by insureds and self-insured employers.  (*Id.*)

Michigan purchases group health insurance for approximately 52,000 employees and 180,000 retirees and dependents, including residents of each of the areas directly affected by Blue Cross' conduct.  (Comp., ¶ 9)  In particular, Michigan purchases health insurance for its employees from Blue Cross and others, and 60% of Michigan employees and nearly all Michigan retirees are covered by Blue Cross health plans.  Michigan employees covered by Blue Cross are self-insured by Michigan, and increases in hospital costs are borne directly by Michigan and its employees. (*Id.*)

4

Michigan claims it has been injured, and is likely to be injured, in its business and property as a result of Blue Cross' violations. (*Id.*)

In lieu of an Answer, Blue Cross filed a Motion to Dismiss. The United States and Michigan have filed responses to the motion. Blue Cross replied. A hearing was held on the matter on April 19, 2011. At a hearing on related cases on June 7, 2011, the Court briefly indicated it would deny Blue Cross' Motion to Dismiss and would issue a written order with its analysis.

On June 30, 2011, Blue Cross filed a Motion for Leave to File Supplemental Authority. The United States and Michigan oppose the motion in their Response filed on July 6, 2011. Blue Cross filed a reply to the response on July 7, 2011 arguing that the Court had yet to prepare a written order pursuant to Rule 58[1] of the Rules of Civil Procedure and without such a written order, Blue Cross is unable to formulate whether it is able to file a motion for reconsideration. Despite Blue Cross' representation that it is unable to formulate arguments in response to the Court's denial of its Motion to Dismiss and without the Court's ruling on Blue Cross' Motion for Leave to File Supplemental Authority, Blue Cross filed a Notice of Interlocutory Appeal on August 5, 2011. It is noted Blue Cross filed the Notice of Interlocutory Appeal without first seeking permission from this Court and without allowing Plaintiffs to argue whether an interlocutory appeal is appropriate. *See,* 28 U.S.C. § 1292 and Rule 5 of the Federal Rules of Appellate Procedure; *Huron Valley Hosp., Inc. v. City of Pontiac,* 792 F.2d 563 (6th Cir. 1986).

---

[1] Fed. R. Civ. P. 58 applies to judgments where either the court or a jury decides a case. *See,* Rule 58 Comments, 1937 Adoption, 1963 Amendment. No such decision has been rendered in this case.

## II.    ANALYSIS

### A.    Motion to Dismiss Standard of Review

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* at 555 (internal citations omitted).  Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard."  *Id.* at 563.  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.  Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion–even if that conclusion is cast in the form of a factual allegation." *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009).  In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the

reasonable inferences from that content, must be "plausibly suggestive" of a claim entitling a plaintiff to relief. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001).

### B.    Section 1 of the Sherman Act

#### 1.    Elements

In order to establish a violation of Section 1 of the Sherman Act, three elements must be met: 1) an agreement 2) affecting interstate commerce 3) that unreasonably restrains trade. *White and White, Inc. v. American Hospital Supply Corp.,* 723 F.2d 495, 504 (6th Cir. 1983). Reviewing the Complaint, the United States and Michigan assert that Blue Cross entered into agreements with various hospitals which affect interstate commerce, satisfying elements one and two. (Comp., ¶ 85) Blue Cross does not move to dismiss based on these two elements but moves to dismiss under the third element–whether the MFN clauses at issue unreasonably restrain trade. The parties agree that in order to assess whether the MFN clauses unreasonably restrain trade, the "rule of reason" is applied. An agreement violates the rule of reason if it "may suppress or even destroy competition," rather than promote competition. *American Needle, Inc. v. National Football League,* 130 S.Ct. 2201, 2217 n. 10 (2010)(quoting, *Board of Trade of Chicago v. United States,* 246 U.S. 231, 238 (1918)). "To state a claim under the rule-of-reason test, a plaintiff must allege, *inter alia*, that the purportedly unlawful contract, combination or conspiracy produced adverse anticompetitive effects

7

within relevant product and geographic markets." *Warrior Sports, Inc. v. National Collegiate Ath. Ass'n,* 623 F.3d 281, 286 (6th Cir. 2010). In order to survive a motion to dismiss under the rule of reason test, the complaint must plausibly allege that the MFNs produced adverse anticompetitive effects within relevant product and geographic markets.

Blue Cross argues that the Complaint fails to plausibly allege relevant product markets, geographic markets, market power, anticompetitive effects arising from the use of MFNs in any relevant market and facts supporting a viable legal theory of harm such as recoupment or foreclosure. The United States and Michigan argue that the Complaint sufficiently alleges plausible markets, anticompetitive effects and a legal theory of harm.

### 2.    Product Markets

Relevant product or geographic markets are sufficiently alleged as long as the complaint bears a "rational relation to the methodology courts prescribe to define a market." *Todd v. Exxon Corp.,* 275 F.3d 191, 199-200 (2d Cir. 2001). Courts hesitate to grant motions to dismiss for failure to plead a relevant product market because market definition is a fact-intensive inquiry only after a factual inquiry into the commercial realities faced by the consumers. *Id.* at 199-200; *Eastman Kodak Co., v. Image Tech., Servs., Inc.,* 504 U.S. 451, 467 (1992). A product market consists of products that have "reasonable interchangeability." *Spirit Airlines, Inc. v. Northwest Airlines, Inc.,* 431 F.3d 917, 933 (6th Cir. 2005).

Blue Cross argues that the Complaint fails to allege a market-by-market explanation of the insurance companies involved and their products and services. The United States and Michigan assert that there is no requirement at the pleading stage to allege such a market-by-market explanation. They argue that the Complaint sufficiently alleges two product markets, not two to six

8

as asserted by Blue Cross.  The two product markets affected by the MFN clauses alleged in the Complaint are:  commercial group health insurance and commercial individual health insurance. (Comp., ¶¶ 20, 22, 24)  Although the reason why these product markets are not interchangeable need not be alleged at the pleading stage as argued by the United States and Michigan, they claim that the Complaint sets forth the reason why these product markets are not interchangeable.  The Complaint alleges that commercial group health insurance sold in Michigan includes access to a provider network which is considered to be an important element of a health insurance product because the network specifies the physicians and hospitals to which patients can turn for service with substantially lower costs to themselves.  (Comp., ¶ 20)  As to commercial individual health insurance, the Complaint alleges that this product is significantly more expensive than group health insurance and lacks group insurance's tax benefits.  (Comp., ¶ 21)  There is no other product which is reasonably interchangeable because this is the only product available to individuals without access to group coverage or government programs that allows them to reduce the financial risk of adverse health conditions and to have access to health care providers at discounted prices negotiated by commercial health insurers.  (Comp., ¶¶ 21-22)

A review of the Complaint finds that it plausibly alleges the product markets at issue–the commercial group health insurance and the commercial individual insurance product markets.  The Court finds no requirement at the pleading stage that a market-by-market analysis is required to be alleged in the Complaint.  The United States and Michigan have plausibly stated the product markets in their Complaint.

### 3.    Geographic Markets

Blue Cross asserts that the Complaint fails to allege plausible facts to establish geographic

markets.  Blue Cross argues that use of statistical data is not appropriate in establishing the appropriate geographic markets.  Blue Cross further argues that health insurance markets are "national" rather than local and that the Complaint fails to focus on whether capital for spreading financial risk can be supplied on a national basis.  The United States and Michigan respond that the Complaint sufficiently alleges the geographic markets at issue and that the Complaint need not detail specific facts to support the geographic markets at issue.

Geographic markets need not be alleged or proven with "scientific precision," nor be defined "by metes and bounds as a surveyor would lay off a plot of ground."  *United States v. Conn. Nat'l Bank,* 418 U.S. 656, 669 (1974); *United States v. Pabst Brewing Co.,* 384 U.S. 546, 549 (1966); *White and White,* 723 F.2d at 503.  The complaint need only present sufficient information to plausibly suggest the contours of the relevant geographic market.  *Jacobs v. Tempur-Pedic International, Inc.,* 626 F.3d 1327, 1336 (11th Cir. 2010).

There are 17 specific geographic markets alleged in the Complaint.  The Complaint further alleges that geographic markets for health insurance are local because the purchasers of health insurance demand access to networks of hospitals and physicians close to their homes and workplaces.  (Comp., ¶ 25)  The effect of Blue Cross's MFNs as to geographic markets "is the area in which the hospital subject to the MFN operates and in which employers and insureds can practicably turn for hospitals included in the provider network offered for sale as part of a commercial health insurance product."  (Comp., ¶ 26)  An example of a geographic area used in the Complaint is the Lansing area:  "Lansing area employers and insureds cannot practicably turn to commercial health insurers that do not offer network access to [physicians and] hospitals in Lansing" Metropolitan Statistical Area ("MSA").  (Comp., ¶ 27)  Geographic markets are analyzed

10

by using a "localized approach" and a metropolitan area may be an appropriate geographic market. *Conn. Nat'l Bank,* 418 U.S. at 670; *United States v. Marine Bancorporation, Inc.,* 418 U.S. 602, 619 (1974).

The Court's review of the Complaint shows that it plausibly alleges sufficient facts to establish geographical markets. At the pleading stage, the Complaint states a claim that consumers demand access to local providers and, therefore, the health insurance markets are local. Access to provider networks within the consumers' geographical area is plausible. The use of statistical metropolitan data, such as the MSA, is plausible to establish the geographical area alleged in the Complaint.

### 4.    Market Power

Blue Cross argues that the Complaint fails to allege market shares because the Complaint does not allege market shares by geographic market separately for group and individual health insurance. The United States and Michigan argue that the Complaint sufficiently alleges market power.

To sufficiently plead market power, a complaint must "provide a sufficient factual predicate to support its allegations that the defendants enjoy market power in the relevant market." *Foundation for Interior Design v. Savannah College,* 244 F.3d 521, 531 (6th Cir. 2001). Market power can be inferred from high market shares. *Spirit,* 431 F.3d at 935.

The Complaint in this case alleges that Blue Cross' market share in the geographic market ranges from 40% to more than 80%. (Comp., ¶ 28) Blue Cross admits that it is the dominant health insurer in Michigan. (B.C. Br., at 16) Estimations of market share is sufficient to infer market power. *See, Toys 'R' Us, Inc. v. F.T.C.,* 221 F.3d 928, 937 (7th Cir. 2000)(Shares between 20% to

11

49% is sufficient to sustain an antitrust claim.).  The Complaint alleges that the MFNs have excluded competitors and caused price increases.  (Comp., ¶¶ 41-79)

The Court finds that the allegations as to market share in the Complaint are plausible at this pleading stage.

### 5.    Anticompetitive Effects

Blue Cross asserts that the MFNs are procompetitive, therefore, the Complaint fails to state the MFNs' anticompetitive effects.  The United States and Michigan respond that the Complaint alleges detailed allegations as to how Blue Cross' MFN clauses have negatively affected competition in the health insurance markets throughout Michigan.  Although MFNs may be procompetitive, the United States and Michigan argue that a factual inquiry and, ultimately, a balancing of anticompetitive and procompetitive effects must be made but not at the pleading stage.

The Complaint alleges that the MFN clauses have negatively impacted competition in the health insurance markets throughout Michigan, by raising competitors' costs, likely increasing premiums, and directly increasing costs to self-insured employers.  (Comp., ¶¶ 41-48)  The Complaint sets forth various examples, such as the Upper Peninsula, Alpena County and the Lansing area.  In the Upper Peninsula, the Complaint alleges that the MFN-plus entered into by Blue Cross with Marquette General, affects competition because the hospital is the only tertiary care hospital in the Upper Peninsula.  The United States and Michigan claim the requirement that the hospital charge competing insurers at least 23% more than it charges Blue Cross affects potential competitors, such as Priority Health.  (Comp., ¶ 49)  Blue Cross has asserted that its contract will "keep blue lock on U.P."  (Comp., ¶ 57)  In Alpena County, Blue Cross offered Alpena Regional Medical Center, the only hospital in the area, a substantial rate increase in exchange for an MFN-

12

plus and a commitment that during the term of the contract, the hospital would not improve the discount it gave to any other health insurer.  (Comp., ¶ 68)  The United States and Michigan claim this has resulted in loss of competition in that Priority Health's prices have increased.  (Comp., ¶ 69) Blue Cross entered into a ten-year contract with Sparrow Hospital in Lansing that requires Sparrow to charge most other insurers at least 12% more than Blue Cross pays.  The Complaint alleges that this will likely result in a price increase to other insurers in Lansing and could cause other hospitals in the area to increase prices charged to Sparrow's own health plan.  (Comp., ¶¶ 60, 63-64)

Based on the allegations in the Complaint, it is plausible that the MFNs entered into by Blue Cross with various hospitals in Michigan establish anticompetitive effects as to other health insurers and the cost of health services in those areas.

### 6.    Harm

Blue Cross argues that the Complaint fails to allege plausible harm such as foreclosure and recoupment.  In response, the United States and Michigan argue that the Complaint specifically alleges foreclosure and that recoupment is not at issue in this case.

A competitor is "foreclosed" from competing when it is denied or disadvantaged in its access to significant sources of input or distribution.  *United States v. Dentsply Int'l., Inc.,* 399 F.3d 181, 189-90 (3d Cir. 2005)  The Complaint alleges that Blue Cross has entered into MFNs with major hospitals and health systems and community hospitals which have resulted in competitors being excluded from these markets.  (Comp., ¶¶ 4, 14, 69, 77-79, 56)  As noted above, it is claimed that Priority has been unable to enter the market in the Upper Peninsula because of the MFN clause between Blue Cross and Marquette General.  Although the term "foreclose" is not set forth in the Complaint, it plausibly alleges facts that other insurers have been excluded or may be excluded or

13

"foreclosed" from entering the markets because of the MFN clauses between Blue Cross and these hospitals.

As to "recoupment," the case cited by Blue Cross involved a "predatory bidding" claim which is not the claim in this case. *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.,* 549 U.S. 312, 322 (2007). The claim in this case involves the MFNs used by Blue Cross which prevent other insurers from entering the market.

### C.     Michigan Antitrust Reform Act

Blue Cross argues that its conduct is exempt from the Michigan Antitrust Reform Act ("MARA"), M.C.L. § 445.774. Michigan responds that Blue Cross is not exempt. MARA applies to entities engaged in trade or commerce in Michigan. There are exemptions:

> This act shall not apply to a transaction or conduct of an authorized health maintenance corporation, health insurer, medical care corporation, or health service corporation or health care corporation when the transaction or conduct is to reduce the cost of health care and is permitted by the commissioner. This subsection shall not affect the enforcement of the federal antitrust act by federal courts or federal agencies.

M.C.L. § 445.774(6).

The exemption only applies to health insurers "when the transaction or conduct is to reduce the cost of health care and is permitted by the commissioner." *Id.* The Complaint alleges that the MFNs "have not led, and likely will not lead, to lower hospital prices for Blue Cross or other insurers. On no occasion has a Blue Cross MFN resulted in Blue Cross' paying less for hospital services." (Comp., ¶ 81) The Complaint has plausibly alleged that the MFNs at issue did not reduce the cost of health care. At this stage of the proceedings, Blue Cross has not shown it is exempt under M.C.L. § 445.774(6).

14

Blue Cross also argues that it is exempt under the following:

* * *

> (4) This act shall not apply to a transaction or conduct specifically authorized under the laws of this state or the United States, or specifically authorized under laws, rules, regulations, or orders administered, promulgated, or issued by a regulatory agency, board, or officer acting under statutory authority of this state or the United States.

> (5) A transaction or conduct made unlawful by this act shall not be construed to violate this act where it is the subject of a legislatively mandated pervasive regulatory scheme, including but not limited to, the insurance code of 1956, being sections 500.100 to 500.8302 of the Michigan Compiled Laws, which confers exclusive jurisdiction on a regulatory board or officer to authorize, prohibit or regulate the transaction or conduct.

M.C.L. § 450.774(4)-(5).

Michigan argues that Blue Cross is not mentioned in this section whereas Blue Cross is mentioned in subsection (6) above. The Court agrees with Michigan's argument given that Blue Cross is specifically mentioned in subsection (6). Subsections (4) and (5) do not apply to Blue Cross. Even if these two subsections applied, the transaction at issue–the use of MFNs to prevent competition–has not been authorized by either federal or state law. Additionally, the Michigan Attorney General is authorized to bring actions against Blue Cross. M.C.L. § 550.1619(2), 550.1515(1).

The Court finds that the Complaint plausibly alleges a violation under the MARA and denies Blue Cross' Motion to Dismiss this claim.

### D.    Defenses/Abstention

Blue Cross bases its motion on various defenses, such as state action immunity because Michigan heavily regulates the insurance industry. Another reason set forth by Blue Cross is that

any decision in this case would disrupt substantial state law bearing on Blue Cross' special status as a quasi-public entity agency and designation as the insurer of last resort. Blue Cross urges the Court to abstain from hearing the case because there is adequate state remedy, such as review by the Insurance Commissioner of these MFN clauses.

The United States and Michigan argue that state action immunity is not applicable and that the Court should not abstain from hearing this case. They respond that Blue Cross mischaracterizes the Complaint because the Complaint is not seeking to prevent Blue Cross from obtaining the lowest prices from hospitals. The United States and Michigan allege that the Complaint attacks Blue Cross' use of MFNs to prevent its competitors from obtaining the best prices that the competitors can obtain, without interference from Blue Cross. The United States argues that it has no remedy before the State, therefore the Court should not abstain from hearing the case.

## 1.    State Action Immunity

The Supreme Court established a two-part test for determining whether state action immunity saves certain actions from preemption by the Sherman Act: "First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; second, the policy must be actively supervised by the State itself." *First Amer. Title Co. v. Devaugh,* 480 F.3d 438, 445 (6th Cir. 2007); *Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105 (1980); *FTC v. Ticor Title Ins. Co.,* 504 U.S. 621, 636 (1992). The state action immunity doctrine, like other judicially-imposed exemptions from the antitrust laws, must be narrowly construed. *First Amer. Title,* 480 F.3d at 445.

As to the first prong–the challenged restraint must be one clearly articulated and affirmatively expressed as state policy–the Court finds that Blue Cross has failed to meet this prong.

16

The challenged restraint in the Complaint is Blue Cross' use of the MFNs to unreasonably restrain competition with other insurers. The purpose and policy of the Nonprofit Health Care Corporation Reform Act ("NHCCRA") is-

> to promote an appropriate distribution of health care services for all residents of this state, to promote the progress of the science and art of health care in this state, and to assure for nongroup and group subscribers, reasonable access to, and a reasonable cost and quality of, health care services, in recognition that the health care financing system is an essential part of the general health, safety, and welfare of the people of this state.
>
> &ast;  &ast;  &ast;
>
> It is the intention of the legislature that this act shall be construed to provide for the regulation and supervision of nonprofit health care corporations by the commissioner of insurance so as to secure for all of the people of this state who apply for a certificate, the opportunity for access to health care services at a fair and reasonable price.

M.C.L. § 550.1102(1) and (2). With respect to providers, Blue Cross shall contract with such providers "to assure subscribers reasonable access to, and reasonable cost and quality of, health care services, ..." M.C.L. § 550.1504(1). The following goals of the contract are:

> (a) There will be an appropriate number of providers throughout this state to assure the availability of certificate-covered health care services to each subscriber.
>
> (b) Providers will meet and abide by reasonable standards of health care quality.
>
> (c) Providers will be subject to reimbursement arrangements that will assure a rate of change in the total corporation payment per member to each provider class that is not higher than the compound rate of inflation and real economic growth.

M.C.L. § 500.1504. Provider class plans retained by the commissioner or approved by a hearing officer shall maintain certain standards and, as to hospitals, also include:

17

(a) To the extent practicable, reimbursement control shall be expressed in the aggregate to individual hospitals.

(b) No portion of the health care corporation's fair share of the hospitals' reasonable financial requirements shall be borne by other health care purchasers. However, this portion shall not preclude reimbursement arrangements which include financial incentives and disincentives.

(c) The health care corporation's programs and policies shall not unreasonably interfere with the hospital's ability and responsibility to manage its operations.

M.C.L. § 500.1516. Blue Cross may enter into provider contracts executed under the Prudent Purchaser Act, M.C.L. §§ 550.1502a and 550.51-63.

Blue Cross argues that, based on the extensive regulatory scheme governing Blue Cross' existence and because Blue Cross is considered a quasi-public creation of statute, Blue Cross is immune under the state action doctrine. Narrowly construing the state action immunity doctrine, the Court's review of the statutes governing Blue Cross' actions reveals that the legislature did not clearly articulate nor affirmatively express the act sought to be restrained–using MFNs to deter competition with other insurers. The NHCCRA's express stated purpose and policy are set forth above–"to secure for all of the people of this state who apply for a certificate, the opportunity for access to health care services at a fair and reasonable price." M.C.L. § 550.1102(1) and (2). The main goal of the NHCCRA is to assure access by the people to health care services; not for Blue Cross to enter into contracts with providers which discourages competition with other insurers–for profit or otherwise. The NHCCRA states that no portion of Blue Cross' fair share of the hospitals' reasonable financial requirements shall be borne by other health care purchasers. M.C.L. § 550.1516(2)(b). Although the Act allows Blue Cross to include reimbursement arrangements which include financial incentives and disincentives, such arrangements cannot result in cost shifting to

18

other health care purchasers.  The purpose of the NHCCRA is to make certain that the people of Michigan are able to access health care services at a fair and reasonable price. There is no provision in the NHCCRA that allows Blue Cross to stifle competition.  The Complaint alleges sufficiently, as previously noted, that the MFNs at issue prevent other insurers from competing with Blue Cross.

The second prong for determining whether state action immunity applies is whether the State actively supervises the policy.  Based on the many provisions of the NHCCRA and other regulations relating to the statute, the State actively supervises the policy of ensuring that the people of the State are able to access health care services at a fair and reasonable price.  However, Blue Cross is unable to point to any provision of the NHCCRA which allows MFNs with hospital providers which prevent other insurers from competing with Blue Cross–which is the challenged restraint alleged in the Complaint.

Blue Cross' argument that the Insurance Commissioner has the authority to investigate and modify Blue Cross' provider contracts is not found in the statute.  There is no provision that mandates the Insurance Commissioner's review of specific contracts and review of MFN clauses before Blue Cross enters into such contracts with hospitals.  The Act only allows the Insurance Commissioner to review provider *plans* and to examine the plan and determine "only if the plan contains a reimbursement arrangement and objectives for each goal provided in section 504 .." M.C.L. § 550.1506(2).

Narrowly construing the state action immunity doctrine, for the reasons above, the Court finds that such immunity does not apply to Blue Cross' use of MFNs in the contracts with hospitals as set forth in the Complaint.

### 2.    Quasi-Public Entity

19

Blue Cross argues that it is a "quasi-public entity."  Courts have held that Blue Cross is not a public entity but a private entity and that Blue Cross, itself, has continued to so argue in other cases.  *Riverview Investments, Inc. v. Ottawa Cmty. Improvement Corp.,* 899 F.2d 474, 480-82 (6th Cir. 1992).  Blue Cross manages its own business, controls its contracting relationship with providers and controls its substantive surpluses.  M.C.L. §§ 550.1301(2), 550.1301(1), 550.1206(1).  This Court in another case has accepted Blue Cross' argument that it is a private entity, not a state actor.  *Loftus v. Blue Cross Blue Shield of Michigan,* 2010 WL 1139338, *4 (E.D. Mich. Mar. 24, 2010)(Hood).

### 3.      Abstention

Blue Cross' abstention argument under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) is not applicable because there is no available review of the MFN clauses by the Commissioner under the NHCCRA.  Blue Cross has not shown that the Commissioner, in fact, reviewed the MFN clauses at issue.  The United States' only forum for enforcing federal antitrust laws is in the federal district court, which has exclusive jurisdiction under Sherman Act claims.  15 U.S.C. § 4.  This section precludes *Burford* abstention.  *Andrea Theaters, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 63 (2d Cir. 1986)(Abstention in a federal antitrust case would run counter to Congress' intent in granting exclusive federal jurisdiction over these claims).  The Court declines to abstain from hearing this case.

### E.      Blue Cross' Motion to Strike Letter from Michigan Attorney General

Blue Cross seeks to strike a letter from the Attorney General (Doc. #32) explaining why Michigan supports the arguments raised by the United States as to abstention and state action immunity because Blue Cross claims the letter is not a properly filed surreply.

It is true that the letter, filed after Blue Cross submitted its reply to the responses is considered a surreply and is not authorized under the Rules. However, because Blue Cross extensively argues its position in the Motion to Strike, its original Motion to Dismiss and reply, Blue Cross is not prejudiced by the surreply. The surreply does not raise any new arguments not raised by the United States or Michigan. As noted below, Blue Cross has also filed a supplemental document to support is Motion to Dismiss which is not authorized by the Rules as well. The Court has the discretion to allow documents to be filed and, since there is no prejudice to Blue Cross, the Court will not strike the letter.

### F. Blue Cross' Motion for Leave to File Supplemental Authority

The Court grants Blue Cross' Motion for Leave to File Supplemental Authority since, at the time Blue Cross filed the motion on June 30, 2011, the Court had yet to enter its Order on the motion. The United States and Michigan are not prejudiced given that they had the opportunity to respond to the motion. However, the Court finds that the case attached, *FTC and Georgia v. Phoebe Putney Health System*, Case No. 1:11-cv-58 (M.D. Ga. Order dated June 27, 2011)(unpublished), is not applicable because the transaction at issue in that case–a certain acquisition–was found to be regulated by the Georgia Legislature. In this case, as set forth above, the transaction at issue–the use of MFNs–is not regulated by the Michigan statutes governing Blue Cross' conduct.

### G. Blue Cross' Motion to Stay Discovery Pending Ruling

Blue Cross seeks a stay in discovery pending a ruling on the Motion to Dismiss. The parties' Rule 26(f) report indicates they have not exchanged disclosures based on Blue Cross' request to stay discovery pending this ruling. The Court has now ruled on the Motion to Dismiss rendering this motion moot.

21

H.      The United States and Michigan's Motion to Compel Discovery

The United States and Michigan seek production of documents in response to their First Request for the Production of Documents served on February 4, 2011 under Rule 34. Blue Cross objected to the discovery for two reasons: the pending Motion to Dismiss, and relevancy as to the documents from 2004 to 2005 relating to Blue Cross' development of the MFN provisions, claiming that these documents antedate the dates in the Complaint.

The Court finds the documents from 2004 to 2005 are relevant since the documents may establish Blue Cross' intent as to the MFNs. The documents must be produced within 30 days from the entry of this Order.

III.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Blue Cross Blue Shield of Michigan's Motion to Dismiss **(Doc. No. 12, filed December 17, 2010)** is DENIED.

IT IS FURTHER ORDERED that Blue Cross Blue Shield of Michigan's Motion to Stay Discovery Pending a Ruling on Defendant's Motion to Dismiss **(Doc. No. 20, filed January 24, 2011)** is MOOT.

IT IS FURTHER ORDERED that Blue Cross Blue Shield of Michigan's Motion to Strike Letter from the Michigan Attorney General **(Doc. No. 34, filed March 7, 2011)** is DENIED.

IT IS FURTHER ORDERED that Blue Cross Blue Shield of Michigan's Motion to Compel Production of Documents **(Doc. No. 38, filed March 18, 2011 (redacted) and Doc. No. 39, filed March 18, 2011 (sealed and unredacted))** is GRANTED.

IT IS FURTHER ORDERED that Blue Cross Blue Shield of Michigan's Motion for Leave

to File Supplemental Authority (**Doc. No. 55, filed June 30, 2011**) is GRANTED.

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  August 12, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 12, 2011, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

23