IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF MICHIGAN,<br><br>                              Plaintiffs,<br>           v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN, a Michigan nonprofit healthcare corporation,<br><br>                              Defendant. | Civil Action No.<br>2:10-cv-14155-DPH-MKM<br>Hon. Denise Page Hood<br>Mag. Judge Mona K. Majzoub |

**PLAINTIFF'S REDACTED MOTION TO COMPEL COVENANT HEALTHCARE TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA**

      For the reasons set forth in the accompanying brief, Plaintiff United States of America respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 45(c)(2)(B)(i), to compel Covenant HealthCare ("Covenant") to promptly produce certain documents responsive to the subpoena issued by the United States on February 16, 2012. Plaintiff State of Michigan concurs with this motion. These documents are highly relevant to this case and are necessary to prepare for a deposition of Covenant's Chief Financial Officer. Pursuant to Local Rule 7.1(a), attorneys for the United States conferred with Covenant's attorney regarding the subpoena but were unable to reach an agreement on the scope of Covenant's document production.

– 2 –

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

| | |
|---|---|
| Peter Caplan (P-30643) | Scott I. Fitzgerald |
| Assistant United States Attorney | David Z. Gringer |
| U.S. Attorney's Office | Trial Attorneys |
| Eastern District of Michigan | Litigation I Section |
| 211 W. Fort Street | |
| Suite 2001 | By: |
| Detroit, MI 48226 | /s/ David Z. Gringer |
| (313) 226-9784 | Trial Attorney |
| peter.caplan@usdoj.gov | Litigation I Section |
| | Antitrust Division |
| | U.S. Department of Justice |
| | 450 Fifth Street, N.W., Suite 4100 |
| | Washington, D.C. 20530 |
| | (202) 532-4537 |
| | david.gringer@usdoj.gov |

March 30, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF MICHIGAN,<br><br>         Plaintiffs,<br>    v.<br><br>BLUE CROSS BLUE SHIELD OF MICHIGAN, a Michigan nonprofit healthcare corporation,<br><br>         Defendant. | Civil Action No.<br>2:10-cv-14155-DPH-MKM<br>Hon. Denise Page Hood<br>Mag. Judge Mona K. Majzoub |

**BRIEF IN SUPPORT OF PLAINTIFF'S REDACTED MOTION TO COMPEL COVENANT HEALTHCARE TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA**

Peter Caplan (P-30643)
Assistant United States Attorney
Eastern District of Michigan
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9784
peter.caplan@usdoj.gov

Scott I. Fitzgerald
David Z. Gringer
Trial Attorneys
Litigation I Section
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., Suite 4100
Washington, D.C. 20530
(202) 353-3863
scott.fitzgerald@usdoj.gov

# TABLE OF CONTENTS

Statement of Issue ................................................................................................... iii

Table of Authorities ................................................................................................ iv

Introduction ............................................................................................................... 1

I.     Background ................................................................................................... 2

II.    Argument ...................................................................................................... 5

        A.     Covenant's documents relating to negotiations with Blue Cross's rivals are likely to be highly relevant. ............................................ 6

        B.     Compliance with the subpoena will not be unduly burdensome. ................ 8

Conclusion ............................................................................................................. 10

– iii –

## STATEMENT OF ISSUE

Should Covenant HealthCare, a large hospital in Saginaw that has signed an agreement with Blue Cross requiring the hospital to charge other commercial health insurers at least 39% more than Blue Cross, be compelled to produce documents discussing the hospital's negotiations with those insurers even when the documents do not specifically refer to the hospital's MFN-plus agreement?

# TABLE OF AUTHORITIES

**Cases**

*SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403 (S.D.N.Y. 2009) ..................................3

*Nissan N.A., Inc. v. Johnson Elec. N.A.*, No. 09-cv-11783, 2011 WL 1002835*
(E.D. Mich. Feb. 17, 2011) (Majzoub, M.J.) ..................................................................4

*Great Lakes Transp. Holding, LLC v. Yellow Cab Serv. Corp. of Florida, Inc.*,
No. 11-50655, 2011 WL 2533653* (E.D. Mich. June 27, 2011) ........................................5

*Operating Eng'rs Local 324 Health Care Plan v. Mid Michigan*,
No. 10-CV-12987, 2011 WL 1464851* (E.D. Mich. Apr. 18, 2011) (Majzoub, M.J.)...5, 9

*EEOC v. Ford Motor Credit Co.*, 26 F.3d 44* (6th Cir. 1994) .........................................5

*Charters v. John Hancock Life Ins. Co.*, No. 09-50157, 2009 WL 818185,
(E.D. Mich. Mar. 27, 2009) ................................................................................................9

**Rules**

Fed. R. Civ. P. 45(c)(2), (3) ............................................................................................3, 5

**Other**

9A Wright & Miller, *Federal Practice & Procedure* § 2643, p. 507 ...................................5

* Denotes controlling or most appropriate authority for the relief sought.  LR 7.1(d)(2).

## Introduction

The United States respectfully requests that this Court compel Covenant HealthCare, a non-party hospital in Saginaw, Michigan, to comply with a document subpoena served on February 16, 2012.[1] In particular, the United States seeks documents discussing the hospital's contracting or negotiations with employers and commercial health insurers other than Blue Cross. Although Covenant has agreed to produce a narrow subset of these documents (those that expressly refer to Blue Cross's MFN-plus), Covenant refuses to produce what are likely the vast majority of its documents relating to its negotiations with other insurers—key documents discussing the insurers' reimbursement and discounts, and Covenant's refusal to contract with some of Blue Cross's closest rivals.

Covenant's documents relating to its negotiations with Blue Cross's rivals are highly relevant to this case. Covenant is a large and important hospital that has entered into an "MFN-plus" agreement with Blue Cross that requires the hospital to charge other insurers at least 39% more than it charges Blue Cross. Compl. ¶ 39(f). The Complaint alleges that this type of agreement has likely led hospitals in Michigan to raise prices to Blue Cross's rivals by substantial amounts, or to demand prices that are too high to allow Blue Cross's rivals to compete effectively. *See* Compl. ¶ 6. Thus, documents discussing Covenant's negotiations with Blue Cross's rivals are central to the competitive-effects analysis in the case, regardless of whether they specifically refer to Blue Cross's MFN-plus.

---

[1] On the same day that this motion is being filed, the United States is also filing a motion to compel the production of documents by nonparty MidMichigan Health. These motions are similar because Covenant and MidMichigan are represented by the same attorney and both hospitals made virtually identical objections.

Furthermore, the United States repeatedly made efforts to narrow its request to minimize any burden on Covenant, even though Covenant's attorney has made no effort to search for the responsive documents and has made no effort to substantiate the burden associated with the United States' request. Accordingly, the United States respectfully asks that this Court grant this motion to compel and order Covenant to promptly produce the documents requested in the subpoena.

**I.      Background**

On February 16, 2012, the United States served a document subpoena to Covenant. *See* Ex. 1. The subpoena schedule includes a request (Request #3) seeking all documents created since January 1, 2008, discussing Covenant's contracting or negotiations with any employer or commercial health insurance carrier other than Blue Cross.

On March 1, 2012, Covenant served its objections to the subpoena. Ex. 2. In the objections and subsequent correspondence, Covenant stated that, although it would produce its final payer contracts, it would not search for, let alone produce, any other documents in response to Request #3 unless they specifically refer to the MFN-plus clause in Covenant's agreement with Blue Cross—documents that Covenant had already agreed to produce in response to Request #1.

In effect, Covenant refuses to produce what are likely the vast majority of the hospital's documents relating to its negotiations with other insurers. These documents likely include key documents discussing the insurers' reimbursement and discounts and documents discussing the hospital's decision whether to contract with Blue Cross's

rivals. Covenant does not dispute that these documents are relevant; rather, it refuses to produce them simply because it says that doing so would entail significant expense.

After receiving Covenant's objections, in an attempt to avoid filing this motion, the United States took several steps to narrow the scope of Request #3 and reduce Covenant's burden. First, the United States agreed to limit Covenant's search to two custodians, even though other custodians (including the hospital's CEO) are likely to have relevant documents. Next, at Covenant's invitation, the United States sent Covenant a list of proposed search terms to help narrow the search. *See* Ex. 3. Rather than working with the United States to refine this list, however, Covenant instead claimed that it is unable to run even the most basic electronic searches and would therefore not produce any additional documents in response to Request #3. *Cf. SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 418 (S.D.N.Y. 2009) ("Without even an attempt to negotiate search terms" a party "cannot reasonably assert" that searching for email is unduly burdensome).

After Covenant refused to run electronic searches, the United States suggested at least seven different ways that Covenant could isolate relevant documents without using search terms, including manually identifying specific folders in the custodian's files that are most likely to relate to insurer negotiations; identifying time periods when the hospital was engaged in negotiations with specific insurers and focusing on documents from those dates; and sorting emails by the "to" and "from" fields to isolate emails for specific insurers. *See* Ex. 4. Attorneys for the United States also offered to travel to Covenant's offices and search Covenant's files themselves, as "inspection" under Fed. R. Civ. P. 45 contemplates. Rather than discuss any of these proposals or develop a

reasonable counterproposal, Covenant's attorney merely replied that none of the proposals were acceptable and urged the government to "communicate further," *see* Ex. 5, an approach that is inconsistent with modern discovery. *See Nissan N.A., Inc. v. Johnson Elec. N.A.*, No. 09-cv-11783, 2011 WL 1002835, at *4 (E.D. Mich. Feb. 17, 2011) (Majzoub, M.J.) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI.") (internal quotation marks and citation omitted).

Because of the delay caused by Covenant's unwillingness to cooperate, the United States then offered to limit the scope of the request to just five commercial health insurers in Covenant's service area. The United States further offered that, in addition to producing documents that refer to the hospital's MFN-plus with Blue Cross, Covenant could limit Request #3 to just two subjects: "(1) any instance in which the hospital declined to contract with the insurer; and (2) documents discussing pricing, discounts, and reimbursement (including reimbursement methodology)." Ex. 6. Less than 30 minutes after the United States sent this offer, Covenant's attorney abruptly rejected the proposal without any counteroffer and without making any effort to explain why the government's proposal was unreasonable, stating: "This is not a serious effort to reduce burden. Please try again." Ex. 7.

On March 28, 2012, Covenant's attorney sent an email confirming that it would not even search for the documents at issue. Ex. 8. On March 29, 2012, the United States

notified Covenant's attorney that it would file this motion. Six weeks after the subpoena was served, Covenant still has not produced any documents responsive to the subpoena.[2]

## II.     Argument

When a non-party objects to a subpoena, the serving party may "move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(i). A non-party resisting discovery has a "heavy burden" of demonstrating that the discovery sought should not be permitted. *See, e.g.*, *Great Lakes Transp. Holding, LLC v. Yellow Cab Serv. Corp. of Florida, Inc.*, No. 11-50655, 2011 WL 2533653 at *1 (E.D. Mich. June 27, 2011) (citing 9A Wright & Miller, *Federal Practice & Procedure* § 2643, p. 507); *Operating Eng'rs Local 324 Health Care Plan v. Mid Michigan*, No. 10-CV-12987, 2011 WL 1464851, at *2 (E.D. Mich. Apr. 18, 2011) (Majzoub, M.J.).

Where, as here, the subpoenaed non-party contends that the discovery sought constitutes an undue burden under Fed. R. Civ. P. 45(c)(3), "that person cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." *Operating Eng'rs*, 2011 WL 1464851, at *2. If the party resisting compliance makes such a showing, then the Court must weigh "the likely relevance of the requested material . . . against the burden . . . of producing the material." *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994).

---

[2] During the pre-Complaint investigation, the United States served Covenant with a Civil Investigative Demand ("CID") for documents. Covenant produced documents in response to that CID in June 2010, but the United States agreed to defer Covenant's production of documents relating solely to insurers other than Blue Cross—the documents now at issue in this motion.

### A. Covenant's documents relating to negotiations with Blue Cross's rivals are likely to be highly relevant.

Covenant is the largest hospital in the Saginaw Metropolitan Statistical Area ("MSA"). It has 623 acute-care beds and provides "a complete range" of medical services, including high-risk obstetrics, neonatal and pediatric intensive care, and cardiac care.[3] Due to Covenant's size and wide scope of services, it is a critical network component for any commercial health insurer that is seeking to market health insurance to people who live and work in the Saginaw MSA.

Yet, like the other hospital in Saginaw (St. Mary's of Michigan), Covenant has an MFN-plus clause in its agreement with Blue Cross that requires it to charge other commercial insurers *more* than it charges Blue Cross. In fact, Covenant's MFN-plus clause is one of the most aggressive in Michigan: Covenant must charge other health insurers *at least 39% more* than it charges Blue Cross. Compl. ¶ 39(d). ███████

███████████████████████████████████████

███████ Ex. 9. ███████████████████████████████

███████████████████████████████████████

███████████████████████████████ Ex. 10.

The Complaint alleges that Blue Cross's MFN agreements in Michigan, including the MFN-plus agreement with Covenant, have likely harmed competition in the sale of group and individual health insurance, leading hospitals to raise prices to Blue Cross's rivals by substantial amounts or to demand prices that are too high to allow Blue Cross's rivals to effectively compete. Compl. ¶ 6. Thus, documents discussing hospitals' negotiations with Blue Cross's rivals, including Covenant's negotiations, are central to

---

[3] "About Covenant," Covenant HealthCare, http://www.covenanthealthcare.com/body.cfm?id=555555 (last visited on March 28, 2012).

the competitive-effects analysis in the case, regardless of whether they specifically refer to Blue Cross's MFN-plus clause. Indeed, such documents will likely provide important context for documents that *do* refer specifically to Blue Cross's MFN-plus clause.

In particular, the United States seeks two categories of documents from Covenant that may show the likely effect of Blue Cross's MFN-plus on its rivals. First, the United States seeks documents discussing pricing, discounts, and reimbursement (including reimbursement methodology) for Blue Cross's rivals. These documents are likely relevant to whether (and the extent to which) the MFN-plus clause has affected the hospital's negotiations with other insurers because they will likely show how the insurers' reimbursement rates have changed over time, by how much, and the reasons for any changes.

The following example highlights the need for Covenant to produce a complete set of the documents from its contract negotiations with Blue Cross's rivals. █████
█████████████████████████████
████████████████████████████████
███████████████████████████
██████████████████████████████
██████████████████ Ex. 11. ███████████
████████████████████████████████
██████████████████████████████
██████████████████ *Id.* ██████████████
████████████████████████████—the very type of documents

sought by this motion—will likely be probative of the effects of Blue Cross's MFN-plus agreement on its rivals even if they do not expressly refer to the MFN-plus.

The United States also seeks documents relating to any instance since 2008 in which Covenant has declined to contract with a commercial health insurer. These documents may show whether (and the extent to which) the MFN-plus clause has affected the hospital's decision to contract and the difficulty for Blue Cross's rivals to enter the market. But as with the pricing documents, documents relating to Covenant's decision not to contract with an insurer might not refer specifically to Blue Cross's MFN-plus clause. Indeed, as a defendant in a follow-on private lawsuit challenging the MFN-plus clause, *see City of Pontiac, et al., v. Blue Cross Blue Shield of Mich., et al.*, Case No. 2:11-cv-10276-DPH-MKM (E.D. Mich.), Covenant would have had every incentive *not* to expressly refer to Blue Cross's MFN-plus clause when negotiating with other insurers.

Finally, because discovery is ongoing, the MFN-plus clause may have additional effects on Covenant's negotiations with Blue Cross's rivals that plaintiffs are not aware of. The negotiation documents will help identify if those effects exist.

### B. Compliance with the subpoena will not be unduly burdensome.

Covenant's primary argument is that searching for and producing the responsive documents at issue would entail significant expense, suggesting that the United States' request is unduly burdensome. Covenant cannot satisfy its "heavy" burden for three reasons.

First, Covenant has merely asserted in a conclusory fashion that compliance would be burdensome without "showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." *Operating*

– 8 –

*Eng'rs*, 2011 WL 1464851, at *2. At one point during the subpoena negotiations, Covenant's attorney speculated that the subpoena would call for "tens of thousands of documents." But Covenant has not made any efforts to search for the documents that are responsive to Request #3; it has not quantified how many documents are likely to be responsive; and it has not estimated how long it would take to review the responsive documents. Moreover, each time that the United States has narrowed its request, Covenant's attorney has responded with little more than requests for the government to "try again." *See* Ex. 5 ("[T]hink about proposals that actually would limit the hospitals' burden, and and [sic] then communicate further."); Ex. 7 ("This is not a serious effort to reduce burden. Please try again.").

Second, responding to the United States' narrow request likely will not unduly burden Covenant, particularly in light of the documents' clear relevance. Covenant is the largest hospital in Saginaw. Where Covenant has simply refused to contract, the responsive documents are unlikely to be voluminous. And for insurers that Covenant *has* contracted with, based on the United States' experience dealing with discovery of other hospitals, Covenant likely keeps separate files for each insurer. These files are typically easy to locate and manageable in size, and Covenant has not said otherwise.

Finally, Covenant's non-party status does little to support its undue-burden argument. Covenant is a *party* to the very contracts the United States and the State of Michigan are challenging in this lawsuit. Where a non-party plays an "active role" in the conduct at issue in litigation, non-party status does not by itself justify refusal to comply with a subpoena. *Charters v. John Hancock Life Ins. Co.*, No. 09-50157, 2009 WL 818185, at *3 (E.D. Mich. Mar. 27, 2009).

**Conclusion**

For the reasons stated above, the United States respectfully asks the Court to overrule Covenant's objections and compel Covenant to promptly produce all documents discussing the hospital's contracting or negotiations with employers or commercial health insurance carriers other than Blue Cross, as narrowed by the United States under Request #3 of the subpoena.

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

| | |
|---|---|
| Peter Caplan (P-30643) | Scott I. Fitzgerald |
| Assistant United States Attorney | David Z. Gringer |
| U.S. Attorney's Office | Trial Attorneys |
| Eastern District of Michigan | Litigation I Section |
| 211 W. Fort Street | |
| Suite 2001 | By: |
| Detroit, MI 48226 | /s/ David Z. Gringer |
| (313) 226-9784 | Trial Attorney |
| peter.caplan@usdoj.gov | Litigation I Section |
| | Antitrust Division |
| | U.S. Department of Justice |
| | 450 Fifth Street, N.W., Suite 4100 |
| | Washington, D.C. 20530 |
| | (202) 532-4537 |
| | david.gringer@usdoj.gov |

March 30, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of the filing to the counsel of record for all parties for civil action 2:10-cv-14155-DPH-MKM, and I hereby certify that a copy of the foregoing paper was served upon:

**Counsel for Covenant HealthCare:**

> David A. Ettinger
> Honigman Miller Schwartz and Cohn LLP
> 2290 First National Building
> 660 Woodward Avenue
> Detroit, MI 48226
> (313) 465-7368
> dettinger@honigman.com

   /s/ David Z. Gringer
Trial Attorney
Litigation I Section
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., Suite 4100
Washington, D.C. 20530
 (202) 532-4537
david.gringer@usdoj.gov