**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**United States of America**
**and the State of Michigan,**

    **Plaintiffs,**    **Civil Action No. 10-14155**

   **vs.**      **District Judge Denise Page Hood**

**Blue Cross Blue Shield**   **Magistrate Judge Mona K. Majzoub**
**of Michigan,**

    **Defendant.**
_____/

**ORDER DENYING BCBS'S MOTION TO COMPEL RESPONSES TO**
**INTERROGATORIES [80] AND GRANTING PLAINTIFFS' MOTION TO COMPEL**
**ANSWERS TO PLAINTIFFS' FIRST INTERROGATORY [100]**

  Plaintiffs United States of America and Michigan have filed this antitrust suit against Defendant Blue Cross Blue Shield of Michigan. (Dkt. 66, August 12, 2011 Order at 1.) Plaintiffs allege that BCBS used "most favored nation" clauses in its agreements with various hospitals that violate the Sherman Act, 15 U.S.C. § 1, and the Michigan Antitrust Reform Act, Michigan Compiled Law § 445.772, by unreasonably restraining trade and commerce. (*Id.*) BCBS has MFNs or similar clauses with at least 70 of Michigan's 131 general acute care hospitals. (*Id.* at 2.)

  Before the Court are two of the parties' motions to compel. (Dkt. 80, 100.) The Court has been referred these motions for determination pursuant to 28 U.S.C. § 636(b)(1)(A). (Dkt. 86, 106.) The Court has reviewed the pleadings, dispenses with a hearings, and issues this order.[1]

**I.**  **BCBS's motion to compel responses to interrogatories (dkt. 80)**

_____

  [1]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

## A.    The contested interrogatories

The following interrogatories are at issue in this first motion:

Interrogatory #1

> For each individual or entity interviewed by the DOJ pursuant to its [] investigation of Blue Cross related to this matter, identify in detail all facts known to these individuals and entities that are relevant to Plaintiffs' claims against Blue Cross.

Interrogatory #2

> For each individual or entity that provided information in any investigation of Blue Cross' proposed acquisition of Physicians Health Plan of Michigan, identify in detail all facts known to these individuals and entities that are relevant to Plaintiffs' claims against Blue Cross.

(Dkt. 80, BCBS's Mot. to Compel Interrog., Ex. 1.)

The parties have submitted a joint statement of resolved and unresolved issues.  (Dkt. 97.) In the Joint Statement, Plaintiffs abandon their arguments that the law enforcement investigatory privilege is a proper objection to BCBS's contested interrogatories.  (*Id.*)  Plaintiff also state that they no longer object to the contested interrogatories on the basis that the interrogatories are vague and ambiguous.  (*Id.*)

## B.    The parties' positions

BCBS argues that facts that the United States gathered in an investigation before it filed suit against Blue Cross are not protected by the work product doctrine and therefore discoverable.  (Dkt. 97, Joint Statement at 1.)  BCBS maintains that the contested interrogatories seek facts, not mental impressions or strategy; BCBS therefore argues that it does not need to show a substantial need for the requested information.  (*Id*. at 3.)

The United States casts the issue differently and argues that the work product doctrine protects the information in and related to the investigation.  (Dkt. 97, Joint Statement at 2.)  The

2

United States argues that the identities of the individuals as well as the underlying facts are protected by the work product doctrine because "[the information's] disclosure would reveal the thought processes and strategic assessments of Plaintiffs' counsel in deciding whom to interview." (*Id*. at 2-3.) The United States also argues that "facts obtained in oral interviews are work product reflecting the mental impressions of counsel, and . . . are discoverable only under extraordinary circumstances, if at all." (*Id*. at 3.) The United States adds that BCBS can show neither extraordinary circumstances nor a substantial need for the information it seeks. (*Id*.)

### C.    Work product doctrine

The work product doctrine's purpose is to allow an attorney to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to promote justice and to protect [his] clients' interests." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511) (insertion in *Roxworthy*). The work product doctrine protects "documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative" from discovery. *Id*. (citing Fed.R.Civ.P. 26(b)(3)).

But not "all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (quoting *Hickman*, 329 U.S. at 510-11)).

There are two types of work product–fact and opinion–only fact work product is at issue

here.[2]  *Id*.  Fact work product is "written or oral information transmitted to the attorney and recorded

as conveyed by the client."  *Id*.  Courts presume that fact work product is discoverable, "upon a

showing of substantial need and inability to otherwise obtain without material hardship."  *In re*

*Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, (6th Cir. 2002) (*reh'g*

*and reh'g en banc den*.) (citation omitted).  Once the party asserting fact work product has

established that the documents were prepared in anticipation of litigation, then the burden shifts to

the requesting party to show "substantial need and undue hardship."  *Gruenbaum v. Werner Enter.,*

*Inc.*, 270 F.R.D. 298, 303 (S.D.Ohio 2010) (citation omitted).  "In considering [the substantial need

issue,] 'attention is directed at alternative means of acquiring the information that are less intrusive

to the lawyer's work and [at] whether or not the information might have been furnished in other

ways.'"  *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 19 F.3d 1432,

(6th Cir. 1994) (Table) (quoting *Toledo Edison v. GA Technologies, Inc.*, 847 F.2d 335, 340 (6th Cir.

1988) (implied overruling on other grounds recognized by *Regional Airport Auth. of Louisville v.*

*LFG, LLC.*, 460 F.3d 697, 713-14 (6th Cir. 2006)).

### D.    Analysis

The work product doctrine protects the information that BCBS seeks.  Plaintiffs' pre-

complaint investigation and facts learned are fact work product that the Court will protect.  While

the Court recognizes, as stated above, that fact work product is discoverable "upon a showing of

substantial need and inability to other obtain [the information] without material hardship," the Court

---

[2]Opinion work product is "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories.  *In re Antitrust Grand Jury*, 805 F.2d  at 163-64 (citations omitted).  Although parties can waive opinion work product protection, courts afford this type of work product almost "absolute immunity."  *Id*. at 164.  The Court finds that the opinion work product is not at issue, here.

finds that BCBS has not met its burden to show that it has a substantial need *and* the inability to otherwise obtain the information.[3] This case is not a story of David versus Goliath. Here, Plaintiffs and BCBS are both Goliath–they have equal means to obtain the information BCBS's interrogatories seek.

BCBS argues that it does not need to demonstrate a "substantial need" for the information the interrogatories seeks. (Dkt. 95, BCBS's Reply at 95.) The Court disagrees. The United States conducted the pre-complaint investigation in anticipation of litigation. And the United States' attorneys conducted this investigation. The investigation's results are therefore work product.

But BCBS does alternatively argue that there is a substantial need for the information the interrogatories seek–for "it is one thing for Blue Cross to request an interview with a hospital regarding negotiations in which it was on the other side of the table; it is quite another thing for the federal government to do so." (*Id.*) BCBS adds that, "[i]t is apparent that when the United States Department of Justice contacts a person or entity to request an interview . . . it elicits a certain level of cooperation that Blue Cross cannot expect." (*Id.*) BCBS further adds that "it is no solution to suggest that Blue Cross may simply interview the persons listed in Plaintiffs' Initial Disclosures to learn the same information." (*Id.*) BCBS continues, "even if [BCBS] could [interview those people,] those individuals' recollection may not be the same now as it was when DOJ interviewed them, some nearly two years ago." (*Id.*) BCBS maintains that a suggestion that it could easily

---

[3]BCBS has submitted several out-of-district cases in support of its position that the work product doctrine cannot shield the facts at issue from discovery requests. (BCBS's Mot. to Compel, Exs. 3-5.) While those cases do stand for BCBS's position, the Court is not persuaded by them. Those cases do not address the Sixth Circuit's standard, specifically the burden that BCBS must prove that it has a substantial need for the information and that it cannot get the information without an undue hardship to it.

depose the 288 people listed in the initial disclosures is not "legitimate" because the DOJ has "taken the position that Blue Cross should be able to take only 170 depositions, at most." (*Id.*)

The Court is not persuaded by BCBS's position. While the Court understands that BCBS will suffer a burden, all discovery must burden one party or the other. And the Court finds that, in a case of this scale, BCBS has not proven to the Court that the burden placed on it would be undue. BCBS acknowledges it can get the information it requests in its interrogatories from conducting its own discovery; the Court finds that BCBS's request, therefore, is an attempt to piggy-back on the work done by the United States. *Ross v. Abercrombie & Fitch Co.*, [] 2008 WL 821059, at *2 (S.D.Ohio Mar. 24, 2008) ("Certainly, a part of the rationale for the doctrine is to prevent opposing counsel simply from piggy-backing on the work done by other[.]").

The Court finds *Ross v. Abercrombie & Fitch Co.*, [] 2008 WL 821059, at *3-4 (S.D.Ohio Mar. 24, 2008) helpful. There, the court addressed an argument by the defendant that BCBS puts forth here.

> Abercrombie's justification for overcoming the work product privilege here is tied to its belief that without such information, it will be required to depose or interview in excess of eighty witnesses to find out what support may exist for certain allegations in the complaint. The Court does not view that as a substantial hardship in a case of this magnitude, especially when discovery is in its infancy and it is impossible even to predict when the first wave of document production will be substantially complete. Further, the allegations of the complaint about which Abercrombie has inquired are pleaded with a high degree of specificity. Presumably, many of the former Abercrombie employees whose names appear on the initial disclosures can be ruled out as sources of this information either because of dates of employment, where they were located at the time of the alleged actions, or the positions they held.
>
> The mere fact that counsel may have to do some investigative work to determine which witnesses have knowledge of which relevant facts is clearly insufficient to justify an intrusion into the particulars of how opposing counsel structured their interviews and how much credence they gave to the statements of individual witnesses.

Here, as in *Abercrombie*, the mere fact that BCBS will have to do some work to get the same

information as Plaintiffs does not mean that BCBS is entitled to Plaintiffs' fact work product.

### E.    Conclusion

The Court therefore denies BCBS's motion compel responses to interrogatories.

## II.    Plaintiffs' motion to compel BCBS to answer Plaintiff's first interrogatory (dkt. 100)

Plaintiffs have filed their own motion to compel, which addresses Plaintiffs' first

interrogatory.

### A.    Plaintiffs' first interrogatory

The first interrogatory:

Describe in detail "the extensive factual and economic support for [BCBS's] MFNs' procompetitive effects" (Defendant Blue Cross Blue Shield of Michigan's Reply Brief in Support of its Motion to Dismiss the City of Pontiac's Complaint at 4 n.5, *City of Pontiac v. Blue Cross Blue Shield of Michigan, et al.*, No. 2:11-cv-10276 (E.D. Mich. filed Aug. 22, 2011) (Dkt. #153)), including, without limitation, separate for each subpart, identification of:

> (a)    each and every hospital provider agreement in which a Blue Cross MFN provision has contributed, to any extent, to Blue Cross paying lower hospital reimbursement rates to (or obtaining greater discounts from) any Michigan hospital than it would have paid or obtained without the MFN provisions; and

> (b)    each and every hospital provider agreement in which a Blue Cross MFN provision has contributed, to any extent, to Blue Cross paying lower hospital reimbursement rates to any Michigan hospital, relative to the rates Blue Cross had been paying to the hospital before the hospital lowered its rates.

(Dkt. 100, Pls.' Mot. to Compel, Ex. 2, Pls.' First Interrog. to Def.)

BCBS objected to Plaintiffs' interrogatory.  (Dkt. 100, Pls.' Mot. to Compel, Ex. 3, Def.'s

Objection to Pls.' First Interrog.)

7

BCBS asserted various objections: overly broad and burdensome; premature contention interrogatory; work-product doctrine; seeks information relating to the anticipated testimony of BCBS's expert witnesses; and vague and ambiguous. (Dkt. 100, Pls.' Mot. to Compel, Ex. 3, Def.'s Objection to Pls.' First Interrog.)

**B.      Analysis**

The Court finds that BCBS's objections are not warranted. The Court therefore grants Plaintiffs' motion to compel and orders BCBS to respond to the interrogatory within 45 days. The Court addresses the objections.[4]

### 1.      The interrogatory is a contention interrogatory, but it is not impermissible

BCBS argues that Plaintiffs' first interrogatory is a contention interrogatory that it does not have to answer at the present.

> Rule 33 [] provides that "an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed.R.Civ.P. 33(a)(2). Such interrogatories, known as "contention interrogatories," service legitimate and useful purposes, such as ferreting out unsupportable claims, narrowing the focus and extent of discovery, and clarifying the issues for trial. *Starcher v. Correctional Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998). A court may postpone a response to contention interrogatories until discovery is closer to completion. "[B]ut the court may order that the interrogatory need not be answered until designated discovery is complete . . ." Fed.R.Civ.P. 33(a)(2). The rule protects the responding party from being hemmed into fixing its position without adequate information. *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 233 (E.D.N.Y. 2007).

*In re Dow Corning Corp.*, 95-2012, 2010 WL 3927728, at *12 (E.D.Mich. June 15, 2010)

---

[4]The parties have submitted a joint statement of resolved and unresolved issues. (Dkt. 109.) The parties state that they have not resolved any of the issues in Plaintiffs' motion to compel (*Id.*) The parties lay out four unresolved issues–BCBS's objections to Plaintiff's first interrogatory: vagueness; premature contention interrogatory; work product; and premature disclosure of expert opinion. (*Id.*)

(Hood, J.). "Contention interrogatories may take several forms. They may ask a party to state what it contends, or whether it makes a specified contention; to state all the facts upon which it bases a contention; to state the legal or theoretical basis for a contention; and to explain or defend how the law invoked applies to facts." *Schweinfurth v. Motorola, Inc.*, 05-0024, 2007 WL 6025288, at *4 (N.D.Ohio Dec. 3, 2007).

"The party serving contention interrogatories has the burden of proving how an earlier response serves the goals of discovery." *Schweinfurth*, 2007 WL 6025288, at *5. "[T]he party 'must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussion, or that such answers are likely to expose a substantial basis for a motion under . . . Rule 56.'" *Id*. (citation omitted). *Cleveland Constr., Inc. v. Gilbane Bldg. Co.*, 05-471, 2006 WL 2167238, at *7 (E.D.Ky. July 31, 2006) (citation omitted) ("Defendants are expected to have, even at an early stage, some good faith basis in fact and law for such claim and defense . . . . Accordingly, Plaintiff's Interrogatories which primarily seek the basis for the defense and related counterclaim, even if they are assumed to be contention interrogatories, should be answered at this time.").

Plaintiffs argue that their first interrogatory seeks neither an opinion nor a contention. (Pls.' Mot. at 6.) Plaintiffs maintain that their interrogatory seeks a "detailed description" of "the extensive factual and economic support for the MFN's procompetitive effects" that [BCBS] told this Court exists." (*Id*. at 5-6.)

Plaintiffs argue that, "because Blue Cross started broadly employing MFN clauses

in hospital contracts in 2007, by now it should be well aware of any instances where the clauses resulted in Blue Cross paying lower hospital rates than it paid before implementing an MFN clause.' (Pls.' Mot. at 8.)

BCBS states that the interrogatory would require it "first to identify the procompetitive effects that it may assert in this litigation and then explain how the facts support those theories." (BCBS's Resp. at 1.) BCBS adds that "Plaintiffs are asking Blue Cross to provide its legal expert economic theories of this case at a point when discover[y] has barely even begun." (*Id.*)

Here, Plaintiffs' interrogatory asks for the basis of one of BCBS's defenses–that BCBS's MFN clauses caused procompetitive effects. The interrogatory, on its face, is not impermissible. The interrogatory is requesting BCBS to provide the factual basis for its assertion that its MFN clauses caused procompetitive effects. BCBS has stated that it has some of this information at its disposal–information related to whether prices increased or decreased after the MFN clauses were put into effect; BCBS should therefore have to provide this information to Plaintiffs. If BCBS finds that it cannot answer certain parts of the interrogatory, such as if certain information is in a third-party's possession, it must state so, but that is not a reason to not answer the parts of the interrogatory that it can answer. This interrogatory is not one that is best served at the end of discovery. The Court therefore finds that, although Plaintiffs' interrogatory is a contention interrogatory that seeks the factual basis for a defense, the interrogatory is permissible. The Court will order its answer.

### 2.     BCBS has not met its burden to show that the interrogatory requests work product

The Court wholly agrees with Plaintiffs regarding BCBS's work product objection.

10

BCBS has not carried its burden to show that the information Plaintiffs seek was created by attorneys or representations in anticipation of litigation.

### 3.    The interrogatory does not call for expert opinion

Plaintiffs argue that BCBS's objection that the interrogatory seeks expert opinion is incorrect. (Pls.' Mot. at 10.) Plaintiffs state that they are seeking factual support for BCBS's claim, not anything that requires for an opinion. (*Id*.)

BCBS argues that "[m]uch of this information may come from [BCBS's] economic experts, whose reports containing their economic analyses are not due until 30 days after the close of fact discovery." (BCBS's Resp. at 14-15.)  BCBS adds that "[e]conomics is a subject for expert testimony[.]" (*Id*. at 15.)

> Rule 26(b)(4)(D): "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

The Rule give two exceptions: one dealing with physical and mental examinations, the other exception  requires "showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed.R.Civ.P. 26(b)(4)(D)(i), (ii).  Neither of those exceptions applies here.

The Court finds that the interrogatory does not call for expert opinion or facts known only to experts.  BCBS states that it "may have basic facts at its disposal now, such as whether the cost of hospital services went up or down following entry of a hospital contract that contains an MFN clause." (BCBS's Resp. at 1.)

This information is responsive to the interrogatory.  The Court orders BCBS to

produce it.  BCBS adds, "[b]ut other facts–such as whether an MFN clause caused the hospitals to agree to a different price with Blue Cross than they would have agreed to without the MFN–is information that resides with third-party hospitals." (*Id.*) If BCBS does not have the information, such as this third-party information, then BCBS must state so.

Either way, BCBS has not persuaded the Court that the information the interrogatory seeks is solely in the hands of experts, retained for this litigation, or that the information cannot be obtained without the experts' aid.  The Court overrules this objection.

### 4.   The interrogatory is not vague

BCBS also objected to the interrogatory, arguing that it was vague.  (Pls.' Mot., Ex. 3, BCBS's Objections at 5.)  BCBS argues that "MFNs" and "MFN provisions" are vague and ambiguous.  (*Id.*)  BCBS adds that "MFN-pluses" is misleading, inaccurate, and argumentative.  (*Id.*)  BCBS further adds that it "understands the term 'MFN' to refer to the most-favored-nation provisions included in some contracts between Blue Cross and certain Michigan hospitals, which provision are the subject of this litigation, but to date Plaintiffs have not specifically identified each contract provision they believe to be at issue." (*Id.*)

BCBS also argues that the interrogatory is vague and ambiguous "because the phrase 'Blue Cross paying lower hospital reimbursement rates . . . relative to the rates Blue Cross had been paying to the hospital before the hospital lowered its rates' is tautological and incomprehensible." (*Id.*)

Plaintiffs counter that the interrogatory is straightforward.  (Pls.' Mot. at 10.) Plaintiffs add that "the listed subparts are merely specific examples of what Plaintiffs seek: any factual information of which Blue Cross has become aware since . . . August 2010."

12

(*Id.*)

The Court does not find BCBS's objection genuine. The parties know exactly what clauses, and those clauses' effects, are at issue in this case. The interrogatory is not vague.

**5.      Overly broad and unduly burdensome**

To the extent that BCBS argues that the interrogatory is overly broad and unduly burdensome, for BCBS has not asserted that objection in the Joint Statement, the Court disagrees. This case is a large one, and providing factual and economic support for 70 alleged contracts with MFN clauses does not seem unreasonable to the Court.

**C.      Conclusion**

Plaintiffs state, "[i]f Blue Cross has facts, it should state them . . . [i]f it has no facts, or does not know it, it should so state." (Pls.' Reply at 5.) Plaintiffs are exactly right. For the above-state reasons, the Court grants Plaintiffs' motion to compel BCBS to answer Plaintiff's first interrogatory. The Court overrules BCBS's objections. The Court therefore orders BCBS to respond to Plaintiffs' first interrogatory within 45 days of this order.

**<u>NOTICE TO THE PARTIES</u>**

Pursuant to Federal Rule of  Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).


Dated: May 30, 2012                    s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Order was served upon Counsel of Record on this

date.

Dated: May 30, 2012                    <u>s/ Lisa C. Bartlett            </u>

                                       Case Manager

14