**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**United States of America and the**
**State of Michigan,**

       **Plaintiffs,**        **Civil Action No.: 10-CV-14155**

    **vs.**        **District Judge Denise Page Hood**

                           **Magistrate Judge Mona K. Majzoub**

**Blue Cross Blue Shield of Michigan,**
**a Michigan nonprofit healthcare**
**corporation,**

       **Defendant.**
_____/

**<u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION TO COMPEL DOCUMENTS RESPONSIVE TO DOCUMENT REQUEST 51
[182] AND GRANTING IN PART AND RESERVING IN PART PLAINTIFF'S
MOTIONS TO COMPEL MIDMICHIGAN HEALTH [143] AND COVENANT
HEALTHCARE [145/146] TO PRODUCE DOCUMENTS RESPONSIVE TO SUBPOENA</u>**

      This matter comes before the Court on Plaintiff United States of America's Motion to Compel non-parties MidMichigan Health ("MidMichigan") (Docket no. 143) and Covenant HealthCare ("Covenant") (together "the Hospitals") (Docket nos. 145 and 146) to Produce Documents Responsive to Subpoena, and Plaintiffs United States of America and the State of Michigan's Motion to Compel Defendant's Production of Documents Responsive to Plaintiffs' Document Request 51 (Docket no. 182). MidMichigan (Docket no. 163), Covenant (Docket no. 162) and Defendant (Docket no. 183) filed Responses to Plaintiffs' respective motions. Plaintiffs filed Replies to each response. (Docket no. 164 (MidMichigan); Docket nos. 166 and 167 (Covenant); Docket no. 184 (Defendant).) The parties to each motion filed joint statements indicating that they had not resolved any of the issues presented. (Docket no. 170 (MidMichigan); Docket no. 171 (Covenant); Docket no. 192 (Defendant).) These motions were referred to the

undersigned for decision. (Docket nos. 18, 28, 34.) The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). The Motions are now ready for ruling.

**I.      Background**

Plaintiffs bring this civil antitrust complaint against Defendant Blue Cross Blue Shield of Michigan alleging that Defendant has reduced competition in the sale of health insurance throughout Michigan by including "most favored nation" clauses ("MFNs") in its contracts with various hospitals. (Docket no. 1 at 1.) Plaintiffs allege that these clauses reduce competition by "(1) reducing the ability of other health insurers to compete with Blue Cross, or actually excluding Blue Cross' competitors in certain markets, and (2) raising prices paid by Blue Cross' competitors and by self-insured employers." (*Id.*)

As part of its initial investigation in early 2010, Plaintiff served Civil Investigation Demands ("CIDs") on several third parties, including hospitals that had contracted with Defendant. (*See* Docket no. 162 at 1-2; Docket no. 163 at 1-2.) Many of these nonparty hospitals responded to the CIDs in full, but MidMichigan and Covenant responded only with respect to documents related specifically to Defendant; Plaintiff agreed to defer production of documents related to other insurers. (*See* Docket no. 143 at 5 n.2.)

In February 2012, Plaintiff served upon MidMichigan and Covenant the subpoenas at issue in the instant Motions to Compel. (Docket no. 143 at 2; Docket no. 145 at 1.) Plaintiff "seeks documents discussing the hospital[s'] contracting or negotiations with employers and commercial heath insurers other than Blue Cross."[1] (*Id.*) The Hospitals have refused to produce these

---

[1]During negotiations, Plaintiff had agreed to limit its request to the following:

(a) with respect to MidMichigan, a search of three custodians' files for documents related to insurers Aetna (and its subsidiaries, Cofinity and PPOM), Health Plus, United, and Priority, and employers Dow Chemical and Dow Corning (Docket no. 143 at 3; Docket

documents; they assert that the request is unduly burdensome, particularly in light of their nonparty status and the speculative relevance of Plaintiff's request. (Docket no. 162 at 6-7; Docket no. 163 at 7-8.) The Hospitals ask that the Court deny Plaintiff's Motions, but in the alternative, they ask that the Court shift the cost of production so that Plaintiff bears the burden.

Additionally, on May 1, 2012, Plaintiff served Defendant with Plaintiff's Sixth Request for Production of Documents. (Docket no. 182 at 2.) Defendant has refused to produce any responsive documents to Request No. 51 and contends that "The Breadth and Burden of Request 51 Far Outweighs any Purported Relevance" and that Plaintiffs are merely on a fishing expedition. (Docket no. 183 at 2, 4-7.)

## II.    Discovery Standard

Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

---

no. 164 at 3 n.2); and

(b) with respect to Covenant, a search of two custodians' files for documents related to insurers Aetna (and its subsidiaries, Cofinity and PPOM), UnitedHealthcare, Health Plus, Priority, and McLaren (Docket no. 167 at 3 n.2).

The Hospitals each requested that Plaintiff limit its requests to two insurers or employers. (Docket no. 162 at 3; Docket no. 163 at 4.)

### III.  Analysis

### A.  Plaintiffs' Motion to Compel Production of Documents from Defendant [182]

In Document Request No. 51 Plaintiffs requested

[a]ll documents constituting communications, including any emails, since July 1, 2009, between BCBSM, including BCBSM's inside counsel or outside counsel, and persons other than employees or agents of BCBSM, relating to:

a. The investigation(s) commenced in 2010 by the United States and/or State of Michigan into BCBSM's use of MFN provisions;

b. The investigation(s) commenced in 2009 by the United States and/or State of Michigan into BCBSM's proposed acquisition of Physicians Health Plan of Mid-Michigan;

c. The lawsuit United States and State of Michigan v. Blue Cross Blue Shield of Michigan, 2:10-cv-14155-DPH-MKM;

d. Any of the private lawsuits filed against Blue Cross Blue Shield of Michigan by the Shane Group et al., 2:10-cv-14360-DPH-MKM; Michigan Regional Council of Carpenters Employee Benefits Fund et al. 2:10-cv-14887-DPH-MKM; or Scott Steele et al., 2:11-cv-10375-DPH-VNM;

e. Any of the private lawsuits filed against Blue Cross Blue Shield of Michigan et al. by the City of Pontiac et al., 2:11-cv-10276-DPH-MKM, or by Frankenmuth Mutual Insurance Company et al., 2:10-cv-14633-LPZ-MAR; or

f. The lawsuit Aetna, Inc., v. Blue Cross Blue Shield of Michigan, 2:11-cv-15346-DPM-MKM.

(Docket no. 182 at 2.)  As Defendant sees it:

Plaintiffs demand a search spanning the entire company, with no agreed custodial limitations, and combing through inside and outside counsel's litigation files—far broader than any search countenanced under modern discovery principles. This hunt for a hypothetical needle in by far the largest haystack to date would impose staggering burdens that far outweigh Plaintiffs' implausible and entirely speculative assertions of relevance.

(Docket no. 183 at 1.)

Plaintiffs argue that the documents in question "will illuminate Blue Cross's defenses to

issues such as market definition, market power, and the competitive effects of its MFN clauses." (Docket no. 182 at 5.) Plaintiffs note that these documents "are likely to contain substantial amounts of information concerning the state of the commercial health insurance competition in [various geographic areas]" and that they "will also contribute to a 'complete understanding' of a relevant market." (*Id.* at 5-6 n.5.) Plaintiffs also contend that "communications between Blue Cross and [non-parties] will be an essential means by which the credibility of these potential witnesses can be assessed, . . . any biases can be determined, . . . and any potential influence by Blue Cross over a non-party's testimony may be identified." (*Id.* at 10 (internal citations omitted).)

In support of their assertions, Plaintiffs reference two non-party email communications attached in support of a Motion to Enforce a Document Subpoena filed in another court.[2] In these emails, the non-party stated to Defendant's counsel that it "has no relationship with BCBS [and] does not compete for business in Michigan." (Docket no. 182 at 8.) Plaintiffs argue that this statement by the non-party hospital "undermine[s] Blue Cross's claims concerning market definition." (*Id.*)

Although Plaintiffs' evidentiary examples are sparse, the Court agrees that the documents it seeks are reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, this does not end the Court's inquiry. Rule 26(b)(2)(C) provides that discovery must be limited when

> the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C)(iii). "[Th]is rule recognizes that many cases in public policy spheres . .

---

[2]Plaintiffs also argue that they are entitled to seek this type of information because Defendant issued a similar demand. (Docket no. 182 at 6-7.) Defendant disagrees with Plaintiff's comparison, but even if Plaintiff were correct, the Court is not persuaded by this argument.

. may have importance far beyond the monetary amount involved." Fed.R.Civ.P. 26 (Advisory Committee Notes, 1983 Amendment, Subdivision (b)).

If the Court does not limit discovery on this issue, Defendant's burden in response to this single document request is significant. By its plain language, Document Request No. 51 would require Defendant to "search the entire company . . . for any documents reflecting communications by any Blue Cross employee or agent [including inside and outside counsel] with any person not employed by Blue Cross that in any way mentions the investigations or law suits." (Docket no. 183 at 2.) The time and resources necessary to comply with such a request would potentially cripple many businesses.

In view of the staggering burden being placed on Defendant by Document Request No. 51, Plaintiffs' motion for relief is not without merit. Putting aside the scope of the litigation, the large monetary amounts involved, and the parties' significant resources, there are more far reaching implications to be considered. Plaintiffs bring this suit on behalf of the public at large and allege that Defendant violated antitrust laws in a manner that led to higher heath-care costs to citizens throughout the State of Michigan. The public policy implications in this matter favor extremely broad discovery.

The Court finds that the burden placed on Defendant in responding to Document Request No. 51 in its original form does outweigh the benefit of the information sought. At best, it appears that the requested documents will lead to third-party understanding of relevant markets, Defendant's impressions of Plaintiff's investigation, and some issues related to witness credibility. While relevant, the Court does not believe that this information–considering the scope of the case–outweighs the burden placed on Defendant. Therefore, the Court will order Defendant to produce documents pursuant to Document Request No. 51, but such production will be subject to

certain limitations.

Throughout negotiations, it appears that the Parties have attempted to find some middle ground on this issue, but without success. In their briefs, the Parties allude to the following:

- Defendant has agreed to produce "[d]ocuments reflecting communications with third parties regarding those third parties' objections to document subpoenas served by Blue Cross." (Docket 183 at 3.)

- Defendant has already produced (or will produce) documents related to various searches through 35 agreed-to custodians. (*Id.* at 3-4)

- Defendant "has already searched for and produced all documents reflecting communications with third parties that bear on MFNs, hospital negotiations, competition among commercial insurers in Michigan, the 34 alleged markets and, generally, the claims and defenses in this case." (*Id.* at 4.)

- Plaintiff would limit its request to "primarily the correspondence files of [Defendant's] inside and outside counsel" and "the *few* Blue Cross employees–likely already known to counsel–responsible for communicating with non-parties about the MFN lawsuits or investigations." (Docket no. 184 at 3-4.)

Using these concessions as guideposts, the Court will order Defendant to produce:

    a. all documents constituting communications, including any emails, from July 1, 2009 through May 1, 2012 (the date of the Request for Production), between the 35 agreed-to custodians referenced above and persons other than employees or agents of Defendant, relating to the investigations and cases outlined in Document Request No. 51; this production, however, will be limited to:

        i. documents reflecting communications with third parties regarding those third

      parties' objections to documents subpoenas served by Defendant;

  ii.  documents found in accordance with the search terms outlined on pages 3-4 of Docket no. 183 (including the "many, many others" as indicated); and

  iii.  documents reflecting communications that bear on MFNs, hospital negotiations, and competition among commercial insurers in Michigan; and

b. all documents constituting communications, including any emails, from July 1, 2009 through May 1, 2012, between Defendant's counsel (inside and outside) and persons other than employees or agents of Defendant, relating to the investigations and cases outlined in Document Request No. 51; this production will be limited only by the constraints of the original Request for Production.

**B. Plaintiff's Motions to Compel Documents from the Hospitals [143 and 145/146]**

The United States's Motions do not involve document requests under Rule 26; instead, it has issued a subpoena for these documents under Rule 45. The Hospitals seek the Court's protection from undue burden and expense under Rule 45(c)(2)(B)(ii). (Docket no. 162 at 1; Docket no. 163 at 1.) A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26. *See*, e.g., *Martin v. Oakland County*, No. 06-12602, 2008 WL 4647863, at *1 (E.D. Mich., Oct. 21, 2008) (Pepe, M.J.) (10 citations omitted). Rule 45(c)(1) requires that the party issuing a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(c)(1). To determine whether a burden is undue, a court must balance the potential value of the information to the party seeking it against the cost, effort, and expense to be incurred by the person or party producing it. *Lowe v. Vadlamudi*, No. 08-10269, 2012 WL 2887177, at *2 (E.D. Mich., Sept. 7, 2012) (Lawson, J.) (citing *American Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D.Ohio 1999); *EEOC v. Ford Motor Credit*

*Co.*, 26 F.3d 44, 47 (6th Cir.1994)).  That is, the Court must weigh "the likely relevance of the requested material . . . against the burden . . . of producing the material." *Ford Motor Credit Co*, 26 F.3d at 47.  Non-party status is also a relevant factor.  *Lowe*, 2012 WL 2887177, at *2 (citing *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C.2005))

In their Joint Statements, the Parties narrow the issues before the Court to the following:

(1) Are [the Hospitals'] documents that do not expressly refer to the hospital[s'] MFN-plus agreement with Blue Cross Blue Shield of Michigan, but which discuss [the Hospitals'] contracting or negotiations with the commercial health insurers specifically identified by the United States, limited to the two custodians already agreed to by the United States, relevant to the United States' allegations in its law suit alleging that Blue Cross Blue Shield of Michigan's MFN-plus and MFN agreements with Michigan hospitals violate federal and state antitrust laws?

(2) If the documents sought by the United States are relevant, does their relevance outweigh the burden on [the hospitals] of producing those documents?

(3) Is cost-shifting mandatory?

(4) Assuming cost-shifting is not mandatory, should [the hospitals'] cost of review and production of the subpoenaed documents, or its cost of defending the motion, be shifted to the United States?

(Docket no. 170 at 2; Docket no. 171 at 2.)  The Court will add the following inquiry:

(5) If the hospitals' costs related to these subpoenas should be shifted to the United States, to what extent should they be shifted?

### 1. Relevance

The Hospitals argue that the requested documents are not relevant because "the benefit to the government is speculative, at best." (Docket no. 162 at 8; Docket no. 163 at 8.) They assert that because the government has failed to contain a specific allegation of negotiations with other insurers where the MFN clause has had an effect, and because the government could use its CID power in advance of filing this instant action to discover such information, the government is merely on a

fishing expedition. (*Id.*) Plaintiff, however, notes that when the Hospitals were responding to Plaintiff's pre-complaint CID, Plaintiff voluntarily deferred production of the documents that it now requests. (Docket no. 164 at 2; Docket no. 167 at 2.) Thus, the Hospitals' argument is unavailing, as Plaintiff's decision to defer production of certain documents at the time of its CID cannot now be used against Plaintiff who is seeking the same documents that it was entitled to seek previously.

The Court agrees with Plaintiff that the documents in question are highly relevant to the central issue in this case, that is, whether Defendant's use of MFN clauses had an anti-competitive effect on the marketplace. The documents that Plaintiff seeks through these subpoenas specifically relate to Defendant's competitors' negotiations with the Hospitals and how those negotiations were impacted by the MFN clauses, even if the documents do not specifically mention Defendant or the MFN clauses. At the very least, these documents are "reasonably calculated to lead to admissible evidence." Therefore, the Court finds that the documents in question are relevant.

### 2. Balancing Relevance Against Burden

A nonparty seeking to modify a subpoena bears the burden of demonstrating that the discovery sought should not be allowed. *See Lowe*, 2012 WL 2887177, at *2 (citing *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y.1996)). Moreover, the nonparty cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." *Id.* (citing 9A Wright & Miller, Federal Practice and Procedure § 2463.1, p. 507). Thus, with the Court having found that the documents in question are relevant, the Hospitals bear a particularly heavy burden in showing that Plaintiff's subpoenas impose an undue burden.

The Hospitals do not contend that they will have any difficulty finding the documents in question. (Docket no. 162 at 7; Docket no. 163 at 8.) Instead, the Hospitals argue that compliance

with the subpoena will lead to thousands of easily identifiable documents, but these documents would all have to be reviewed for privilege, which includes preparation of a privilege log. (*Id.*) The Hospitals estimate that it would take internal employees 100 - 150 hours over the course of one-to-three weeks to review the requested documents for responsiveness and privilege. (Docket no. 162 at 6; Docket no. 163 at 6-7.) These documents would then need to be reviewed by counsel for creation of a privilege log. Plaintiff argues that the Hospitals' cost of production is exaggerated and that counsel's privilege review is not necessary because Plaintiff will return or destroy any privileged documents that are produced. (Docket no. 164 at 2; Docket nos. 166 and 167 at 2.)

Plaintiff asserts that "The United States should not be precluded from obtaining these documents now simply because it deferred their production during the pre-complaint investigation." The Court agrees and further notes that if the Hospitals were parties to this action, the Court would order that the Hospitals produce all of the responsive documents at their own expense. But the Hospitals are not parties to this action, and taking into account the Hospitals' nonparty status–as the court must–the Court finds that compliance with Plaintiff's subpoena may potentially place an undue burden on MidMichigan and Covenant.

### 3. Cost-Shifting

Rule 45(c) provides that "[t]he issuing court *must* enforce [the subpoena-issuing party's duty to avoid imposing an undue burden on the responding party] and impose an appropriate sanction—which *may* include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed.R.Civ.P. 45(c)(1) (emphasis added) Thus, any order compelling production "must protect a person who is neither a party nor a party's officer from *significant* expense resulting from compliance." Fed.R.Civ.P. 45(c)(2)(B)(ii) (emphasis added). This section of Rule 45 was added to protect nonparties "against significant expense resulting from involuntary

assistance to the court." Fed.R.Civ.P. 45 (Advisory Committee Notes, 1991 Amendment, Subdivision (c)).

The parties pose the question: "Is cost-shifting mandatory?" (Docket no. 170 at 2; Docket no. 171 at 2.) The Sixth Circuit has not yet provided guidance on this issue, but other courts have. Where a court finds that a nonparty is subject to an undue burden, the court must determine (1) if compliance with the subpoena imposes an expense on the nonparty, and (2) if so, whether that expense is "significant." *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (C.A.D.C. 2001). "If [it is], the court must protect the nonparty by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'" *Id.* To determine how much cost to shift from the nonparty, the court must balance the equities of the particular case, including "[1] whether the putative nonparty actually has an interest in the outcome of the case, [2] whether it can more readily bear its cost than the requesting party; and [3] whether the litigation is of public importance." *In re Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992) (internal citations omitted).

Here, the Hospitals' compliance with Plaintiff's subpoenas will impose an expense, and it appears to the Court that this expense may be significant. However, the Court requires additional information before it can make this determination. Therefore, the Court will order the Hospitals to provide detailed estimates of the reasonable costs that they will incur to comply with Plaintiff's subpoenas. Upon receipt of this information, the Court will determine if the costs are significant, and if they are, the Court will balance the equities of the case to determine the amount of costs, if any, that should be shifted to Plaintiff. The Court will also order the Hospitals to comply with Plaintiff's subpoena, subject to the limitations set forth below.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Production of Documents from Defendant [182] is **GRANTED IN PART** and **DENIED IN PART**. Defendant

must respond to Plaintiffs' Request for Production of Documents no later than October 20, 2012, and must produce:

    a. all documents constituting communications, including any emails, from July 1, 2009 through May 1, 2012, between the 35 agreed-to custodians referenced above and persons other than employees or agents of Defendant relating to the investigations and cases outlined in Document Request No. 51; this production, however, will be limited to:

        i. documents reflecting communications with third parties regarding those third parties' objections to documents subpoenas served by Defendant;

        ii. documents found in accordance with the search terms outlined on pages 3-4 of Docket no. 183 (including the "many, many others" as indicated); and

        iii. documents reflecting communications that bear on MFNs, hospital negotiations, and competition among commercial insurers in Michigan; and

    b. all documents constituting communications, including any emails, from July 1, 2009 through May 1, 2012, between Defendant's counsel (inside and outside) and persons other than employees or agents of Defendant, relating to the investigations and cases outlined in Document Request No. 51; this production will be limited only by the constraints of the original Request for Production.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Compel Documents from the Hospitals [143 and 145/146] are **GRANTED IN PART** and **RESERVED IN PART.** The Hospitals must produce documents responsive to the subpoena no later than October 20, 2012, subject to the following limitations:

    (a) with respect to MidMichigan, a search of three custodians' files for documents related

to insurers Aetna (and its subsidiaries, Cofinity and PPOM), Health Plus, United, and Priority, and employers Dow Chemical and Dow Corning (Docket no. 143 at 3; Docket no. 164 at 3 n.2); and

(b) with respect to Covenant, a search of two custodians' files for documents related to insurers Aetna (and its subsidiaries, Cofinity and PPOM), UnitedHealthcare, Health Plus, Priority, and McLaren (Docket no. 167 at 3 n.2).

**IT IS FURTHER ORDERED** that the Hospitals must provide to the Court, no later than October 5, 2012, a detailed estimate of the reasonable costs that will be incurred as a consequence of their compliance with Plaintiff's subpoenas.

### NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated:  October 1, 2012         s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: October 1, 2012          s/ Lisa C. Bartlett
                                Case Manager